1  QUINN EMANUEL URQUHART & SULLIVAN LLP
   Harold Barza (California Bar No. 80888)
2     halbarza@quinnemanuel.com
   Carolyn Thomas (California Bar No. 286441)
3     carolynthomas@quinnemanuel.com
   865 S Figueroa St, 10th Floor
4  Los Angeles, CA  90017
   Telephone: (213) 443-3100
5
   QUINN EMANUEL URQUHART & SULLIVAN LLP
6  William Burck (DC Bar No. 4015426)*
      williamburck@quinnemanuel.com
7  Derek Shaffer (California Bar No. 212746)
      derekshaffer@quinnemanuel.com
8  Jonathan Cooper (DC Bar No. 999764)*
      jonathancooper@quinnemanuel.com
9  777 Sixth Street NW, 11th Floor
   Washington, DC  20001
10 Telephone:   (202) 538-8000
   *Application *pro hac vice* pending
11
   *Attorneys for Plaintiff*
12 *Americans for Prosperity Foundation*

13                **UNITED STATES DISTRICT COURT**
                  **CENTRAL DISTRICT OF CALIFORNIA**
14                        **WESTERN DIVISION**

| | |
|---|---|
| 15  **AMERICANS FOR PROSPERITY FOUNDATION**, | Case No.  2:14-CV-09448 |
| 16                    Plaintiff, | **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND FOR A DECLARATORY JUDGMENT** |
| 17            vs. | |
| 18  **KAMALA HARRIS**, in her Official Capacity as Attorney General of California, | **JURY TRIAL DEMANDED** |
| 19                    Defendant. | |

**Introduction**

1. The First Amendment grants individuals who donate to private advocacy organizations the right to remain anonymous lest public disfavor and harassment chill their speech. A federal statute reflects this constitutional right by forbidding the compelled disclosure—whether to the public or to state governments—of the confidential federal tax form (called "Schedule B") that lists the names and addresses of donors to nonprofit charitable organizations. The problem necessitating this lawsuit is that California's Attorney General, for reasons known only to her, is nonetheless trying to compel disclosure of the confidential Schedule B by nonprofits around the State, including this Plaintiff, which is under an especially pronounced threat. It thus falls to this Court to vindicate the First Amendment and federal law.

2. Plaintiff Americans for Prosperity Foundation ("Foundation") is a nonprofit that promotes limited government and free markets. Its views are not universally popular. It has learned from experience that it must zealously guard the confidentiality of its donors to ensure their safety. Grotesque threats have been leveled against known associates of the Foundation, ranging from threats to kill or maim, to threats to firebomb buildings. More mundane threats abound too, including boycotts, firings, and public shaming, all of which are now demonstrated components of the playbook of the Foundation's more extreme opponents. Disclosure of the Foundation's donors thus poses a grave risk to these individuals' ability to continue expressing themselves robustly and freely. Precisely because they fear compelled disclosure and the harms that will follow, would-be donors are shying away from contributing to the Foundation, and current donors have warned

that they will cease their contributions as and if the prospect of disclosure rises. It is to alleviate such chilling that the First Amendment and federal statutes protect against the compelled disclosure of an advocacy organization's donors.

3.   Despite all this, California is demanding, on pain of sanctions, all the names and addresses of the Foundation's donors listed on its Schedule B. The State requires charitable organizations to register with the State and to renew their registrations annually. Each year since 2001, the Foundation registered without divulging the sensitive content of its Schedule B. Each year California accepted that registration—until now.

4.   On March 7, 2013, the Attorney General of California out of the blue notified the Foundation that its registration for 2011 was "incomplete" because "the copy of Schedule B . . . does not include the names and addresses of contributors." No change in California law precipitated this letter: no new statute or regulation came into effect; no new policy of collecting donor data was announced; no sudden justification for this requirement was invoked.

5.   The Foundation resisted, but the Attorney General doubled down on her demand. Matters reached a boil on October 29, 2014, when the Attorney General issued an ultimatum: unless the Foundation turned over its Schedule B for 2011 and 2012 within 30 days, she would revoke the Foundation's state tax exemption, suspend the Foundation's registration, and impose fines on the Foundation's "directors, trustees, officers, and return preparers," for which these individuals would be "personally liable." Notably, the Attorney General does not specify the size or nature of the threatened fines, only that they will be imposed on the people most closely associated with the Foundation in their individual capacities.

6. Faced with these imminent sanctions and with the irreparable loss of First Amendment freedoms, the Foundation is suing both to obtain a declaration that the Attorney General's demand is unlawful on its face and as applied to the Foundation, and to enjoin the Attorney General from enforcing her demand.

