1   KAMALA D. HARRIS
    Attorney General of California
2   TAMAR PACHTER
    Supervising Deputy Attorney General
3   ALEXANDRA ROBERT GORDON
    State Bar No. 207650
4   EMMANUELLE S. SOICHET
    State Bar No. 290754
5   Deputy Attorneys General
      455 Golden Gate Avenue, Suite 11000
6     San Francisco, CA  94102-7004
      Telephone:  (415) 703-5509
7     Fax:  (415) 703-5480
      E-mail:  Alexandra.RobertGordon@doj.ca.gov
8   *Attorneys for Defendant*
    *Attorney General Kamala D. Harris*
9

10          IN THE UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                  WESTERN DIVISION

13

14

15  **AMERICANS FOR PROSPERITY**          2:14-CV-09448
    **FOUNDATION,**
16                                         **DEFENDANT ATTORNEY**
                              Plaintiff,   **GENERAL KAMALA D.**
                                           **HARRIS'S OPPOSITION TO**
17        **v.**                           **PLAINTIFF'S MOTION FOR**
                                           **PRELIMINARY INJUNCTION**
18
    **KAMALA HARRIS, in her Official**     Date:        February 17, 2015
19  **Capacity as Attorney General of the** Time:        10:00 a.m.
    **State of California,**               Courtroom:   8
20                                         Judge:       Hon. Manuel L. Real
                              Defendant.   Action Filed: December 9, 2014
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 2

    I.     Facts, as Alleged in the Complaint ...................................................... 2

    II.    The Relevant Statutory Schemes ......................................................... 3

         A.    The Supervision of Trustees and Fundraisers for
              Charitable Purposes Act .......................................................... 3

         B.    The Confidentiality and Disclosure Requirements of the
              Internal Revenue Code ............................................................ 7

ARGUMENT .................................................................................................. 8

    I.     Legal Standard ...................................................................................... 8

    II.    Plaintiff has Failed to Show a Likelihood of Success on the
         Merits on any of its Claims .................................................................. 9

         A.    California's Reporting Requirements Do Not Violate the
              First Amendment. .................................................................... 9

               1.    Plaintiff has not made the required prima facie
                     showing of infringement of its associational rights. ...... 11

               2.    California's reporting and disclosure requirements
                     are reasonable and substantially related to a
                     compelling law enforcement interest. ........................... 15

         B.    Federal Law Does Not Preempt State Law Disclosure
              Requirements for Tax Exempt Organizations. ......................... 20

    III.   Plaintiff Has Failed to Demonstrate Either Irreparable Injury or
         That the Balance of Harms and the Public Interest Weigh in
          Favor of an Injunction ....................................................................... 24

CONCLUSION .............................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page**

CASES

*ACLU v. Heller*
    378 F.3d 979 (9th Cir. 2004) ............................................................................. 9

*Acorn Investments v. City of Seattle*
    887 F.2d 219 (9th Cir. 1989) ...................................................................... 12, 13

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) .......................................................................... 8

*Bates v. Little Rock*
    361 U.S. 516 (1960) ........................................................................................ 11

*Brock v. Local 373, Plumbers Int'l Union of America*
    860 F.2d 346 (9th Cir. 1988) ............................................................ 10, 11, 12, 18

*Brown v. Socialist Workers '74 Campaign Committee*
    459 U.S. 87 (1982) .......................................................................................... 14

*Buckley v. American Constitutional Law Foundation, Inc.*
    525 U.S. 182 (1999) .......................................................................................... 9

*Buckley v. Valeo*
    424 U.S. 1 (1976) ................................................................ 10, 11, 12, 15, 16

*Cal. Pro-Life Council, Inc. v. Getman*
    328 F.3d 1088 (9th Cir. 2003) ........................................................................ 24

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*
    755 F.3d 671 (9th Cir. 2014) ............................................................................ 9

*Citizens United v. Fed. Election Comm'n*
    558 U.S. 310 (2010) .................................................................................. 10, 24

*Coalition for Econ. Equity v. Wilson*
    122 F.3d 718 (9th Cir. 1997) ............................................................................ 9

*Ctr. for Competitive Politics v. Harris*
    No. 2:14–cv–00636–MCE–DAD, 2014 WL 2002244 (E.D. Cal. May 14, 2014) ............................................................................................... passim

1
2

**TABLE OF AUTHORITIES**
**(continued)**

3

**Page**

*Ctr. for Individual Freedom v. Madigan*
　　697 F.3d 464 (7th Cir. 2012) ............................................................. 10

*Cupolo v. Bay Area Rapid Transit*
　　5 F. Supp. 2d 1078 (N.D. Cal. 1997) .................................................. 9

*D'Amico v. Bd. of Medical Examiners*
　　11 Cal. 3d 1 (1974) ........................................................................... 4

*Dex Media West, Inc. v. City of Seattle*
　　790 F. Supp. 2d 1276 (W.D. Wash. 2011) ......................................... 24

*Dole v. Local Union 375, Plumbers Int'l Union of America*
　　921 F.2d 969, 974 (9th Cir. 1990) ............................................... passim

*Dole v. Local Union 375, Plumbers Int'l Union of America*
　　950 F.2d 1456 (9th Cir. 1991) ..................................................... passim

*Famine Relief Fund v. State of W.Va.*
　　905 F.2d 747 (4th Cir. 1990) ............................................................ 20

*Florida Lime & Avocado Growers, Inc. v. Paul*
　　373 U.S. 132 (1963) .......................................................................... 21

*Friends Social Club v. Secretary of Labor*
　　763 F. Supp. 1386 (E.D. Mich. 1991) .............................................. 15

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*
　　505 U.S. 88 (1992) ............................................................................ 22

*Golden Gate Restaurant Ass'n v.City and County of San Francisco*
　　512 F.3d 1112 (9th Cir. 2008) .......................................................... 25

*Goldie's Bookstore, Inc. v. Superior Ct.*
　　739 F.2d 466 (9th Cir. 1984) ............................................................ 24

*Hardman v. Feinstein*
　　195 Cal. App. 3d 157 (1987) .............................................................. 4

*Hillsborough County Fla. v. Automated Med Labs., Inc.*
　　471 U.S. 707 (1985) .......................................................................... 23

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*John Doe 1 v. Reed*
    561 U.S. 186 (2010) ...................................................................... 9, 16

5

6

*Jones v. Rath Packing Co.*
    430 U.S. 519 (1977) ........................................................................... 21

7

8

*Laird v. Tatum*
    408 U.S. 1 (1972) ............................................................................... 14

9

*Maryland v. King*
    133 S. Ct. 1 (2012) ............................................................................ 25

10

11

*McIntyre v. Ohio Elections Comm'n*
    514 U.S. 334 (1995) ............................................................................. 9

12

13

*NAACP v. Alabama*
    357 U.S. 449 (1958) ................................................................. 9, 11, 16

14

15

*Nelsen v. King County*
    895 F.2d 1248 (9th Cir. 1990) ......................................................... 18

16

17

*Nixon v. Shrink Missouri Gov't PAC*
    528 U.S. 377 (2000) .......................................................................... 18

18

19

*O'Neal v. United States*
    601 F.Supp. 874 (N.D. Ind. 1985) .................................................. 14

20

21

*Pacific Gas & Electric Co. v. State Energy Resources Cons. and Dev. Comm.*
    461 U.S. 190 (1983) .......................................................................... 21

22

*Perry v. Schwarzenegger*
    591 F.3d 1147 (9th Cir. 2009) .................................................... 11, 15

23

24

*Pharmaceutical Research and Mfrs. of America v. Walsh*
    538 U.S. 644 (2003) .......................................................................... 21

25

26

*Protectmarriage.com-Yes on 8 v. Bowen*
    752 F.3d 827 (9th Cir. 2014) .................................................... 10, 12

27

28

*Reno v. American Civil Liberties Union*
    521 U.S. 844 (1997) .......................................................................... 19