### Parties

7. Plaintiff Americans for Prosperity Foundation is a Delaware nonprofit corporation headquartered in Virginia. The Foundation's state director in California works out of an office in Ventura County, located at 5235 Mission Oaks Boulevard Suite 1000, Camarillo, CA, 93012.

8. The Foundation is devoted to the promotion of limited government and free markets. To that end, the Foundation hosts conferences, issues policy papers, and runs educational programs to engage policymakers, the media, and individual citizens in policy discussions and to help them understand why policies that promote the American enterprise system are the best method of ensuring prosperity for all Americans, especially the least fortunate among us.

9. The Foundation funds its activities by raising charitable contributions from donors throughout the country, including in California. Over a dozen significant donors reside in Los Angeles, California.

10. Defendant Kamala Harris is Attorney General of California. In this capacity, she administers California's Supervision of Trustees and Fundraisers for Charitable Purposes Act, Cal. Gov. Code §§ 12580–12599.8.

### Jurisdiction and Venue

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343.

12. Venue in this Court is proper under 28 U.S.C. § 1391(b).

– 3 –
COMPLAINT

**Facts**

13. The Foundation is the target of significant public ire from certain quarters vehemently opposed to its policy positions, real and imagined. The events it hosts are regularly protested. Hackers have attacked the Foundation's website.[1] President Obama himself has called out the group as suspect: "Right now all around this country there are groups with harmless-sounding names like Americans for Prosperity, who are running millions of dollars of ads against Democratic candidates all across the country. And they don't have to say who exactly the Americans for Prosperity are."[2]

14. When they are known, members and donors of the Foundation encounter concerted harassment, often with violent overtones. Two of the Foundation's co-founders are David Koch, who is also the Foundation's Chairman, and his brother Charles Koch. Over the past few years, David Koch and Charles Koch have faced unrelenting threats and attacks via social media, phone calls, email, and protests outside their homes and places of business, due in part to their work with, or perceived ties to, the Foundation. The threats are serious and often horrific, ranging from threats to kill David and Charles, to threats of violence against their families, to threats to firebomb company facilities or disrupt company business

---

[1] *See* Ben Smith, *"Anonymous" Takes Down Americans for Prosperity Website*, Politico (Feb. 27, 2011), http://www.politico.com/blogs/bensmith/0211/Anonymous_takes_down_Americans_for_Prosperity_website.html.

[2] White House, Remarks by the President at a DNC Finance Event in Austin, Texas (Aug. 9, 2010), *available at* http://www.whitehouse.gov/the-press-office/2010/08/09/remarks-president-a-dnc-finance-event-austin-texas.

– 4 –
COMPLAINT

activities, to threats to injure David and Charles in other ways. One person sent the following email from the address "deadkochs@Safe-mail.net":

> someone offered me $500,000 to kill david and charles koch i declined the offer and said that i'd do it for absolutely nothing just to rub it in there faces that money can't by you happiness because it's going to make me extremely happy to kill the two of them i'm flying to where they are today so by the end of the week the two biggest piles of shit in american will be dead david and charles are the lowest form of human existence in the universe but will be dead very soon and guess what i'm doing it for free. I'm not even going to give them the chance to plead or beg for they life just going to sneak up behind them a pop pop pop or maybe get them while they sleep somehow mark my words they will be dead by the end of the month.

15. Posted on social media outlets are statements like: "I say we kill the Koch brothers and their entire family line," "Let's drag those Koch brothers out, and let the hangman do his deed, so they can twist in the wind," and "If I was given a chance to murder a Koch brother in cold bloo[d] I would SURELY TAKE IT."

16. This vitriol extends to others who have been publicly connected with the Foundation. Donors whose associations with the Foundation are known to the public have received threats of physical harm, have had their businesses boycotted, and have been subjected to character assassination in their hometown newspapers. For example, a few months ago, reporters published a list of potential donors to the Foundation.[3] Individuals on the list were immediately harassed and their businesses boycotted.