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Retail Clerks Int'l Ass'n v. Schermerhorn*
  375 U.S. 96 (1963) ........................................................... 21

5

6

*Rice v. Santa Fe Elevator Corp.*
  331 U.S. 218 (1947) ......................................................... 21

7

8

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*
  487 U.S. 781 (1988) ............................................ 16, 20, 24

9

*State Farm Fire & Casualty Co. v. Sup. Ct.*
  45 Cal. App. 4th 1093 (1996) ........................................... 17

10

11

*Stokwitz v. United States*
  831 F.2d 893 (9th Cir. 1987) .................................. 20, 22, 23

12

13

*Talley v. California*
  362 U.S. 60 (1960) ...................................................... 12, 13

14

15

*Ting v. AT&T*
  319 F.3d 1126 (9th Cir. 2003) .................................... 20, 23

16

17

*Village of Schaumburg v. Citizens for a Better Environment*
  444 U.S. 620 (1980) ................................................... 19, 20

18

19

*Winter v. Natural Res. Def. Council, Inc.*
  555 U.S. 7 (2008) .......................................................... 8, 24

20

*Wyeth v. Levine*
  555 U.S. 555 (2009) ........................................................ 21

21

22

STATUTES

23

California Code of Regulations, Title 11
  § 301 (2014).............................................................. passim

24

25

California Busness and Professions Code
  § 17200 ......................................................................... 17
  §§ 17510-17510.95 ........................................................... 4

26

27

California Civil Code
  § 1798 ............................................................................ 18

28

# TABLE OF AUTHORITIES
## (continued)

Page

California Corporations Code
§ 5110 ................................................................................................ 4
§ 5227 .............................................................................................. 17
§ 5233 .............................................................................................. 17
§ 5236 .............................................................................................. 17

California Evidence Code
§ 1040 ................................................................................................ 7

California Government Code
§ 6254 ................................................................................................ 7
§ 12580 .............................................................................................. 1
§ 12581 ........................................................................................ 4, 16
§ 12584 ............................................................................. 4, 9, 16, 24
§ 12585 .............................................................................................. 4
§ 12586 ............................................................................. 4, 9, 24, 16
§ 12588 .............................................................................................. 4
§ 12589 .............................................................................................. 4
§ 12598 ........................................................................................ 4, 9, 16
§ 12590 ........................................................................................ 6, 18

Internal Revenue Code
§ 501 ............................................................................................. 2, 7
§ 6033 ................................................................................................ 7
§ 6103 ....................................................................... 7, 8, 22, 23
§ 6104 .............................................................................................. 22

OTHER STATUTES

DEL. CODE ANN. Title 6 §§ 2591-97 (2014) ................................ 16

HAW. REV. STAT. ANN. § 467B-6.5 (2014) .............................. 16

KY REV. STAT. ANN. §§ 367.650-.670 (2014) .......................... 16

MISS CODE ANN. §§ 79-11-501-529 (2014) .............................. 16

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3   **CONSTITUTIONAL PROVISIONS**

4   California Constitution
5       Article V, § 13 ...................................................................................... 3

6   United States Constitution
7       Article VI, Clause 2 .......................................................................... 1, 20
        First Amendment ...........................................................................passim
8

9   **OTHER AUTHORITIES**

10  Bipartisan Campaign Reform Act of 2002 ............................................... 10

11  IRS Pub. No. 1075 (January 2014), available at http://www.irs.gov/pub/irs-
12      pdf/p1075.pdf ..................................................................................... 8

13  Supervision of Trustees and Fundraisers for Charitable Purposes Act ..................... 1

14  Wright & Miller, *Federal Practice & Procedure* § 2948.1 (3d ed. 2014).............. 24

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Tax-exempt charitable status is not required in order to solicit funds from the public, but in California, as in most other states, those entities that wish to enjoy the privilege and related benefits of operating and soliciting funds as a tax-exempt organization are supervised and regulated by the State.  To ensure that charitable status and the public trust are not abused, state law, including the Supervision of Trustees and Fundraisers for Charitable Purposes Act, California Government Code sections 12580 et seq., vests the Attorney General with broad regulatory authority, such as the power to require charitable organizations to furnish information and reports.  Plaintiff challenges one such requirement:  that it annually submit an unredacted copy of its IRS Form 990, Schedule B, which lists identifying information for its major donors.  This information is kept confidential by the Registry of Charitable Trusts and is used exclusively for law enforcement purposes.

Plaintiff contends that the requirement to file with the Registry the same Schedule B it already has filed with the IRS violates the Constitution, specifically, its First Amendment right to freedom of association and the Supremacy Clause, and now moves to preliminarily enjoin enforcement of state law.  This motion should be denied because plaintiff has not met the standard for issuance of a preliminary injunction:  it has not demonstrated either a likelihood of success on the merits of its claims or that it will be injured if an injunction does not issue.  While it offers evidence of harm that persons that may be affiliated with it have suffered due to unrelated *public* disclosures of donor information, plaintiff offers no evidence that the specific non-public disclosure at issue would have any effect on, let alone infringe, its associational rights.  Moreover, even if plaintiff could establish a prima facie case of infringement, the challenged disclosure is narrowly tailored to achieve a compelling state interest and is therefore constitutional.  Plaintiff's preemption claim fails because Congress intended states to remain the primary regulators of

charities, and there is no evidence that Congress intended to preempt state reporting requirements, nor is there any conflict between the relevant federal and state laws. Thus, plaintiff cannot show a likelihood of success on either of its claims for relief. Plaintiff's motion is also unsubstantiated by admissible evidence of injury that it would suffer in the absence of injunctive relief.  By contrast, the harm to the State's ability to effectively enforce its laws and to the public interest, were a preliminary injunction to issue, would be considerable.  Accordingly, the law, the balance of equities, and the public interest all weigh against issuing a preliminary injunction.

## BACKGROUND

### I.   FACTS, AS ALLEGED IN THE COMPLAINT

Plaintiff Americans for Prosperity Foundation ("Foundation") is a non-profit corporation organized under I.R.C. section 501(c)(3) that "funds its activities by raising charitable contributions from donors throughout the country, including in California."  *See* Complaint for Preliminary and Permanent Injunctive Relief and for a Declaratory Judgment ("Complaint") ¶¶ 7, 9, 20.  Although state law requires it to file an unredacted copy of its IRS Form 990 Schedule B with the Registry, *see e.g.,* Cal. Code Regs. tit. 11, § 301 (2014), plaintiff never did so, and the Registry did not discover this compliance failure until early 2013, *see* Complaint ¶¶ 26-27. By letter dated March 7, 2013, the Attorney General, through the Registry of Charitable Trusts, informed plaintiff that its filing for fiscal year 2011 was incomplete and that it was required to submit a complete copy of its Schedule B. *Id.* ¶ 27, Exh. B.  Plaintiff subsequently received multiple letters from the Attorney General noting that plaintiff's 2011 and 2012 filings were deficient and instructing plaintiff to file a complete Schedule B.  *Id.* ¶¶ 28-29, Exhs. C-E.  By letter dated June 17, 2014, plaintiff informed the Attorney General that it was not going to file a complete Schedule B and that it believed that "the most prudent course of action" was to "postpone any decision regarding additional submissions" until after the resolution of *Center for Competitive Politics v. Harris*, Ninth Circuit Case No. 14-

2

15978, an appeal from the denial of a preliminary injunction of the Schedule B disclosure requirement. *Id.* ¶ 31, Exh. F. In response, the Attorney General informed plaintiff that because the district court in *Center for Competitive Politics* determined that the disclosure requirement was constitutional and thus declined to enjoin it, and because there was no stay of state law pending appeal, plaintiff was obligated to comply with the law. *Id.* ¶ 32, Exh. G.[1] Plaintiff chose not to do so and on October 29, 2014, the Attorney General sent plaintiff a letter noting that its registration for fiscal years 2011 and 2012 remained incomplete, that it had become delinquent, and that failure to provide complete information to the Registry within 30 days would subject it to late fees and suspension. *Id.* ¶ 33, Exh. H. The letter also informed plaintiff that the Registry would notify the California Franchise Tax Board "to disallow its tax exemption," that the Tax Board might revoke its tax exempt status, and that it might be subject to the minimum tax penalty (by the Tax Board). *Id.* In response, plaintiff filed this lawsuit.