17. The Foundation's events and offices throughout the country regularly draw protests. At these protests, persons associated with the Foundation are often

---

[3] *See* Andy Kroll & Daniel Schulman, *The Koch Brothers Left a Confidential Document at Their Donor Conference*, Mother Jones (Feb. 5, 2014), http://www.motherjones.com/politics/2014/02/koch-brothers-palm-springs-donor-list.

threatened with violence. For example, at the Foundation's 2011 summit held at the Convention Center in Washington DC, violent protestors tried to storm the Convention Center, physically accosted and injured some of the attendees when they exited the Convention Center, and placed the remaining attendees at serious risk.[4]

18. California officials have also previously tried to attack David Koch and Charles Koch, as well as smear the reputation of advocacy groups they thought were associated with David Koch and Charles Koch. For example, state officials at the California Fair Political Practices Commission ("FPPC") imposed fines on two nonprofit organizations and wrongly claimed in public that these groups were part of the "'Koch Brothers' Network' of dark money political nonprofit corporations."[5] The former chair of the FPPC later admitted that there was no evidence that showed a connection between the groups' activities or funding at issue in California and David Koch and Charles Koch.[6]

19. Faced with such bullying, current and potential donors are understandably afraid that having their identities disclosed will put them and their families at risk. Dozens of potential donors, a number of whom live in California,

---

[4] *See* Clare O'Connor, *Occupy the Koch Brothers: Violence, Injuries, and Arrests at DC Protest*, Forbes (Nov. 5, 2011), http://www.forbes.com/sites/clareoconnor/2011/11/05/occupy-the-kochs-violent-clashes-injuries-and-arrests-at-protest-against-corporate-greed/; Matthew Boyle, *Conservative Group Staffers, Event Attendees: 911 Hung Up On Us Four Times During Occupy DC Mob*, Daily Caller (Nov. 7, 2011), http://dailycaller.com/2011/11/07/koch-group-staffers-event-attendees-911-hung-up-on-us-four-times-during-occupy-dc-mob/.

[5] California Fair Political Practices Commission, *FPPC Announces Record Settlement in $11 Million Arizona Contribution Case* (October 24, 2013), http://www.fppc.ca.gov/press_release.php?pr_id=783.

[6] *See* Elizabeth Harrington, *Official: Kochs Not Involved in California Campaign Finance Violation*, Washington Free Beacon (Nov. 4, 2013), http://freebeacon.com/politics/official-kochs-not-involved-in-california-campaign-finance-violation/.

have reluctantly refused to contribute to the Foundation because they are too fearful of the reprisal they will face if their contribution becomes public knowledge, and current donors have indicated that they will cease their contributions if their names and addresses are revealed to the State of California.

20.  The Internal Revenue Service ("IRS") recognizes the Foundation as a 501(c)(3) nonprofit charity.  Such charities are exempt from federal income taxes but must file an annual tax return (a "Form 990").[7]  Certain charities—including the Foundation—must also file a Schedule B, which lists the name and address of every individual nationwide who donated more than $5,000 to the charity during a given tax year.[8]

21.  Once filed, a nonprofit's federal tax return must be "made available to the public," except for the "name or address of any contributor" to the organization. 26 U.S.C. § 6104(b), (d)(3)(A).  Form 990s are thus public, whereas Schedule Bs listing donor names and addresses are not.  Indeed, unauthorized disclosure of Schedule B can result in civil or criminal penalties.  26 U.S.C. §§ 7213, 7431.

22.  State officials who administer state laws regulating charities can—like any member of the public—obtain a charity's Form 990.  The Tax Code further provides that state regulators of charities can obtain from the IRS the *nonpublic* tax returns (including a Schedule B) of *certain* nonprofits, but *not* of 501(c)(3) organizations.  § 6104(c)(3).

---

[7] *See* IRS Form 990, *available at* http://www.irs.gov/pub/irs-pdf/f990.pdf.
[8] *See* IRS Schedule B to Form 990, *available at* http://www.irs.gov/pub/irs-pdf/f990ezb.pdf.

23.   California regulates charitable organizations.  Along with three other States (Illinois, Michigan, and Oregon), California has adopted the Uniform Supervision of Trustees for Charitable Purposes Act ("Charity Act").  Cal. Gov. Code §§ 12580–12599.8.

24.   The Charity Act requires charities to register with the State, § 12585, and to file "periodic reports," the "contents" of which are set by "rules and regulations" promulgated by the Attorney General, § 12586(b).  The reports are "open to public inspection," unless exempted by "rules and regulations adopted by the Attorney General."  § 12590.

25.   According to the Attorney General's regulations, *see* Cal. Code Regs., tit. 11, §§ 300–312.1, a charity must annually file a periodic report that includes its "Form 990."  § 301.  The regulations say nothing, however, about filing Schedule B.  What the regulations are clear about is that an organization's periodic reports will be publicly available:  "the reports filed with the Attorney General . . . shall be open to public inspection."  § 310.  Thus, every periodic report the Foundation files is, as a matter of California law as it exists today, open to the public.