## II.   THE RELEVANT STATUTORY SCHEMES

### A.   The Supervision of Trustees and Fundraisers for Charitable Purposes Act

Plaintiff incorrectly suggests that the Attorney General does not have authority to demand an unredacted copy of its Schedule B. *See* Plaintiff's Memorandum in Support of Preliminary Injunction ("Memorandum") at 17. In fact, the Attorney General's demand is made pursuant to her extensive and well-established powers under state and common law. Specifically, the Attorney General is the chief law officer of the State of California, CAL. CONST. art. 5, §13, and has broad authority under the California Constitution, statute, and common law to bring actions to enforce the laws of the state and to protect public rights and interests, *see D'Amico*

---

[1] The appeal in in *Center for Competitive Politics* was argued and submitted to the Ninth Circuit on December 8, 2014. On January 6, 2015, the Ninth Circuit enjoined the Attorney General from taking action against the Center for Competitive Politics for failure to file an unredacted IRS Form 990 Schedule B pending appeal. Ninth Circuit Case No. 14-15978, ECF Nos. 28 & 34.

1   *v. Bd. of Medical Examiners*, 11 Cal. 3d 1, 14 (1974).  Of particular relevance here,

2   the Attorney General has primary responsibility, under the Supervision of Trustees

3   and Fundraisers for Charitable Purposes Act (the "Act"), to supervise charitable

4   trusts and public benefit corporations incorporated in, or conducting business in

5   California (of which plaintiff is one) and to protect charitable assets for their

6   intended use.  *See* Cal. Gov't Code §§ 12598(a), 12581.  She also has "broad

7   powers under common law and California statutory law to carry out these charitable

8   trust enforcement responsibilities."  *Id.* § 12598(a); *see also* Cal. Bus. & Prof. Code

9   §§ 17510-17510.95; Cal. Corp. Code §§ 5110, et seq.; *Hardman v. Feinstein*, 195

10  Cal. App. 3d 157, 161 (1987).  The Attorney General may investigate transactions

11  and relationships to ascertain whether the purposes of the corporation or trust are

12  being carried out.  In order to do so, she may require any agent, trustee, fiduciary,

13  beneficiary, institution, association, or corporation, or other person to appear and to

14  produce records.  Cal. Gov't Code § 12588.  Any such order has the same force as a

15  subpoena.  *Id.* §12589.  The Attorney General has specific authority to require

16  periodic written reports deemed necessary to her supervisory and enforcement

17  duties.  *Id.* § 12586.

18      Pursuant to the Act, the Attorney General is required to maintain a register of

19  charitable corporations and their trustees and trusts (the "Registry"), and "to that

20  end," to obtain "whatever information, copies of instruments, reports, and records

21  are needed for the establishment and maintenance of the register."  Cal. Gov't Code

22  § 12584.  Within 30 days after receiving property, every charitable corporation and

23  trustee subject to the Act must file an initial registration form, *id.* § 12585, and

24  thereafter must also file periodic written reports with the Attorney General, *id.*

25  § 12586(b).  The Attorney General is required to promulgate rules and regulations

26  as to the time for filing reports, the contents thereof, and the manner of executing

27  and filing them.  *Id.* § 12586(b).  These regulations state that the "periodic written

28  reports" include: "…the Annual Registration Renewal Fee Report, ("RRF-1") …

4

which must be filed with the Registry of Charitable Trusts annually, as well as the Internal Revenue Service Form 990, which must be filed on an annual basis with the Registry of Charitable Trusts, as well as with the Internal Revenue Service ….” Cal. Code Regs. tit. 11, § 301 (2014).  Moreover, “[w]hen requested by the Attorney General any periodic report shall be supplemented to include such additional information as the Attorney General deems necessary to enable the Attorney General to ascertain whether the corporation, trust or other relationship is being properly administered.”  *Id.* § 306.

To reduce the reporting burden on filers, the California Attorney General’s Office adopted IRS Form 990 as the primary reporting document for charitable entities required to file annual reports with the Registry.  *See* Cal. Code Regs. tit. 11, § 301 (2014).  In addition to the regulation that requires that charitable organizations file the same Form 990 filed with the IRS, including all schedules that are part of the Form, *id.*, the Attorney General’s Instructions for Filing Annual Registration Renewal Fee Report provide that “charities with total gross revenue or assets of $25,000 or more must file a copy of the IRS Form 990, 990-EZ, or 990-PF *and attachments* with the Attorney General’s Registry of Charitable Trusts.” Declaration of Alexandra Robert Gordon in Support of Defendant’s Opposition to Motion for Preliminary Injunction (“Gordon Decl.”), ¶ 3, Exh. A (emphasis added).

While the regulations consistently have required charitable organizations to submit a complete copy of their IRS Form 990 with all schedules, the Attorney General has not always had resources adequate to police non-compliance.  Due to chronic underfunding and staffing constraints and the large number of charitable organizations in California, the Registry was unable to implement a comprehensive effort to identify and notify registered organizations of their filing deficiencies until around 2010.  Declaration of Kevis Foley in Support of Defendant’s Opposition to Motion for Preliminary Injunction (“Foley Decl.”) ¶ 6.  Since that time, the Registry’s established practice is to review each filing and, if anything is missing,

1   to send out deficiency notices to organizations identifying the missing

2   documentation. *Id*. Most charities submit the reports and information required by

3   state law and for those that do not, most correct deficiencies when the Registry

4   notifies them of a deficiency. *Id.*

5       Although other documents filed with the Registry are open to public

6   inspection, *see* Cal. Gov't Code § 12590, the unredacted Schedule B filed by public

7   charities is not. The Schedule B has always been treated as a confidential document

8   and kept in separate files that are not available for public viewing. *See* Foley Decl.

9   ¶ 8. Those "files" are now electronic records and specific protocols are in place to

10  ensure the confidentiality of Schedule B information. *Id.* The Registry employees

11  who review and process annual reports are instructed to remove all confidential

12  documents, including the Schedule B, scan them separately, and upload them into

13  the backend Registry database that is not available to the public and is accessible to

14  in-house staff only. *Id.*[2] Specifically, the only people that can view the Schedule B

15  records are approximately 30 Registry staff members,[3] as well as 13 attorneys, eight

16  auditors, and two paralegals employed by the Charitable Trusts Section of the

17  Department of Justice. *Id.* ¶ 10. In order to access the Schedule B information,

18  these state employees must first verify their user identification and passcode from a

19  registered computer. *Id.* Pursuant to long-standing Registry policy, Schedule B

20  information is not accessible to and never shared with other members of the

21  Department of Justice or with any other State agency or official. *Id.* ¶ 11.[4]

22      _____

23      [2] The Registry also receives, pursuant to the Federal/State Retrieval System,
        all Schedules B that are electronically filed with the IRS. These are also
        transmitted separately and uploaded into the backend database as confidential

24      documents. Foley Decl. ¶ 9.

25      [3] Most of the Registry staff does not examine the contents of the Schedule B,
        but merely checks to make sure it has been included. Foley Decl. ¶ 10.