26.   In 2000, the IRS created Schedule B.  Every year since then, from 2001 to the present, the Foundation has filed its Form 990 as part of its periodic report, without going so far as to include the names and addresses of the donors on its Schedule B.  For each year from 2001 through 2010, the Attorney General "[a]ccepted" the Foundation's registration renewal and listed the Foundation as an active charity in compliance with the law.  Attached as Exhibit A is a screenshot of the website of California's Registry of Charitable Trusts showing the Foundation's registration history since 2001.

27. Recently, without notice or comment, the Attorney General changed course. In a letter dated March 7, 2013, the Attorney General declared the Foundation's 2011 report "**incomplete** because the copy of Schedule B . . . does not include the names and addresses of contributors." Attached as Exhibit B is a copy of this letter. On information and belief, the Attorney General issued this letter pursuant to a new but unannounced policy she adopted requiring all charities in California to file their Schedule B with California.

28. In a letter dated December 17, 2013, the Attorney General deemed the Foundation's 2012 report "**incomplete**" for the same reason. Attached as Exhibit C is a copy of this letter.

29. On April 17 and May 19, 2014, the Attorney General sent additional letters to the Foundation repeating the statement that the Foundation's 2011 and 2012 reports are "**incomplete**" because "the **copy of Schedule B** . . . **does not include the names and addresses of contributors**." Attached as Exhibit D is a copy of the letter dated April 17, 2014, and attached as Exhibit E is a copy of the letter dated May 19, 2014 (emphasis in letter dated May 19, 2014).

30. Meanwhile, another organization that received a similar demand sued to challenge the Attorney General's authority to mandate disclosure of a Schedule B from a 501(c)(3) organization. *Center for Competitive Politics v. Harris*, No. 2:14-cv-00636-MCE-DAD (E.D. Cal.). That case is currently before the Ninth Circuit on appeal from the denial of a preliminary injunction. No. 14-15978 (9th Cir.).

31. On June 17, 2014, the Foundation urged the Attorney General to postpone her demands for its Schedule B until *Center for Competitive Politics* has been finally resolved. Attached as Exhibit F is a copy of this letter.

– 9 –
COMPLAINT

32. By letter dated June 25, 2014, the Attorney General denied the postponement request. Attached as Exhibit G is a copy of this letter.

33. On October 29, 2014, the Attorney General sent a new letter adding the threat of imminent penalty. If the Foundation did not submit its Schedule B for 2011 and 2012 "**within thirty (30) days of the date of this letter**," the Attorney General stated she would (1) notify the California Franchise Tax Board "to disallow the tax exemption of the [Foundation]"; (2) impose late fees on the Foundation's "directors, trustees, officers, and return preparers responsible for failure to timely file the [Schedule B]," with these individuals "**personally liable**" for the fees; and (3) "**suspend the registration**" of the Foundation. Attached as Exhibit H is a copy of this letter.

34. On December 1, 2014, counsel for the Foundation called and emailed the Attorney General's office in an effort to resolve this dispute amicably. The email asked the Attorney General to withdraw her demand and avoid the need for litigation. Alternatively, the email asked the Attorney General to postpone any penalties for noncompliance with her demand to avoid the need for the Foundation to seek a temporary restraining order. Attached as Exhibit I is a copy of this email.

35. The Attorney General's Office responded that it was considering the Foundation's proposal and hoped to have a decision "in the next couple of weeks." In the meantime, the Office agreed to "temporarily postpone" the issuance of penalties that the Foundation faced for not submitting its Schedule B. Attached as Exhibit J is a copy of the response from the Attorney General's Office.

36. On December 4, 2014, counsel for the Foundation wrote back to the Attorney General's Office to thank it for the temporary relief that appeared to

obviate the need for a temporary restraining order. But counsel also noted that the Foundation and its employees, officers, directors, and donors still faced severe and irreparable harm, including the loss of First Amendment liberties, when the "temporary" relief expired and the threatened penalties could be imposed. Absent a decision by the Attorney General's Office to permanently withdraw its request for the Foundation's Schedule B, the Foundation would be compelled to file a lawsuit and seek a preliminary injunction to remove this threat and vindicate its rights. Attached as Exhibit K is a copy of this correspondence.

37. To date, the Foundation has received no additional response from the Attorney General's Office. The Foundation then filed this lawsuit.

**Count I – First Amendment**

38. The Foundation repeats, re-alleges, and incorporates the allegations in paragraphs 1–37.

39. The First Amendment to the United States Constitution applies to California by virtue of the Fourteenth Amendment.

40. The First Amendment creates a "right to associate for the purpose of speaking." *Rumsfeld v. FAIR*, 547 U.S. 47, 68 (2006).