26      [4] In response to a California Public Records Act request for an organization's
        filings, only the "public file" is made available for review. The Attorney General

27      does not produce confidential information or documents in response to such
        requests. *See* Cal. Gov't Code § 6254(k) (exempting from disclosure information

28      "the disclosure of which is exempted or prohibited pursuant to federal or state law,
                                                                        (continued…)

### B.   The Confidentiality and Disclosure Requirements of the Internal Revenue Code

Most tax-exempt organizations, such as those organized under Internal Revenue Code section 501(c)(3), are required to file with the IRS an annual information return -- the Form 990 or some variation thereof. *See* I.R.C. § 6033. The Form 990 is an eleven-part core form with schedules to be completed by those organizations that satisfy the applicable requirements for each schedule. Exempt organizations, including 501(c)(3) corporations, must make their annual returns available to the public, and must provide copies upon request. *See* I.R.C. § 6104(d). They need not, however, make public the names and addresses of contributors. *Id.* § 6104(d)(3)(A). Thus, many exempt organizations maintain a "public disclosure" copy of their Schedule B that omits donor identifying information.

As a general rule, the IRS cannot disclose tax returns or tax return information. I.R.C. § 6103(a). However, there are exceptions. IRC section 6104 provides rules for public inspection at IRS offices of the information returns, annual reports, applications, contributions, expenditures, and other information pertaining to exempt organizations. Section 6104 also provides rules pursuant to which the IRS can disclose to Congress and "appropriate" state officials, including state Attorneys General, certain information pertaining to tax-exempt organizations. *Id.* § 6104(a)-(c). No such disclosures can be made unless the agency, body, or commission to which disclosure is made establishes procedures satisfactory to the IRS for safeguarding the confidentiality of tax information they receive. *See* I.R.C. § 6103(p)(4); Treas. Reg. § 301.6103(c)-1 (2013). These safeguards must include: a permanent system of standardized records, a secure place to store the information, restrictions on access, protection of confidentiality, reports to the IRS on the procedures to maintain confidentiality, and the return or destruction (or safekeeping,

---

(…continued)
including, but not limited to, provisions of the Evidence Code relating to privilege."); Cal. Evid. Code § 1040.

in some cases) of used material.  I.R.C. § 6103(p)(4); Treas. Reg. § 301.6103(c)-1.

California has established and maintains such procedures.  *See generally* Foley

Decl.; *see also* IRS Pub. No. 1075 (January 2014), available at

http://www.irs.gov/pub/irs-pdf/p1075.pdf.

**ARGUMENT**

**I.   LEGAL STANDARD**

To prevail on a motion for a preliminary injunction, a plaintiff "must establish

that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

in the absence of preliminary relief, that the balance of equities tips in his favor, and

that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council,

Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, "[a] preliminary injunction is

appropriate when a plaintiff demonstrates…that serious questions going to the

merits were raised and the balance of hardships tips sharply in the plaintiff's favor."

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

(internal quotations omitted).  A plaintiff must establish all four *Winter* factors even

under the alternative sliding scale test.  *Id.* at 1135.

"A preliminary injunction is an extraordinary remedy never awarded as a

matter of right.  In each case, courts must balance the competing claims of injury

and must consider the effect on each party of the granting or withholding of the

requested relief.  In exercising their sound discretion, courts of equity should pay

particular regard for the public consequences in employing the extraordinary

remedy of injunction."  *Winter*, 555 U.S. at 24 (internal quotations and citations

omitted).  Because a preliminary injunction is an extraordinary remedy, the moving

party must establish the elements necessary to obtain injunctive relief by a "clear

showing."  *Id.* at 22.  A plaintiff's burden is particularly heavy when, as here, it

seeks to enjoin operation of a statute because "it is clear that a state suffers

irreparable injury whenever an enactment of its people or their representatives is

enjoined."  *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).

8

1   "A strong factual record is therefore necessary before a federal district court may

2   enjoin a State agency."  *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078,

3   1085 (N.D. Cal. 1997).  In this case, plaintiff cannot meet its burden and the motion

4   for a preliminary injunction should be denied.

5   **II.   PLAINTIFF HAS FAILED TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS ON ANY OF ITS CLAIMS**

6

7        **A.   California's Reporting Requirements Do Not Violate the First Amendment.**

8        The Act requires a tax-exempt charitable organization, like plaintiff, to submit

9   a complete copy of its Schedule B on file with the IRS, including major donor

10  information, to the Registry where it is protected from public disclosure and used

11  exclusively for law enforcement purposes.  *See* Cal. Gov't Code §§ 12598(a),

12  12584, 12586(b); Cal. Code Regs. tit. 11, § 301.  Plaintiff contends that this

13  requirement unconstitutionally infringes upon its members' First Amendment

14  rights.  Memorandum 8-20.[5]  While plaintiff is correct that under circumstances not

15  present here, compelled disclosure of membership lists *can* constitute a substantial

16  infringement on the freedom of association guaranteed by the First and Fourteenth

17  Amendments, *see, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 (1958), this does

18  not mean that every disclosure requirement necessarily *does* violate the right to

19  freedom of association.  To the contrary, where, as here, the burden, if any, on First

20        [5] Although plaintiff ostensibly alleges violations of the First Amendment right to association and free speech, *see* Complaint ¶ 46, its motion appears to be based on the former and does not provide any meaningful argument that the right to

21  free speech supplies a basis for injunctive relief.  *See* Memorandum 8-20.  Nor could it, as the challenged requirement, which merely demands an "after-the-fact"

22  reporting of the identities and expenditures of major donors, does unconstitutionally regulate speech within the meaning of the First Amendment.  *See John Doe 1 v.*

23  *Reed*, 561 U.S. 186, 196 (2010) (noting that "a disclosure requirement" is "not a prohibition on speech," because while such "requirements may burden the ability to

24  speak, ... they do not prevent anyone from speaking")  *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 187, 198-99 (1999); *McIntyre*

25  *v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995); *Chula Vista Citizens for Jobs*

26  *& Fair Competition v. Norris*, 755 F.3d 671, 682 (9th Cir.) *reh'g en banc granted*, 768 F.3d 1081 (9th Cir. 2014); *ACLU v. Heller*, 378 F.3d 979, 987, 990-92 (9th Cir.

27  2004).

28

1   Amendment rights is modest and the government's need for the information is

2   substantial, the Supreme Court and the courts of appeal repeatedly have rejected

3   First Amendment challenges and upheld the validity of disclosure requirements far

4   broader than the one at issue in this case.  *See, e.g.*, *Citizens United v. Fed. Election*

5   *Comm'n*, 558 U.S. 310, 366-371 (2010) (upholding disclosure provisions of

6   Bipartisan Campaign Reform Act of 2002, where there was legitimate interest in

7   information and no evidence of any First Amendment chill); *Buckley v. Valeo*, 424

8   U.S. 1, 66, 69-72 (1976) (noting that "there are governmental interests sufficiently

9   important to outweigh the possibility of infringement" and upholding disclosure

10  requirement where "any serious infringement on First Amendment rights brought

11  about by the compelled disclosure of contributors is highly speculative");

12  *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 832-33 (9th Cir. 2014)

13  (citing cases); *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 470 & n.1

14  (7th Cir. 2012) ("[I]n the aftermath of *Citizens United* a number of suits have been

15  filed challenging federal and state disclosure regulations as facially

16  unconstitutional.  Of the federal courts of appeals that have decided these cases,

17  every one has upheld the disclosure regulations against the facial attacks.").

18      Plaintiff's argument that the Registry's limited disclosure requirement violates

19  the First Amendment finds no support in fact or law.  Critically, plaintiff has not

20  demonstrated that this requirement will "chill" its associational rights, and thus has

21  not made "a prima facie showing of arguable First Amendment infringement."  *See*

22  *Brock v. Local 373, Plumbers Int'l Union of America*, 860 F.2d 346, 349-50 (9th

23  Cir. 1988).  At most, plaintiff has provided evidence of prospective harm to its

24  associational rights from *public* disclosure of the identities of its major donors, as

25  well as harm that might arise if allegedly hostile government officials, who do not

26  actually have and have never had access to their Schedule B information, were to

27  learn the identities of their donors.  *See* Memorandum 14-15; Fink Decl.¶ 11.