41. To vindicate this right, the Supreme Court has "held laws unconstitutional that require disclosure of membership lists for groups seeking anonymity." *Id.* at 69. Such laws "ma[k]e group membership less attractive" and violate the First Amendment by "affecting the group's ability to express its message." *Id.*

42. "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on freedom of

association." *Bates v. Little Rock*, 361 U.S. 516, 523 (1960) (brackets, ellipsis, & citation omitted).

43. Anonymous speech is not only accepted but celebrated within American politics. As "famously embodied in the Federalist Papers," which were published under the pseudonym "Publius," there is a long and "respected tradition of anonymity in the advocacy of political causes" in this country. *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 343 & n.6 (1995). For government to take the opposite approach by "[c]ompell[ing] disclosure of membership in an organization engaged in advocacy of particular beliefs" is akin to it "'requir[ing] that adherents of particular religious faiths or political parties wear identifying arm-bands.'" *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (quoting *American Communications Ass'n v. Douds*, 339 U.S. 382, 402 (1950)).

44. Nor is it any less noxious to compel disclosure of an organization's *donors* than it is to compel disclosure of its *members*: the Supreme Court has "not drawn fine lines between contributors and members," but has instead "treated them interchangeably." *Buckley v Valeo*, 424 U.S. 1, 66 (1976).

45. The "loss of First Amendment freedoms, for even minimal amounts of time, unquestionably constitutes irreparable injury." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

46. The Attorney General's demand, on pain of penalty, for the disclosure of the names and addresses of the Foundation's contributors infringes the rights to freedom of speech and freedom of association of the Foundation and its supporters, which rights are secured by the First and Fourteenth Amendments, in violation of 42

U.S.C. § 1983.  The Attorney General's demand for a charity's donor information on Schedule B is unconstitutional both on its face and as applied to the Foundation.

47. The Attorney General's demand gives the Foundation two choices. Either it must disclose its donor list, which will chill the protected speech of its donors.  Or else it must bear the penalties of noncompliance with California's demand, which the Attorney General warns will result in fines against the Foundation's officers and directors, as well as forfeiture of the Foundation's charitable registration and state tax exemption.  "[F]und-raising for charitable organizations is fully protected speech." *Gaudiya Vaishnava Society v. City & County of San Francisco*, 952 F.2d 1059, 1063 (9th Cir. 1990); *accord Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 789 (1988); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980).  Levying fines on the Foundation's employees and taking away its license to solicit charitable donations will therefore chill the Foundation's protected speech. *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 969 (1984). So whichever way the Foundation goes with this Hobson's choice, it stands to lose First Amendment freedoms—and thus suffer irreparable injury—unless this Court issues injunctive relief.

### Count II – Federal Preemption

48. The Foundation repeats, re-alleges, and incorporates the allegations in paragraphs 1–47.

49. A federal statute bars a state official from demanding that a 501(c)(3) organization disclose a copy of its Schedule B containing the names and addresses of the organization's donors. 26 U.S.C. § 6104.

50. The Attorney General's demand, on pain of penalty, for the disclosure of the Foundation's Schedule B that contains the names and addresses of the Foundation's contributors conflicts with federal law and is therefore preempted by the Supremacy Clause of the U.S. Constitution.

51. The Foundation will be irreparably harmed if it is compelled to choose between incurring sanctions or revealing the names and addresses of its donors in order to comply with a demand of the Attorney General of California that violates federal law.

## Prayer for Relief

Wherefore, the Foundation requests judgment be entered in its favor and against the Attorney General as follows:

1. An order preliminarily enjoining the Attorney General from demanding the Foundation's Schedule B that contains its donor information or from taking any action to implement or enforce her demand for the Foundation's Schedule B.

2. An order permanently enjoining the Attorney General from demanding the Foundation's Schedule B that contains its donor information or from taking any action to implement or enforce her demand for the Foundation's Schedule B.

3. A declaration that the Attorney General's demand for a copy of the Foundation's Schedule B containing the names and addresses of the Foundation's donors violates the First and Fourteenth Amendments both on its face and as applied to the Foundation, and is therefore null and void.

4. A declaration that the Attorney General's demand for a copy of the Foundation's Schedule B containing the names and addresses of the Foundation's donors is preempted under the Supremacy Clause, and is therefore null and void.

5. An award to the Foundation of its reasonable attorneys' fees and costs.

6. A grant to the Foundation of such additional or different relief as the Court deems just and proper.

Dated: December 9, 2014

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By _____
Harold Barza

*Attorneys for Plaintiff*
*Americans for Prosperity Foundation*