28  Accordingly, its First Amendment claim fails at the threshold.  *See Dole v. Local*

*Union 375, Plumbers Int'l Union of America* (*Dole*), 921 F.2d 969, 974 (9th Cir. 1990); *see also Buckley*, 424 U.S. at 69-70.  Moreover, even if plaintiff could demonstrate the requisite harm to its members' associational rights, the Act's reporting and disclosure requirements would survive even the most exacting scrutiny and thus be constitutional.  *See Ctr. for Competitive Politics v. Harris*, No. 2:14–cv–00636–MCE–DAD, 2014 WL 2002244, at *7 (E.D. Cal. May 14, 2014).

### 1.   Plaintiff has not made the required prima facie showing of infringement of its associational rights.

As a threshold matter, plaintiff's assertion that it is not required to demonstrate a prima facie showing of infringement of its First Amendment rights, Memorandum 10-11, is incorrect.  The Ninth Circuit has articulated two tests for evaluating First Amendment challenges to disclosure requirements, both of which require the challenger to make a preliminary factual showing that at least demonstrates a reasonable probability of an actual chilling effect on First Amendment association rights.  Given that the disclosure requirement here is circumscribed, made in the context of the State's regulatory function, and kept confidential, the applicable test is set forth in cases including *Brock*, 860 F.2d 346, *Dole v. Local Union 375, Plumbers Int'l Union of America* (*Dole II*), 950 F.2d 1456 (9th Cir. 1991) and *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009).[6]  *See Ctr. for Competitive*

_____

[6] Contrary to plaintiff's suggestion, these cases are firmly grounded in the Supreme Court's jurisprudence, including *NAACP v. Alabama*, 357 U.S. 449, *Bates v. Little Rock*, 361 U.S. 516 (1960), and *Buckley v. Valeo*, 424 U.S. 1, on which plaintiff mistakenly relies.  Memorandum 10.  In both *NAACP* and *Bates,* the party seeking to withhold information made a prima facie showing that disclosure would infringe its First Amendment rights.  *See NAACP*, 357 U.S. at 462; *Bates*, 361 U.S. at 524.  Once this "uncontroverted showing" of a significant infringement on associational rights was established, the Court then considered the nature of the government's interest and determined that neither the state's interest in regulating business nor the city's power to impose licensing taxes outweighed the possible encroachment on First Amendment rights.  *See NAACP*, 357 U.S. at 464; *Bates*, 361 U.S. 524-25.  By contrast, in *Buckley*, appellants did not make the "requisite factual showing." 424 U.S. at 69.  Instead, appellants "at best [offered] the testimony of several minor-party officials that one or two persons refused to make contributions because of the possibility of disclosure." *Id.* at 71-72.  The Court concluded that "on this record, the substantial public interest in disclosure identified

(continued…)

*Politics*, 2014 WL 2002244, *6 ("[I]n light of [the Attorney General's] role as the state's chief regulator of charitable organizations," her demand is "analogous" to and serves similar interests as the disclosures sought in *Brock* and *Dole*.).  Under this test, plaintiff must make a "prima facie showing of arguable first amendment infringement."  *Brock*, 860 F.2d at 349-50.  This requires plaintiff to demonstrate that a disclosure requirement will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of, the members' associational rights.  *Brock*, 860 F.2d at 350.  The prima facie test has two tiers:  first, plaintiff "must demonstrate a causal link between the disclosure and the prospective harm to associational rights"; and second, plaintiff "must demonstrate that [it] is the type of association where exposure could incite threats, harassment, acts of retribution, or other adverse consequences from affiliating with it."  *Dole*, 921 F.2d at 972 (9th Cir. 1990).  However, even under the test applicable to broad public disclosure requirements (often in the election context), the court "first asks whether the challenged regulation burdens First Amendment rights.  If it does, we then assess whether there is a 'substantial relation' between the burden imposed by the regulation and a 'sufficiently important' governmental interest."  *Protectmarriage.com*, 752 F.3d at 832 (quoting *Citizens United*, 558 U.S. at 366–67); *see also Buckley*, 424 U.S. at 69-74 (setting forth required factual showing to establish that disclosure requirement violates First Amendment).[7]

_____

(…continued)
by the legislative history of this Act outweighs the harm generally alleged."  *Id.* at 72.

[7] *Acorn Investments v. City of Seattle*, 887 F.2d 219 (9th Cir. 1989) and *Talley v. California*, 362 U.S. 60 (1960), on which plaintiff relies, are not to the contrary.  Both of these cases concern infringement on the right to protected expression arising from extremely broad requirements to disclose information that was made publicly available.  Here, by contrast, there is no evidence that the challenged disclosure requirement has any effect on protected expression, let alone that "identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance."  *Talley*, 362 U.S. at 65.  Further, unlike in *Acorn* and
(continued…)

Plaintiff fails to make this showing.  In support of its claim of First Amendment harm, it offers: (1) evidence that Charles and David Koch "have faced unrelenting threats and attacks" due "in part to their work with and perceived ties to the Foundation," Holden Decl. ¶ 4; (2) statements that Foundation events and offices have been protested and articles noting a protest by the Occupy Movement of a Foundation summit in 2011, *id.* ¶ 3; (3) an unsubstantiated statement by the Foundation's Vice President for Development that after a list of its donors was inadvertently left in a hotel room by a Foundation donor, discovered, and published, some individuals on the list were "immediately harassed and their businesses boycotted," Fink Decl. ¶ 6; (4) hearsay that the Foundation's donors are concerned about their contributions becoming public knowledge, *id.* ¶¶ 7-10; (5) the unsubstantiated statement that the "Foundation's donors also worry that disclosure to the Attorney General will lead to their own persecution at the hands of state officials, *id.*¶ 11; and (6) the uncorroborated conclusion that plaintiff would "lose contributions from active donors" if forced to disclose it Schedule B information to the State, *id.*¶ 10.  This is inadequate.

Even if it were admissible,[8] none of this evidence would establish the necessary "causal link" between the particular limited disclosure requirement challenged here and any prospective harm to plaintiff.  *Dole*, 921 F.2d at 972.  Most of plaintiff's evidence involves harm and fear of harm arising from the Kochs' and the Foundation's *public* presence and *public* disclosure of its donors.  *See* Holden Decl.; Fink Decl.  However, plaintiff has not provided any evidence demonstrating how providing to the Registry the exact same information on file with the IRS will have any impact on its members or cause them to suffer any negative

_____

(…continued)
*Talley*, the limited amount of donor information disclosed to the state is kept confidential and protected from public disclosure.  *See Talley*, 362 U.S. at 65; *Acorn*, 887 F.2d at 225; *Ctr. for Competitive Politics*, 2014 WL 2002244, *6.
[8] *See* Defendant's concurrently-filed Objections to Evidence.

consequences.[9]  Plaintiff's "[a]llegations of a subjective 'chill'" are not an adequate substitute for a claim of specific present objective harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Dole,* 921 F.2d at 974 (noting that in addition to failing to offer any objective indicia of an "associational chill," plaintiffs did not explain "how its subjective fear of reprisals could be realized," given that government policy protected the information from public disclosure).  Although plaintiff states that its members fear that disclosure to the Registry will engender "reprisals" by California officials, Memorandum 15, these "broad allegations," are baseless.  *Dole II*, 950 F.2d at 1469.  Plaintiff's citation to one misstatement about the Kochs by the former Chair of the California Fair Political Practices Commission does not establish that the Foundation has been or will be subject to pervasive government hostility.  *See, e.g.*, *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87, 98-99 (1982).  Moreover, and of particular significance, the vast majority of "California officials" have no access to Schedule B information.  *See* Foley Decl. ¶ 11.  With respect to the approximately 53 individuals who can view Schedules B, *id.* ¶ 10, plaintiff has not "establish[ed] that its members legitimately fear[] retribution by those few governmental employees who would have access to its records." *Dole*, 921 F.2d at 974.

Finally, plaintiff's statements regarding its beliefs about how donors would respond if it complies with state law and furnishes a complete Schedule B to the Registry, *see, e.g.*, Fink Decl. ¶ 11, are speculative and do not suffice to establish a prima facie claim.  *See Dole,* 921 F.2d at 973 ("factual gaps in [plaintiff's] evidence are fatal to its case"); *O'Neal v. United States*, 601 F.Supp. 874, 879 (N.D. Ind. 1985) ("The proof offered must be 'objective'-- an allegation of 'apprehension' or subjective deterrence of membership or contribution is not sufficient.").

---

[9] Notably, plaintiff has produced no evidence that annually submitting its Schedule B to the IRS has caused any harm to its members or deterred them from engaging in protected First Amendment activities.

Accordingly, *Dole II*, on which plaintiff relies, is inapposite.  In that case, the Ninth Circuit held that the union had made a prima facie case sufficient to warrant a protective order limiting, but not prohibiting, disclosure of "minutes record discussions of a highly sensitive and political character" where two members submitted letters stating that they would no longer attend meeting given the invasion of privacy entailed in the turnover of union minutes to the government. 950 F.2d at 1460; *see also Perry*, 591 F.3d at 1152, 1163 (proponent of California's Proposition 8, who had been served a request for production of documents seeking, among other things, production of his internal campaign communications relating to campaign strategy and advertising, submitted declaration stating that enforcement of the discovery request would drastically alter how he communicated in the future and that he would be less willing to engage in such communications knowing that his private thoughts and views might be disclosed).  In contrast, plaintiff has offered only general allegations unsupported by objective evidence that are insufficient to meet its burden.  *See Dole*, 921 F.2d at 972 (rejecting affidavit as "wholly conclusory" and insufficient to establish prima facie case of harm); *Buckley*, 424 U.S. at 69-70; *Friends Social Club v. Secretary of Labor*, 763 F. Supp. 1386, 1396 (E.D. Mich. 1991).

## 2. California's reporting and disclosure requirements are reasonable and substantially related to a compelling law enforcement interest.

Because plaintiff has not made a prima facie showing, the Court need not examine whether the contested Schedule B disclosure requirement survives exacting scrutiny.  *See Dole*, 921 F.2d at 974.  However, even if the Court were to undertake this analysis, this requirement would be valid.  In order to pass exacting scrutiny, the government must show that there is a "substantial relation" between the disclosure requirement and a "sufficiently important governmental interest. 'The strength of the governmental interest must reflect the seriousness of the actual

burden on First Amendment rights." *John Doe No. 1*, 561 U.S. at 196 (citations omitted).  Although plaintiff asserts that the Attorney General's request, and by extension the Act's disclosure requirements, are not based on a compelling interest, this argument is unfounded.  As noted above, the Attorney General has primary responsibility for supervising charitable trusts and public benefit corporations in California to protect charitable assets for their intended use.  *See* Cal. Gov't Code §§ 12598(a) & 12581.[10]  Her interest, and that of the State, in performing this regulatory and oversight function and securing compliance with the law is compelling.  *See, e.g.*, *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,* 487 U.S. 781, 792 (1988); *Buckley*, 424 U.S. at 66-68; *NAACP*, 357 U.S. at 463-64.[11]

The requirement that charitable organizations submit an unredacted Schedule B reflecting their major donor information is "reasonably related" to the achievement of this compelling interest.  *See Ctr. for Competitive Politics*, 2014 WL 2002244, *7.  Requiring charitable organizations to make detailed financial and

---

[10] Plaintiff contends that the Attorney General's demand to furnish an unredacted Schedule B "exceeds the scope of her authority under California law" because nothing in Government Code section 12586 requires a charity to provide the source of its assets.  Memorandum 17.  However, plaintiff ignores that the Act gives the Attorney General broad authority to collect information necessary to fulfill her duty to protect the public from misuse of charitable assets and to require charitable organizations to furnish information and reports that contain this information.  *See* Cal. Gov't Code § 12584.  The fact that the Legislature, in a section of the Code pertaining to commercial fundraisers (over which the Attorney General does not have similarly broad supervisory authority), specifically requires the disclosure of donor information does not signal legislative intent to prevent the Attorney General from seeking such information from charities.

[11] Plaintiff posits that because a some states do not require unredacted copies of the Schedule B, that California has no compelling need for this information.  Memorandum 18-19.  As an initial matter, a number of states do require the complete Schedule B.  *See, e.g.*, HAW. REV. STAT. ANN. § 467B-6.5 (2014); KY. REV. STAT. ANN. §§ 367.650-.670 (2014); MISS. CODE ANN. § 79-11-507 (2014).  Moreover, different states have very different regulatory schemes and oversight functions, and some do not register charities at all.  *Compare* DEL. CODE ANN. tit. 6 §§ 2591-97 (2014) *and* MISS CODE ANN. §§ 79-11-501-529 (2014).  States also have different resources available to review information.  Plaintiff's observation that there is variation among state laws does not bear on whether the there is a substantial relationship between the disclosure requirement and an important state interest.

operational disclosures, including reporting information about contributors, helps

protect the public welfare by ensuring that organizations are not abusing their

charitable and exempt designations.  Specifically, Schedule B information, which

reveals not just how much revenue a charity receives, but also who is donating it

and how it is being donated (for example, in cash or in kind), allows the Attorney

General to determine whether an organization has violated the law, including laws

against self dealing, Cal. Corp. Code § 5233; improper loans, *id.* § 5236; interested

persons, *id.* § 5227; or illegal or unfair business practices, Cal. Bus. & Prof. Code

§ 17200.  For example, by examining the Schedule B in conjunction with other

required information under the Act, the Attorney General can ascertain whether a

donor is also an officer or director of a charity and whether more than 49 percent of

"interested persons" are being compensated by the charity in violation of California

Corporations Code section 5227.  The Attorney General can also discover donors

who are "self dealing" by passing money through to family members (who may not

be "interested persons" who would appear in other schedules) or to fund enterprises

that are for their own benefit and not for a public charitable purpose in violation of

California Corporations Code sections 5233 and 5236.[12]  The Attorney General also

uses major donor information to determine whether donors are related to entities

that are doing business with a charity, as well as to test whether complaints filed

against an organization alleging self dealing and other violations are frivolous or

whether they merit further investigation, often without subjecting that organization

to the intrusion and burden of an audit.  Even in cases where a charity is outside of

the Attorney General's jurisdiction, Schedule B information is used to identify

possible wrongdoing and refer matters to other state and federal agencies.  In all

---

[12] All of these acts would also violate California Business and Professions Code section 17200. *See State Farm Fire & Casualty Co. v. Sup. Ct.*, 45 Cal. App. 4th 1093, 1103 (1996) (violations of any law -- federal, state, or local -- give rise to a cause of action for unfair competition).

1   these ways the required disclosure serves the Attorney General's legitimate interest

2   in ensuring compliance with and enforcing the law.  *See Buckley*, 424 U.S. at 64,

3   66, 68-72; *see also Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 378, 395-96

4   (2000); *Brock*, 860 F.2d at 350.

5       The disclosure of an unredacted Schedule B is both necessary to achieve

6   compelling state interests, and narrowly tailored to avoid impinging upon rights of

7   association unnecessarily, if at all.  To ensure that the organization is reporting the

8   same information to the state and federal government (and simultaneously reduce

9   the paperwork burden on filers), the Attorney General requires disclosure of Form

10  990 and related schedules, rather than choosing to request the same information on

11  its own, state form.  Although plaintiff states that "nothing prevents" the Attorney

12  General from "reversing course" and deciding to publicly disclose Schedule B

13  information, the fact remains that the information is and always has been kept

14  confidential.  Foley Decl. 8.[13]  Mere speculation that this policy may change or that

15  someone could mount a successful challenge to the Attorney General's rule

16  regarding the confidentiality of Schedule B information (despite the lack of legal

17  foundation for doing so),[14] does not undermine the conclusion that the disclosure

18  requirement itself is narrowly tailored to avoid unnecessarily impinging on rights of

19  association.  *Cf. Nelsen v. King County*, 895 F.2d 1248, 1254 (9th Cir. 1990).

20  Although plaintiff asserts that the Attorney General could subpoena major donor

21          [13] Plaintiff's contention that the Attorney General "admitted as much" in the

22  Ninth Circuit argument in *Center for Competitive Politics v. Harris* is misleading.
    What counsel for the Attorney General said was that there are background rules

23  regarding the treatment of personal information contained in California Civil Code
    sections 1798 et seq., and that it has always been the policy of the Attorney General

24  to keep Schedules B confidential.  Counsel also opined that if theoretically some
    future Attorney General chose to change this policy that would be a different case.

25  Case No. 14-15978, December 8, 2014 Oral Arguments at 20:51-21:48.  It is not,
    however, this case.

26          [14] Plaintiff states that the Attorney General is required to disclose Schedules

27  B pursuant to Government Code section 12590.  Memorandum 16.  However,
    plaintiff overlooks the fact that section 12590 confers considerable discretion on the

28  Attorney General to exempt information from disclosure, as she has done here.

information after determining that a charity is likely engaged in fraudulent conduct, this alternative is not "as effective in achieving the legitimate purpose that the statute was intended to serve." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 (1997). It has been the experience of the Attorney General's Office that once a charity is made aware that it is under suspicion, it is more likely to hide or tamper with evidence, including instructing its donors what they should say in response to questioning. *See* Declaration of Steve Bauman, ¶ 6. Accordingly, the uniform requirement that all charities provide an unredacted Schedule B avoids sending a signal that could trigger such interference and allows the Attorney General to obtain more accurate information. *Id.*

In support of its argument that the State's enforcement of the law and protection of the public trust could be better tailored, plaintiff mistakenly relies on cases such as *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980). In *Schaumburg*, the Court invalidated an ordinance that required charitable organizations, after registering with the State of Illinois, to obtain a permit before soliciting donations. Notably, the state conditioned the issuance of the permit on proof that more than 75 percent of solicited funds would be used for charitable purposes. *Id.* at 623-24. Unlike the disclosure requirement at issue in this case, which does not regulate speech or association, the ordinance in *Schaumburg* was on its face a "direct and substantial limitation on protected activity," that is, the solicitation of donations. *Id.* at 636. After finding the government's interest in preventing fraud and protecting the public to be "indeed substantial," the Court concluded that the ordinance was "insufficiently related to the governmental interests asserted in its support to justify its interference with protected speech." *Id.* at 636, 639. Critically, in determining that the government's "legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation," the Court cited with approval to Illinois' general disclosure and registration requirements, suggesting that these were

constitutionally permissible.  *Id.* at 637-38 & n. 12; *see also Riley*, 487 U.S. at 781, 795, 800 ("North Carolina may constitutionally require fundraisers to disclose certain financial information to the State.") (citation omitted); *Famine Relief Fund v. State of W.Va.*, 905 F.2d 747, 752 (4th Cir. 1990) ("Disclosure of financial statements "fosters the substantial ... interests in informing the public and preventing fraud without being unduly burdensome.").  Thus, *Schaumberg* supports the constitutionality of the requirement to furnish a complete copy of the Schedule B to the Registry.

### B.   Federal Law Does Not Preempt State Law Disclosure Requirements for Tax Exempt Organizations.

Plaintiff erroneously asserts that federal law preempts state law requiring organizations with tax-exempt status to disclose federal tax return information generally, and a complete copy of the Schedule B form in particular.  *See* Memorandum 20-23.  In support of this contention, plaintiff relies on language in Internal Revenue Code section 6104, which governs disclosure by the IRS of tax information that it receives from tax-exempt organizations.  However, the text of section 6104, as well as the relevant legislative history, demonstrate that the statute applies only to the IRS and does not prevent state officials from demanding and receiving the same tax information directly from an exempt organization.  *See Stokwitz v. United States*, 831 F.2d 893, 895-96 (9th Cir. 1987); *Ctr. for Competitive Politics*, 2014 WL 2002244, *3-5.  The legislative history also demonstrates that Congress intended to allow state officials to obtain federal tax filings and/or the information contained in federal tax filings.  *See Stokwitz*, 831 F.2d at 896; Gordon Decl. ¶ 4, Exh. B.  Accordingly, plaintiff cannot prevail on the merits of its Supremacy Clause claim.  *See, e.g.*, *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003).

Federal law may preempt state law in one of three ways, none of which apply here.  First, Congress may expressly state its intent to preempt state law in the

direct language of a statute.  *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

Second, Congressional intent to preempt state law can be inferred when Congress

"occupies the field" by passing a comprehensive legislative scheme that leaves "no

room" for supplemental regulation.  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218,

230 (1947).  Third, federal law may preempt state law to the extent that state law

directly conflicts with federal law.  *See Florida Lime & Avocado Growers, Inc. v.

Paul*, 373 U.S. 132, 141-43 (1963).  Conflict preemption requires a showing that

"compliance with both federal and state regulations is a physical impossibility," *id.*,

or that state law "stands as an obstacle to the accomplishment and execution of the

full purposes and objectives of Congress."  *Pacific Gas & Electric Co. v. State

Energy Resources Cons. and Dev. Comm.*, 461 U.S. 190, 204 (1983).

Congressional intent is the "ultimate touchstone" in every preemption case.

*Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963).  All preemption

analysis "starts with the assumption that the historic police powers of the States [are]

not to be superseded by [a] Federal Act unless that is the clear and manifest purpose

if Congress."  *Rice*, 331 U.S. at 230.  This is particularly true "in those [cases] in

which Congress has 'legislated . . . in a field which the States have traditionally

occupied.'"  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation omitted).[15]  A

court must presume that a state statute is not preempted, and the moving party has

the burden of overcoming that presumption.  *Pharmaceutical Research and Mfrs. of

America v. Walsh*, 538 U.S. 644, 661-662 (2003).  Plaintiff has not met and cannot

meet this burden.

Plaintiff unjustifiably contends that Internal Revenue Code section 6104

demonstrates that Congress intended to create absolute protections for the tax

information of exempt organizations and a complete ban of the ability of state

---

[15] The common law authority vesting state attorneys general with oversight of charitable assets and organizations dates back to the Statute of Charitable Uses in 1601, predating the Internal Revenue Code by centuries.  *See* STATE ATTORNEYS GENERAL POWERS AND RESPONSIBILITIES (Emily Myers & Lynne Ross, eds., 2007).

1    officials to obtain that information directly.  Memorandum 21-22.  Section 6104,

2    like the confidentiality provisions in the Internal Revenue Code generally, governs

3    what *the IRS* can and cannot do with information it receives from filers; it does not

4    govern what states may ask of federal filers, including charitable organizations.  At

5    most, section 6104 sets forth the procedure by which the Attorney General could

6    obtain tax return information about an exempt organization *from* the IRS.  *See* I.R.C.

7    §§ 6104 (c) & (d).  Section 6104 does not limit the authority of the Attorney

8    General or other state officials to obtain this or other information, including a

9    complete Schedule B, directly from plaintiff or any other 501(c)(3) organization

10   registered to do business in California.  *See* I.R.C. § 6104.

11       As the Ninth Circuit held in *Stokwitz*, 831 F.2d 893, in which it analyzed the

12   applicability of the confidentiality provisions set forth in section 6103 of the

13   Internal Revenue Code, "the legislative history, structure, and language" of that

14   section reveal "that the statute is concerned solely with the flow of tax data to, from,

15   or through the IRS."  831 F.2d at 896.  The Court noted that, in enacting section

16   6103, Congress disclaimed any intention "to limit the right of an agency (or other

17   party) to obtain returns or return information directly from the taxpayer through the

18   applicable discovery procedures."  *Id.* (citing S. Rep. No. 938, 94th Cong., 2nd Sess.

19   330, reprinted in 1976 U.S.C.C.A.N. 3759).  Thus, "Section 6103 was not designed

20   to provide the only means for obtaining tax information; it simply provides the only

21   means for acquiring such information from the IRS."  831 F.2d at 897.

22       Plaintiff attempts to discount *Stokwitz* because that case addressed section

23   6103 and not section 6104 of the Internal Revenue Code.  *See* Memorandum 22.

24   However, the "ultimate task in any pre-emption case is to determine whether state

25   regulation is consistent with the structure and purpose of the statute as a whole."

26   *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).  Section 6104

27   includes exceptions to the general rule, set forth in section 6103, that *the IRS* must

28   keep tax returns and return information confidential, *see* I.R.C. § 6103, which

1    authorize *the IRS* to disclose certain information pertaining to tax-exempt

2    organizations under certain circumstances.  Plaintiff has no credible argument that

3    section 6103 governs only the IRS, while section 6104, simply because it involves

4    exempt charitable organizations, governs more globally.

5        Moreover, and of particular significance, section 6104 specifically

6    incorporates the meaning of "return" and "return information" set forth in section

7    6103.  As the Ninth Circuit has held, these statutory definitions "confine the

8    statute's coverage to information that is passed through the IRS." *Stokwitz*, 831

9    F.2d at 895-96.  They do not apply to information given directly to a state by

10   taxpayer or a tax exempt organization.  Accordingly, the copy of the Schedule B

11   sought by the Attorney General is not federal tax return information and thus

12   section 6104 is not applicable.  *See id.* at 896; *see also* Gordon Decl. ¶ 4, Exh. B

13   ("[C]opies of the Federal returns or the return information required by a State or

14   local government to be attached to, or included in, the State and local return do not

15   constitute Federal "returns of return information" subject to the Federal

16   confidentiality rules.").

17       Given that it was not the "clear and manifest purpose" of Congress to preempt

18   state reporting and disclosure requirements (for charitable organizations), and that

19   Congress affirmatively permits states to obtain both federal tax filings and the

20   information contained in federal tax filings, there is no express preemption and

21   "field preemption is not an issue." *Ting*, 319 F.3d at 1136.  Plaintiff also cannot

22   establish conflict preemption.  Federal law specifically allows state officials to

23   obtain tax returns and tax return information, including a complete Schedule B, and

24   exempts state reporting and disclosure laws from federal confidentiality

25   requirements.  *See, e.g.*, *Stokwitz*, 831 F.2d at 895-96.  Accordingly, plaintiff cannot

26   show that the Attorney General's demand that plaintiff furnish a complete copy of

27   the Schedule B on file with the IRS, impedes any purpose or objective of Congress.

28   *See Hillsborough County Fla. v. Automated Med Labs., Inc*., 471 U.S. 707, 716

1   (1985).  Plaintiff thus cannot overcome the strong presumption against preemption,

2   and its preemption claim provides no basis for the requested preliminary injunction.

3   *See Ctr. for Competitive Politics*, 2014 WL 2002244, *5.

4   **III.  PLAINTIFF HAS FAILED TO DEMONSTRATE EITHER IRREPARABLE
        INJURY OR THAT THE BALANCE OF HARMS AND THE PUBLIC INTEREST
5       WEIGH IN FAVOR OF AN INJUNCTION**

6            In addition to failing to show a likelihood of success on the merits of its claims,

7   plaintiff also has not met its burden to demonstrate irreparable injury.  As shown

8   above, plaintiff has not established that it has suffered or would suffer a cognizable

9   injury, and certainly not one that is irreparable.  Although plaintiff asserts that the

10  loss of its First Amendment and constitutional rights constitutes irreparable injury,

11  *see* Memorandum 23, where, as here, a constitutional claim is unsupported and fails

12  as a matter of law, it is "too tenuous" to support the requested relief.  *Goldie's*

13  *Bookstore, Inc. v. Superior Ct*., 739 F.2d 466, 472 (9th Cir. 1984); *see also  Dex*

14  *Media West, Inc. v. City of Seattle*, 790 F. Supp. 2d 1276, 1289 (W.D. Wash.

15  2011).[16]

16           Plaintiff's remaining assertions of injury are also unfounded.  Insofar as

17  plaintiff claims that it will be injured by suspension or fines imposed pursuant to

18  the Act if it continues to refuse to furnish a complete copy of its schedule B, it can

19  readily avoid such a consequence by complying with the law.  *See Winter*, 555 U.S.

20  at 22; 11A Wright & Miller, *Federal Practice & Procedure* § 2948.1 (3d ed. 2014)

21  ("[A] party may not satisfy the irreparable harm requirement if the harm

22  complained of is self-inflicted.").  Ultimately, plaintiff has not established, and

23           [16] Plaintiff's assertion that absent injunctive relief, its ability to engage in
    "fully protected fundraising speech" is also entirely unsubstantiated and is
24  particularly weak.  The law requires charitable organizations to furnish information
    about their donors; it does not place any limitations on protected speech nor does it
25  compel any speech by fundraisers.  *See* Cal. Gov't Code §§ 12584 & 12586; Cal.
    Code Regs. tit. 11, §§ 301 & 306 (2014); *compare Riley*, 487 U.S. at 788-802.  As
26  noted above, there is a significant constitutional distinction between requiring the
    reporting of funds that may be used to finance speech and the direct regulation of
27  speech itself.  *See, e.g., Citizens United*, 558 U.S. at 369-71; *cf. Cal. Pro-Life
    Council, Inc. v. Getman*, 328 F.3d 1088, 1104 (9th Cir. 2003).

28

                                                    24

1   cannot establish harm sufficient to outweigh the rule that "[a]ny time a State is

2   enjoined by a court from effectuating statutes enacted by representatives of its

3   people, it suffers a form of irreparable injury."  *Maryland v. King*, 133 S. Ct. 1, 2

4   (2012) (quotation and citation omitted).  While plaintiff asserts that an injunction is

5   needed to "preserve the status quo," Memorandum 2, in fact, the "status quo" is that

6   the law requires charitable organizations, like plaintiff, to submit complete

7   information, including a copy of its Schedule B, to the Attorney General.  *Cf.*

8   *Golden Gate Restaurant Ass'n v.City and County of San Francisco*, 512 F.3d 1112,

9   1116 (9th Cir. 2008).  Plaintiff's notion that the Attorney General's failure to detect

10  its repeated non-compliance with the law translates into lack of injury to the State

11  betrays a profound lack of appreciation for its legal duties and is, at best, incorrect.

12      Injury to the State aside, it is not in the public interest to interfere with the

13  Attorney General's authority to supervise and regulate charitable organizations and

14  to enforce the law by limiting her ability to request and receive highly relevant

15  information.  *See Ctr. for Competitive Politics*, 2014 WL 2002244, *7 ("[I]t is in

16  the public interest that [the Attorney General] continues to serve chief regulator of

17  charitable organizations in the state in the manner sought.").  Accordingly, the law,

18  the balance of harms, and the public interest all weigh decisively against a

19  preliminary injunction.

20                              **CONCLUSION**

21      For the foregoing reasons, the Attorney General respectfully requests that the

22  Court deny plaintiff's motion for a preliminary injunction.

23

24

25

26

27

28

1    Dated:  January 21, 2015                    Respectfully submitted,

2                                                KAMALA D. HARRIS
                                                 Attorney General of California
3                                                TAMAR PACHTER
                                                 Supervising Deputy Attorney General
4
                                                 */s/ Alexandra Robert Gordon*
5                                                ALEXANDRA ROBERT GORDON
                                                 EMMANUELLE S. SOICHET
6                                                Deputy Attorneys General
                                                 *Attorneys for Defendant*
7                                                *Attorney General Kamala D. Harris*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28