1    KAMALA D. HARRIS
     Attorney General of California
2    TAMAR PACHTER
     Supervising Deputy Attorney General
3    ALEXANDRA ROBERT GORDON
     State Bar No. 207650
4    JOSE A. ZELIDON-ZEPEDA
     State Bar No. 227108
5    KEVIN A. CALIA
     State Bar No. 227406
6    EMMANUELLE S. SOICHET
     State Bar No. 290754
7    P. PATTY LI
     State Bar No. 266937
8    Deputy Attorneys General
       455 Golden Gate Avenue, Suite 11000
9      San Francisco, CA  94102-7004
       Telephone:  (415) 703-1577
10     Fax:  (415) 703-1234
       E-mail:  patty.li@doj.ca.gov
11   Attorneys for Defendant
     Attorney General Kamala D. Harris

12                  IN THE UNITED STATES DISTRICT COURT

13              FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                         WESTERN DIVISION

15

16

| | |
|---|---|
| 17 **AMERICANS FOR PROSPERITY FOUNDATION,** | 2:14-CV-09448-R-FFM |
| 18                                    Plaintiff, | **JOINT STIPULATION RE: DEFENDANT KAMALA D. HARRIS'S MOTION TO COMPEL RESPONSES TO FIRST SETS OF DISCOVERY REQUESTS** |
| 19 **v.** | |
| 20 **KAMALA HARRIS, in her Official Capacity as Attorney General of the State of California,** | Date:            October 5, 2015<br>Time:            10:00 a.m.<br>Courtroom:   8<br>Judge:          The Hon. Manuel L. Real |
| 21 | |
| 22                                    Defendant. | |
| 23 | Discovery Cutoff:  January 4, 2016<br>Pretrial Conf.:      January 25, 2016<br>Trial Date:          February 23, 2016<br>Action Filed:        December 9, 2014 |
| 24 | |
| 25 | |

26

27

28

# TABLE OF CONTENTS

**Page**

Introductory Statements ......................................................................... 1
    I.     The Attorney General's Introductory Statement .................................. 1
    II.    Plaintiff's Introductory Statement ........................................................ 3

Joint Specifications of Issues in Dispute ................................................ 5
    I.     Date Range for Discovery ...................................................................... 5
        A.    The Attorney General's Position ............................................... 5
        B.    Plaintiff's Position ...................................................................... 6
    II.    Geographic Scope for Discovery ........................................................... 6
        A.    The Discovery Requests and Responses in Dispute.................. 6
        B.    The Attorney General's Position ............................................... 8
        C.    Plaintiff's Position ...................................................................... 9
    III.   The Effect of the Preliminary Injunction ........................................... 11
        A.    The Discovery Requests and Responses in Dispute................ 11
        B.    The Attorney General's Position ............................................. 16
            1.    The Preliminary Injunction Does Not Limit
                Discovery.......................................................................... 17
            2.    The Preliminary Injunction Does Not Apply to the
                Request For Redacted Schedules B That Must Be
                Made Available to the Public ........................................ 19
        C.    Plaintiff's Position ................................................................... 22
            1.    The Preliminary Injunction Precludes the Attorney
                General's Requests for Identifying Information
                about the Foundation's Donors ..................................... 22
            2.    Because Even Redacted Schedules B Can Be Used
                To Identify Individual Donors, The Foundation
                Will Produce Aggregated Information In Another
                Form .................................................................................. 24
    IV.   First Amendment's Effect on Discovery Requests............................ 24
        A.    The Discovery Requests and Responses in Dispute................ 24
        B.    The Attorney General's Position ............................................. 38
            1.    Plaintiff Has Failed to Establish Its Prima Facie
                Case .................................................................................. 40
            2.    The Information Sought Is Highly Relevant to the
                Litigation ......................................................................... 41
        C.    Plaintiff's Position ................................................................... 43
    V.    Plaintiff's Relevance Objections.......................................................... 48
        A.    The Relationship Between the Foundation and AFP .............. 48

i

# TABLE OF CONTENTS
(continued)

| | | | | Page |
|---|---|---|---|---|
| | | 1. | The Discovery Requests and Responses in Dispute | 48 |
| | | 2. | The Attorney General's Position | 50 |
| | | 3. | Plaintiff's Position | 53 |
| | B. | The Organizational Structure of the Foundation and Its State and Local Affiliates | | 54 |
| | | 1. | The Discovery Requests and Responses in Dispute | 54 |
| | | 2. | The Attorney General's Position | 58 |
| | | 3. | Plaintiff's Position | 60 |
| | C. | The Foundation's Activities in California | | 61 |
| | | 1. | The Discovery Requests and Responses in Dispute | 61 |
| | | 2. | The Attorney General's Position | 63 |
| | | 3. | Plaintiff's Position | 64 |
| | D. | Information Regarding Donations to the Foundation or AFP | | 65 |
| | | 1. | The Discovery Requests and Responses in Dispute | 65 |
| | | 2. | The Attorney General's Position | 72 |
| | | 3. | Plaintiff's Position | 74 |
| VI. | Plaintiff's Privacy Objections | | | 76 |
| | A. | The Discovery Requests and Responses in Dispute | | 76 |
| | B. | The Attorney General's Position | | 78 |
| | C. | Plaintiff's Position | | 79 |
| VII. | Plaintiff's Failure to Produce Any Documents | | | 80 |
| | A. | The Attorney General's Position | | 80 |
| | B. | Plaintiff's Position | | 80 |
| VIII. | Proposed Resolution | | | 81 |
| | A. | The Attorney General's Position | | 81 |
| | B. | Plaintiff's Position | | 81 |

ii

# INTRODUCTORY STATEMENTS

## I. THE ATTORNEY GENERAL'S INTRODUCTORY STATEMENT

The Attorney General seeks an order compelling Plaintiff to respond to the Attorney General's first set of interrogatories and requests for production of documents, the vast majority of which Plaintiff has refused to respond to at all and the remainder to which it has offered only partial and inadequate responses.

The Attorney General propounded these interrogatories and requests for production on May 22, 2015. They seek information and documents central to the Plaintiff's claims, exclusively in its possession, and that would allow the Attorney General to mount a defense.[1] This includes information and documents about Plaintiff's operations and organizational structure; its fundraising practices, projections, or yield; its donors and the types of donations it receives; and its relationship with its sister organization Americans for Prosperity and its own local chapters.

Recognizing that some—though not all—of the requested donor information is sensitive, the Attorney General offered in conjunction with the discovery requests to strengthen the parties' existing protective order to create an attorneys' eyes only confidentiality designation. Declaration of P. Patty Li in Support of Defendant Attorney General Kamala D. Harris's Motion to Compel ("Li Decl."), Ex. 7. The existing protective order already prohibits the Attorney General from disclosing or using the information for law enforcement purposes outside this lawsuit. The proposed revised agreement would limit access to highly sensitive information, such as information that might identify the Foundation's donors, to litigation counsel. This revision would further ensure that no one else at the Attorney

---

[1] Plaintiff's as-applied challenge to the Schedule B requirement requires a showing of "a reasonable probability that the compelled disclosure of [its] contributors' names will subject them to threats, harassment, or reprisals." *Center for Competitive Politics v. Harris*, 784 F.3d 1307, 1317 (9th Cir. 2015) (internal quotations and citation omitted).

1  General's Office, including the section that regulates charities, would have access
2  to information relating to or contained in Plaintiff's Schedule B.  Li Decl., Ex. 8.

3       Plaintiff's discovery responses consist overwhelmingly of objections, mostly
4  boilerplate, and a refusal to cooperate with even elementary requests.  Plaintiff
5  refused to respond at all to twelve of twenty requests for production.  In response to
6  most of the interrogatories, Plaintiff gave a litany of objections—including five
7  pages of general objections—followed by anemic responses no more informative
8  than the pleadings.

9       Plaintiff relies upon the Court's preliminary injunction and the First
10  Amendment in refusing to provide *any* information pertaining broadly to (1) its
11  donors, (2) its donors' alleged experiences of harassment, including those
12  specifically alleged in the complaint, or (3) Plaintiff's fundraising practices.
13  However, neither this Court's Order nor the First Amendment can be read so
14  broadly as to deny the Attorney General basic information necessary to defend
15  against Plaintiff's claims.  Plaintiff also contends that it can limit its responses to a
16  twenty-one month window from 2013 to 2014, even though the complaint alleges
17  incidents dating back at least to 2010 and 2011, and Plaintiff has demanded
18  information and documents from the Attorney General dating back to 2000.

19       Plaintiff's refusal to cooperate with discovery effectively precludes the
20  Attorney General from preparing a defense.  Information about the core issues in
21  this case, such as the First Amendment harm that Plaintiff and its donors have
22  suffered, or the chilling effect on its First Amendment rights that has allegedly
23  resulted from the Schedule B submission requirement, are both essential to the
24  defense and exclusively within the Plaintiff's possession and control.  With
25  discovery ending in four months and the window for depositions closing, Plaintiff
26  has stonewalled on most of the Attorney General's document requests, failed to
27  produce a single document, and provided inadequate interrogatory responses.  It has
28  refused to produce *any* information about its fundraising practices, Schedule B

2

donors, or pertaining to its allegations of harm, without which the Attorney General cannot challenge Plaintiff's allegations that its donors face harm from public or private entities if Plaintiff submits its Schedule B forms to a confidential state registry.  Plaintiff cannot preclude the Attorney General from testing its allegations of First Amendment harm by denying access to information and documents. Plaintiff's offer to allow the anonymous testimony of donors that it has selected does not comply with its discovery obligations and is insufficient to permit the Attorney General to defend the claims alleged.

On July 31, 2015, the Attorney General sent Plaintiff a Local Rule 37-1 pre-filing letter outlining the deficiencies in Plaintiff's responses and proposing to compromise and discuss some of the general and specific objections Plaintiff raised.  Li Decl., Ex. 10.  During the meet and confer on August 11, 2015, Plaintiff rejected the Attorney General's offer to compromise on almost anything, including the date-range for discovery, and stood firmly on its objections.  As discussed below, the parties have approached a compromise on one interrogatory and corresponding request for production; however, this motion is necessary because Plaintiff maintains its objections to fourteen out of fifteen interrogatories and sixteen of twenty requests for production.  Because Plaintiff's continued objections are unjustified, the Court should compel responses to Interrogatory Nos. 1 to 12 and 14 to 15, and Request for Production Nos. 1 to 15 and 17 to 20.

## II.  PLAINTIFF'S INTRODUCTORY STATEMENT

The Attorney General raises a litany of discovery gripes with no merit to accompany any.  Indeed, the focus of her dissatisfaction is the Foundation's refusal to turn over information identifying individual donors in response to various of her discovery requests.  Of course, that refusal simply repeats the refusal that led to this lawsuit in the first place and, more importantly, led to the Court's preliminary injunction that, by its terms, currently prohibits the Attorney General from demanding such information.  Dkt. 29, Order on Motion for Preliminary Injunction,

3

Feb. 17, 2015 at 3 ("the Attorney General is preliminarily enjoined from demanding, and/or from taking any action to implement or to enforce her demand for, a copy of the Foundation's Schedule B to IRS Form 990 or any other document that would disclose the names and addresses of the Foundation's donors, ***until this Court issues a final judgment***") (emphasis added).  Nothing has changed since Your Honor's decision (certainly, no final judgment has been rendered) that would grant the Attorney General access, through discovery requests or otherwise, to donor information that she continues to seek.  Nor has the Attorney General sought any modification of the operative injunction.  Although we have repeatedly asked the Attorney General to offer specific proposals related to specific requests that would not run afoul of the injunction, she has declined to offer any such compromise and now seeks compulsion instead.

To the extent the Attorney General's discovery requests do not impermissibly seek donor information in contravention of the Court's injunction, they are otherwise plainly overbroad in contravention of basic discovery rules.  Attempting to comply would unduly burden the Foundation in attempting to adequately respond.  Indeed, her requests are, in large part, so overbroad as to border on nonsensical.  Even as to those, however, the Foundation has tried to cooperate.  Through the meet-and-confer process, we have welcomed constructive dialogue whereby both sides might walk through *each* of the Attorney General's requests *as propounded* so that she can explain exactly what she seeks, why she considers it relevant, and how other information provided by the Foundation fails to suffice.  But the Attorney General has refused.  She instead comes before the Court with an overwhelming barrage of motion paper as excessive in volume as her discovery requests are in scope.

No merit lies beneath the ocean of ink now spilled by the Attorney General.  This Court should deny the motion to compel.

# JOINT SPECIFICATIONS OF ISSUES IN DISPUTE

## I.   DATE RANGE FOR DISCOVERY

### A.   The Attorney General's Position

The Attorney General seeks responses in the date range from 2010 forward.[2] *See* Li Decl., Exs. 10 at 2, 12.  This period tracks the harms alleged in the complaint, as discussed below, and is thus "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. Proc. 26(b)(1).  Plaintiff has not argued that the collection and review in this date range would be unduly burdensome.

Instead, Plaintiff has said that it will not produce any documents or information dating before March 7, 2013—the date when the Attorney General first sent Plaintiff a letter demanding it comply with the Schedule B requirement.[3]  Li Decl., Ex. 11 at 2-3.  Plaintiff has taken this position even though it has demanded that the Attorney General respond to Plaintiff's discovery requests going back as far as January 1, 2000.  Li Decl., Ex. 15 at 1.

This attempt to curtail the Attorney General's discovery has no legal or factual justification.  The allegations of the complaint are not limited to this period.  Plaintiff has alleged animus and threats dating back at least to 2010—three years before the beginning of the date range it seeks to impose—first in the complaint and again in its motion for preliminary injunction.  *See, e.g.*, Li Decl., Ex. 1 (Compl. ¶¶ 13-14, 17); Ex. 3 (Decl. of Mark Holden in Supp. of Pl.'s Mot. for Preliminary Injunction ¶¶ 3-4); Ex. 4 (Decl. of Christopher Fink in Supp. of Pl.'s Mot. for

---

[2] This date range would apply to Interrogatory Nos. 1-9 and 14, and Request for Production Nos. 4-9, 12, 17, 19, and 20.  The remaining requests (Interrogatory Nos. 10-13 and 15; Request for Production Nos. 1-3, 10-11, 13-16, and 18) deal primarily with allegations in the complaint and, therefore, do not contain specified date ranges.

[3] Plaintiff has indicated an intent to use December 9, 2014, the date that it filed this suit, as the end of its discovery timeframe.  Li Decl., Ex. 11.  To the extent that Plaintiff does not rely upon instances of alleged harm after this date, the Attorney General does not object to this cutoff.

5

Preliminary Injunction at ¶ 5 (citing undated "threats")).  The complaint is based almost entirely on allegations of threats to donors that have nothing to do with the Attorney General's attempts to enforce the Schedule B requirement, *see* Li Decl., Ex. 1 (Compl. ¶¶ 13-18).  The date of the Attorney General's letter thus does not mark the beginning of the relevant time period.

Further, Plaintiff's attempt to limit the Attorney General's discovery to the 2013-2014 period, with exceptions for specific incidents of harm that *Plaintiff* will designate, does not comply with its discovery obligations.  Under Rule 26, the Attorney General has a right to request discovery reasonably calculated to lead to admissible evidence, and to decide what evidence to use in defense of the complaint, without Plaintiff's screening.  Fed. R. Civ. Proc. 26(b)(1).

### B.   Plaintiff's Position

This dispute is moot.  Contrary to the Attorney General's position above, the Foundation has used January 1, 2010 as the cut-off date for the collection and production of documents in response to RFP Nos. 1, 2, 3, 11, 12, 14,15, 17, and 18. It will likewise use the same January 1, 2010 cut-off date to the extent Your Honor overrules any of the Foundation's objections as to the Attorney General's remaining requests.

## II.   GEOGRAPHIC SCOPE FOR DISCOVERY

### A.   The Discovery Requests and Responses in Dispute

Definition of "FOUNDATION" in the Attorney General's First Set of Discovery Requests, dated May 22, 2015:

> "FOUNDATION" refers to plaintiff Americans for Prosperity Foundation, including (but not limited to) any of its state or local affiliates, offices, chapters, branches, or programs.

Objection to definition of "FOUNDATION," from Plaintiff's June 29, 2015 Responses to the Attorney General's First Set of Discovery Requests:

> The Foundation objects to the definition of "FOUNDATION" as overbroad and unduly burdensome to the extent it includes state or

6

local affiliates, offices, chapters, branches, or programs not located in the State of California.

Plaintiff's further clarification regarding the geographic scope of discovery (Li Decl., Ex. 13):

> On Tuesday's call, we represented that we would not limit our production of information regarding harms or chilling to only the state of California. For your convenience, the discovery requests related to such harms or chilling are AG Requests for Production 1, 2, 11, 12, 14, and 15 and AG Interrogatories 8, 9, 11, 12, and 13. We stand on the geographic scope of our responses and objections to all other requests.

*     *     *

**INTERROGATORY NO. 10:**

DESCRIBE all instances in which the IRS or other GOVERNMENT OFFICIALS have informed the FOUNDATION that it was subject to an examination or investigation of compliance with federal or state executive orders, statues, rules, or regulations, including (but not limited to) the date of any such notice; the facts at issue; and the resolution, if applicable.

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory on the grounds that it is vague, overbroad (including as to time and scope), unduly burdensome, and calls for information outside of the Foundation's possession, custody, or control.

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks information about "all instances" in which government officials informed the Foundation that it was subject to "an examination or investigation of compliance with federal or state executive orders, statu[t]es, rules, or regulations." The terms of this Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects that information about investigations or examinations by jurisdictions other than California is wholly irrelevant, and a request for such information is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the California Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Information about investigations by other jurisdictions relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities. Such information simply has no bearing on this case.

Subject to and without waiving these general and specific

7

objections, the Foundation responds as follows: Aside from the correspondence preceding this case about its refusal to submit its Schedule Bs, the Foundation has never been informed by California officials that it was subject to an examination or investigation for compliance with California law.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS relating to all instances in which the IRS or other GOVERNMENT OFFICIALS have informed the FOUNDATION that it was subject to an examination or investigation of compliance with federal or state executive orders, statues, rules, or regulations, including (but not limited to) the date of any such notice; the facts at issue; and the resolution, if applicable.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS relating to all instances" in which government officials informed the Foundation that it was subject to "an examination or investigation of compliance with federal or state executive orders, statu[t]es, rules, or regulations." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects that documents relating to investigations or examinations by jurisdictions other than California are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the California Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Materials about investigations by other jurisdictions relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities. Such materials simply have no bearing on this case.

The Foundation also objects that, to the extent the California Attorney General seeks documents relating to investigations or examinations by California officials, she already has such documents in her possession, custody, or control. For these reasons, the Foundation will not produce documents in response to this Request.

**B.    The Attorney General's Position**

Plaintiff has also imposed an unreasonable geographic limit on the scope of its responses by attempting to exclude from the definition of "FOUNDATION" "state or local affiliates, offices, chapters, branches, or programs not located in the State of California," and by refusing to comply with Defendant's requests for information and documents relating to Plaintiff's activities in other states or investigations by

8

1  government officials outside of California (Interrogatory No. 10 and Request for

2  Production No. 13).  There are no grounds for imposing such limits.

3      Plaintiff's allegations are national in scope, and their discovery responses must

4  reflect that geographical scope.  *U.S. E.E.O.C. v. ABM Indus. Inc.*, No.

5  1:07CV01428LJOTAG, 2008 WL 5385618, at *5 (E.D. Cal. Dec. 23, 2008) ("The

6  geographic scope of discovery is driven by the facts of the case.").  Plaintiff is a

7  national organization based in Delaware, with operations and donors spread

8  "throughout the country."  Li Decl., Ex. 1 (Compl. at ¶¶ 7, 9).  The complaint and

9  motion for preliminary injunction repeatedly reference persons and entities outside

10  California, and rely on alleged threats occurring online and related to "[t]he

11  Foundation's events and offices throughout the country."  Li Decl., Ex. 1 (Compl.

12  at ¶¶ 2, 9, 13, 14, 15, 16, 17, 19); Ex. 2 (Mem. in Support of Mot. for Preliminary

13  Injunction at 1, 3, 11-14, 17); Ex. 3 (Decl. of Mark Holden in Support of Pl.'s

14  Motion for Preliminary Injunction at ¶¶ 3-4).  Not only does the complaint rely on

15  threats made outside of the state, it alleges a chilling effect on donors nationwide,

16  only some of whom live in California.  Li Decl., Ex. 1 (Compl. at ¶ 19).

17      Because Plaintiff has relied and can be expected to continue to rely on

18  evidence and testimony relating to the experiences of its "affiliates, offices,

19  chapters, branches, or programs," as well as donors and potential donors, located

20  outside of California, the Attorney General has a right to discovery that matches the

21  national scope of these allegations.

22      **C.  Plaintiff's Position**

23      The Attorney General overstates the dispute between the parties concerning

24  the geographic scope of discovery.  Contrary to the Attorney General's position, the

25  Foundation has agreed to produce documents concerning threats and chills from

26  *outside* of California.  As the Attorney General notes,  this information is

27  responsive and relevant to the case, as the Supreme Court has counseled reliance on

28  evidence of harassment in one state to strike down another state's disclosure

9

requirement.  *E.g.*, *Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87, 99 (1982)  (striking down an Ohio disclosure requirement based on evidence from Ohio and "neighboring States").  So, we are producing it.

Where the parties disagree is over the appropriate geographic scope as it relates to Interrogatory No. 10 and RFP No. 13, particularly as those requests extend to each and every "state or local affiliates, offices, chapters, branches, or programs [of the Foundation that are] not located in the State of California."  Both of these requests cover the same requested subject matter.  They seek "*all instances*" and "*all documents*" wherein *any* "state or local affiliates, offices, chapters, branches, or programs" have been subjected to *any* "examination or investigation of compliance with federal or state executive orders, statues, rules, or regulations" from *2000 through the present*.  The sheer scope of that request (to the extent it even has a definable scope) is mind-boggling.  It would encompass, for example, an allegation from a local Texas municipality that a local Texas affiliate was parking vehicles illegally, or playing music too loud at an office party.  The Attorney General's requests would demand production of these documents, including " any such notice [of the violation]; the facts at issue; and the resolution, if applicable."  Such requests are plainly absurd on their face, and the Foundation has appropriately re-drawn a narrower line around them given the dispute in this case—*i.e.*, "[t]he claims and defenses at issue in this case concern whether the *California* Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years.  Information about investigations by other jurisdictions relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities."

Likewise, as stated by the Foundation in its response to RFP 13, "[t]he claims and defenses at issue in this case concern whether the California Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011

10

and subsequent tax years." Materials about investigations by *other* jurisdictions concerning *non*-Schedule B related information do not relate to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities. Such materials simply have no bearing on this case. Even so, the Foundation has informed the Attorney General that, to the best of its knowledge, it has never disclosed Schedule B to any governmental body other than the IRS.

## III. THE EFFECT OF THE PRELIMINARY INJUNCTION

### A. The Discovery Requests and Responses in Dispute

**INTERROGATORY NO. 1:**

For each year from 2000 to the present, IDENTIFY all SCHEDULE B DONORS to the FOUNDATION.

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory because it seeks identifying information about the Foundation's donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's Schedule B to IRS Form 990 or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for a written interrogatory response identifying the Foundation's donors, the Attorney General has violated the terms of the preliminary injunction.

The Foundation further objects to this Interrogatory on the grounds that there is no legitimate reason for the Attorney General to seek the identities of "all" of the Foundation's Schedule B donors since the year "2000." This Interrogatory is overly broad as to time and scope; unduly burdensome to answer; and designed to harass both the Foundation and its donors.

For these reasons, the Foundation will not answer this Interrogatory, and it reserves the right to take appropriate actions against the Attorney General to enforce the terms of the  preliminary injunction, as and if necessary.

**INTERROGATORY NO. 3:**

For each year from 2000 to the present, DESCRIBE all DONATIONS made by SCHEDULE B DONORS to the

11

FOUNDATION, including (but not limited to) the total number of SCHEDULE B DONORS; the number of SCHEDULE B DONORS residing in California; the total dollar amount of DONATIONS by SCHEDULE B DONORS residing in California; the total dollar amount of DONATIONS by SCHEDULE B DONORS; and the value and nature of any in-kind DONATIONS made by SCHEDULE B DONORS.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks identifying information about the Foundation's Schedule B donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case.

The Foundation further objects to this Interrogatory to the extent it seeks information about "all" donations from Schedule B donors since the year "2000." This Interrogatory is overly broad as to time and scope; unduly burdensome to answer; and designed to harass both the Foundation and its donors.

The Foundation further objects that the requested information is wholly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. The number of donors or amount of donations to the Foundation since the year 2000 simply have no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will point out responsive information contained in the Form 990s it annually files with the Attorney General.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

Information about the Foundation's donations is available in the Foundation's Form 990s. For example, as reported in Part I, Line 8, of the Foundation's 2013 Form 990, the Foundation received $12,976,019 in donations and grants in 2013. And as reported in Part VIII, Line 1, the Foundation in 2013 received $12,976,019 in contributions, gifts, and grants (no revenue came from federated campaigns, membership dues, fundraising events, related organizations, or government grants), of which $1,006,045 came from non-cash contributions. Details about those noncash contributions are contained in Schedule M Part I. In 2013, the Foundation received 14 contributions totaling $733,245 in publicly traded securities, and one contribution of $272,800 in software, as detailed in Schedule M Part II.

12

**INTERROGATORY NO. 5:**

For each year from 2000 to the present, IDENTIFY the FOUNDATION's sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS including (but not limited to) the amount of revenue or value of gifts attributable to each source annually.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks information about all of the Foundation's "sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS" since the year "2000." The terms of this Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects to this Interrogatory to the extent that it seeks identifying information about certain of the Foundation's donors (namely, those who contributed less than $5,000 in a given year and therefore are not "SCHEDULE B DONORS") in violation of the First Amendment and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's Schedule B to IRS Form 990 or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for a written interrogatory response that would "IDENTIFY" the Foundation's donors, the Attorney General has violated the terms of the Court's preliminary injunction. The Foundation reserves the right to take appropriate actions against the Attorney General to enforce the terms of the preliminary injunction, as and if necessary.

The Foundation further objects that information relating to the source, amount, or value of the Foundation's revenue and gifts from anyone since the year 2000, no matter how large or small the revenue or gift, is wholly irrelevant, and a request for such information is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5,000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has received revenue or gifts of any size since 2000 from non-Schedule B donors simply has no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will point out responsive information contained in the Form 990s it annually files with the Attorney General.

13

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The total dollar amount of revenue other than DONATIONS the Foundation has received can be found on its Form 990s, Part 1, Lines 9–11. For example, in 2013 the Foundation received $334,445 from sources of revenue other than contributions and grants. This information is broken down further in Part VIII Lines 2–11. For example, in 2013, the Foundation received $171,759 in registration fees, $160,454 in program service charges, and $2,232 in investment income.

**REQUEST FOR PRODUCTION NO. 5:**

DOCUMENTS sufficient to ascertain the identities of all SCHEDULE B DONORS to the FOUNDATION from the year 2000 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

In addition to the Foundation's general objections, the Foundation objects to this Request because it seeks identifying information about the Foundation's donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's Schedule B to IRS Form 990 or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for documents identifying the Foundation's Schedule B donors, the Attorney General has violated the terms of the Court's preliminary injunction.

The Foundation further objects to this Request on the grounds that there is no legitimate reason for the Attorney General to seek the identities of "all" of the Foundation's Schedule B donors since the year "2000." This Request is overly broad as to time and scope; unduly burdensome to answer; and designed to harass both the Foundation and its donors.

For these reasons, the Foundation will not produce documents in response to this Request, and it reserves the right to take appropriate actions against the Attorney General to enforce the terms of the preliminary injunction, as and if necessary.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS, dating from the year 2000 to the present, required to be made available pursuant to Internal Revenue Code ("I.R.C.") § 6104(d), including (but not limited to) copies of SCHEDULE B, as described in I.R.C. § 6104(d)(3)(A).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

14

In addition to the Foundation's general objections, the Foundation objects to this Request because it seeks identifying information about the Foundation's donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's Schedule B to IRS Form 990* or any other document that would disclose the names and addresses of the Foundation's donors, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for the Foundation's Schedule Bs, the Attorney General has violated the terms of the Court's preliminary injunction.

The Foundation further objects to this Request on the grounds that there is no legitimate reason for the Attorney General to seek every one of the Foundation's Schedule Bs since the year "2000." This Request is overly broad as to time and scope, and designed to harass both the Foundation and its donors. Moreover, the only document the Foundation must make available under § 6104(d) is its Form 990 (*not* its Schedule B, *see* § 6104(d)(3)(A)). The Foundation has annually filed its Form 990 with the Attorney General since the year 2000, so the Attorney General already possesses all documents responsive to this Request.

For these reasons, the Foundation will not produce additional documents in response to this Request, and it reserves the right to take appropriate actions against the Attorney General to enforce the terms of the preliminary injunction, as and if necessary.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS, dating from the year 2000 to the present, relating to the FOUNDATION's sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS including (but not limited to) the amount of revenue or value of gifts attributable to each source annually.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS" since the year "2000" "relating to" the Foundation's "sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects to this Request to the extent that it seeks identifying information about certain of the Foundation's donors (namely, those who contributed less than $5,000 in a given year and therefore are not "SCHEDULE B DONORS") in violation of the First Amendment and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's Schedule B to IRS Form*

15

990 *or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for documents about the Foundation's donors, the Attorney General has violated the terms of the Court's preliminary injunction.

The Foundation further objects that documents relating to the source, amount, or value of the Foundation's revenue and gifts from anyone since the year 2000, no matter how large or small the revenue or gift, are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has received revenue or gifts of any size since 2000 from non Schedule B donors simply has no bearing on these claims or defenses. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

In any event, the Form 990 the Foundation files with the Attorney General each year (and makes available for public inspection) already contains extensive information about the amount of revenue and value of gifts the Foundation receives each year. There is no need for the Foundation to produce further documents on the subject.

For these reasons, the Foundation will not produce additional documents in response to this Request, and it reserves the right to take appropriate actions against the Attorney General to enforce the terms of the preliminary injunction, as and if necessary.

## B.    The Attorney General's Position

The Attorney General propounded various discovery requests relating to Plaintiff's donation practices and donors, seeking information that goes to Plaintiff's central claims, including:

- Information and documents relating to the identity of Schedule B donors to the Foundation (Interrogatory No. 1 and Request for Production No. 5);

- Information regarding donations to the Foundation (Interrogatory No. 3);

16

- Information and documents relating to the Foundation's sources of revenue or gifts other than donations from Schedule B donors (Interrogatory No. 5 and Request for Production No. 8);[4]

- Redacted Schedule B forms that the Foundation must make available for public inspection under I.R.C. § 6104(d) (Request for Production No. 6).

In response to these requests, Plaintiff has stonewalled, arguing that each request violates the Court's preliminary injunction, which enjoins the Attorney General from "demanding . . . a copy of the Foundation's Schedule B to IRS Form 990 or any other documents that would disclose the names and addresses of the Foundation's donors." This objection is meritless.

### 1. The Preliminary Injunction Does Not Limit Discovery

The preliminary injunction does not limit the permissible scope of the Attorney General's discovery, which is governed by the Federal Rules of Civil Procedure. To date, Plaintiff has not provided, nor is Defendant aware of, any authority for the proposition that a preliminary injunction can preclude discovery on any topic, much less a topic going to the core of a plaintiff's claim. Similarly, nothing in the Federal Rules of Civil Procedure indicates that the scope of discovery can be limited by a preliminary injunction. *See* Fed. R. Civ. Proc. 26.

Nor could there be such authority. Discovery is essential to litigation of properly alleged claims, and a preliminary injunction prohibiting discovery would violate due process, because it would prevent a defendant from mounting a defense. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). A lack of

---

[4] In response to Interrogatory No. 5 and Request for Production No. 8, Plaintiff has agreed to produce aggregated data about the amount of contributions it received in 2013 and 2014, and the number of contributors each year. Li Decl., Ex. 14, at 1. This would include subtotals for Schedule B and non-Schedule B donors. *Id.* While the Attorney General approves of this compromise in form, she moves to compel production of this information for the years 2010 through 2015—and does not accept Plaintiff's limitation to 2013 and 2014.

17

1    reciprocal discovery rights violates due process, which requires that discovery "be a

2    two-way street." *Wardius v. Oregon*, 412 U.S. 470, 475 (1973).  A preliminary

3    injunction limiting a defendant's ability to seek discovery would also be overbroad

4    and an abuse of discretion.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir.

5    2009) ("[B]ecause '[i]njunctive relief . . . must be tailored to remedy the specific

6    harm alleged,' '[a]n overbroad injunction is an abuse of discretion.'") (citation

7    omitted).  The Attorney General's discovery requests seek information and

8    documents for litigation purposes only, and thus do not implicate the preliminary

9    injunction.

10       Moreover, the Attorney General served the discovery requests with a proposed

11   amended protective order that would create an "attorneys' eyes only" designation,

12   making clear that discovery so designated would be accessed only for litigation

13   purposes.  Li Decl., Exs. 7, 8.  Consistent with the preliminary injunction, under the

14   proposed terms of an amended protective order, donor-identifying information

15   produced in discovery would not be publicly disclosed, nor would this information

16   be shared with the Registry staff or the Attorney General's Charitable Trusts

17   Section,[5] or used for regulatory or law enforcement purposes.

18       Plaintiff's threat to move the Court to hold Defendant in contempt of the

19   preliminary injunction based on its discovery requests is both meritless and tardy

20   given that the Attorney General issued her discovery requests on May 22, 2015.  A

21   district court may issue an action for civil contempt only if "(1) [Defendant]

22   violated the court order, (2) beyond substantial compliance, (3) not based on a good

23   faith and reasonable interpretation of the order, [and] (4) by clear and convincing

24   evidence."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693,

25   _____

26   [5] The Attorney General is represented in this lawsuit by attorneys in the
     Government Law Section, which is tasked with defending the state's constitutional
     officers and state laws.  This is a separate section in an entirely different division of
27   the Attorney General's office from Charitable Trusts, which is the only unit (along
     with the Registry) that enforces the State's charitable trust laws.

28

695 (9th Cir. 1993). "Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989) (citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)).[6]

The preliminary injunction should not be interpreted here to interfere with a civil defendant's basic due process right to discovery, and is not a proper basis for Plaintiff's refusal to respond to Interrogatory Nos. 1, 3, and 5, or Request for Production Nos. 5, 6, and 8. Plaintiff must provide all responsive, non-privileged information and documents for these requests.

### 2. The Preliminary Injunction Does Not Apply to the Request For Redacted Schedules B That Must Be Made Available to the Public

Plaintiff also relies on the preliminary injunction in objecting to Request for Production No. 6, which asks for "DOCUMENTS . . . required to be made available pursuant to [26 U.S.C.] § 6104(d), including . . . copies of SCHEDULE B, as described in [26 U.S.C.] § 6104(d)(3)(A)." However, this request does not seek documents that contain the names and addresses of Schedule B donors. Instead, it seeks copies of Schedule B in which the names and addresses of donors have been redacted, which federal law requires Plaintiff to make available to the public. 26 U.S.C. § 6104(d). Although these versions of Schedule B do not contain donor names and addresses, they provide basic information about an organization's Schedule B donations, such as the number of Schedule B donors and whether the donations are cash or non-cash gifts in kind. This information is relevant to claims

---

[6] Plaintiff's assertion that these requests also violate 26 U.S.C. § 6104 is also without merit. The Ninth Circuit has already determined that section 6104 does not expressly or impliedly "preempt the authority of state attorneys general to require such disclosures directly from the non-profit organizations they are tasked with regulating." *Center for Competitive Politics*, 784 F.3d at 1318. Nor does it prevent a party from seeking information regarding donors through discovery during civil litigation.

19

1    that Plaintiff's donors have experienced or can reasonably expect to experience

2    harm or threats undermining their First Amendment rights.

3         The preliminary injunction does not apply to redacted Schedules B that federal

4    law requires to be made public.  Plaintiff's response to Request for Production No.

5    6 incorrectly states that "the only document the Foundation must make available

6    under § 6104(d) is its Form 990 (*not* its Schedule B[])."  Section 6104(d) requires

7    the Foundation to make available for public inspection "a copy of the annual return

8    filed under section 6033," 26 U.S.C. § 6104(d)(1)(A)(i), except that the names and

9    addresses of contributors are not required to be disclosed, *id.* § 6104(d)(3)(A).  As

10   stated in the IRS instructions for Form 990, all schedules filed with the Form 990

11   must be made public, so long as the names and addresses of contributors are

12   redacted.[7]

13        Plaintiff is also mistaken, on several counts, when it claims that it does not

14   need to disclose this information because "the practice of the Internal Revenue

15   Service is to *not* make Schedule B publicly available, even in redacted form."  Li

16   Decl., Ex. 14 at 2 (citing Internal Revenue Manual § 11.3.9.13).  First, this

17   _____

[7]

18        An organization's completed Form 990 or 990-EZ is available for
          public inspection as required by section 6104. Schedule B (Form 990,
19        990-EZ, or 990-PF), Schedule of Contributors, is open for public
          inspection for section 527 organizations filing Form 990 or 990-EZ.
20        For other organizations that file Form 990 or 990-EZ, the names and
          addresses of contributors listed on Schedule B are not required to be
21        made available for public inspection.  *All other information reported
          on Schedule B, including the amount of contributions, the description
22        of noncash contributions, and any other information, is required to be
          made available for public inspection* unless it clearly identifies the
23        contributor.
              ...
24        Annual information return includes: An exact copy of the Form 990 or
          Form 990-EZ filed by a tax-exempt organization as required by section
25        6033 . . . .  The copy must include all information furnished to the IRS
          on Form 990, 990-EZ, or 990-T *as well as all statements, attachments
26        and supporting documents*, except for the name and address of any
          contributor to the organization.
27   Li. Decl., Ex. 16 at 2-3 (IRS Instructions for 2014 Form 990, Appendix D, at 75
     (emphasis added), 76, also available at www.irs.gov/pub/irs-pdf/i990.pdf).
28

supposed "practice" has no bearing on Plaintiff's obligations under federal law. The IRS manual provision Plaintiff cites guides *IRS employees* on how to respond to process requests for Form 990s that the IRS has received from members of the public. *See* Li Decl., Ex. 17 at 5 (Internal Review Manual § 11.3.1.1, also available at http://www.irs.gov/pub/irm_11-003-001.html). By contrast, 26 U.S.C. § 6104(d) imposes a legal obligation on *Plaintiff* to make this information available for public inspection; the Internal Review Manual does not relieve Plaintiff of its obligation to make the documents publicly available.

Second, Plaintiff mistakes the import of the IRS policy because even if it did bear on Plaintiff's legal obligations, it would not justify withholding redacted Schedules B. The manual directs IRS agents to exclude original, *unredacted* Schedule B forms "with copies of 990s for mass distribution," but expressly states that "a redacted Schedule B may be requested, and, if requested, the schedules are to be redacted in accordance with guidance provided in this section." *See* Li Decl., Ex. 18 at 4 (Internal Review Manual § 11.3.9.13(4), also available at http://www.irs.gov/irm/part11/irm_11-003-009.html). In other words, IRS practice is to release redacted Schedule B forms.

Plaintiff argues unconvincingly that this discovery request is "unduly burdensome." Li Decl., Ex. 14 at 2. The Attorney General seeks a total of five redacted Schedules B for tax years 2010 to 2014.[8] Assuming that Plaintiff met its obligations under federal law, the documents responsive to this request should be in hand. Even if it did not, redaction of the names and addresses of contributors can be accomplished in a matter of minutes.

---

[8] Plaintiff provided the Registry with versions of its 2011 and 2012 Schedule B records, which reflect the number of Schedule B donors and the amounts donated. These Schedule B records do not comply with 26 U.S.C. § 6104(d)(3)(A) and would be inadequate if produced in response to this request because they do not reflect whether the donations were cash or non-cash gifts in kind.

21

1    Neither the preliminary injunction nor federal law can reasonably be

2    interpreted to preclude the Attorney General from seeking documents required to be

3    made available to the public that do not reveal the names and addresses of Schedule

4    B contributors.  Plaintiff must produce its Schedules B with the donor names and

5    addresses redacted, as requested in Request for Production No. 6.  As previously

6    indicated to Plaintiff, the Attorney General is willing to limit this request to the

7    years 2010 through 2014.  Li Decl., Ex. 12.

8    ### C.   Plaintiff's Position

9    The terms of Your Honor's preliminary injunction are crystal clear:  "the

10   Attorney General is preliminarily *enjoined* from demanding, and/or from taking any

11   action to implement or to enforce her demand for, a copy of the Foundation's

12   Schedule B to IRS Form 990 or any other document that *would disclose the names*

13   *and addresses of the Foundation's donors*, until this Court issues a final judgment."

14   Li Decl., Ex. 5 (Dkt. 33 at 3) (emphasis added).  It makes no difference whether the

15   Attorney General seeks identifying information regarding the Foundation's donors

16   through her Charitable Trusts division (as it did in the past) or through her

17   Government Law section in connection with this litigation (as it does now).  This

18   Court's Order bars her from obtaining it, and Defendant has neither properly sought

19   modification nor otherwise returned to the Court for permission.[9]

20   ### 1.   The Preliminary Injunction Precludes the Attorney General's Requests for Identifying Information about the Foundation's Donors

21

22   The Attorney General is incorrect that an injunction cannot limit discovery.

23   The plain, literal meaning of the injunction's text governs; here these terms provide

24   that the Attorney General *cannot* demand identifying information about the

25   Foundation's donors.  *Cf. Alley v. U.S. Dep't of Health & Human Servs.*, 590 F.3d

26

27   [9]   While the Foundation agrees in principle to amending the Protective Order to include an Attorney's Eyes Only designation, it objects to disclosing Schedule B information to Defendant, even under such a designation.

28

1195 (11th Cir. 2009) (injunction forbidding the government from disclosing individualized Medicare reimbursement information prevented the government from answering a related Freedom of Information Act request).

Likewise, Attorney General herself cited authority in opposing the preliminary injunction where *discovery*—and not more generalized disclosure—was limited because of the First Amendment. *See, e.g., Perry v. Schwarzenegger*, 591 F.3d 1126, 1145 (9th Cir. 2009) (granting writ of mandamus where "discovery would likely have a chilling effect on political association" and acknowledging that "membership list cases" have even more weighty First Amendment interests at stake). Other courts have likewise quashed discovery into membership and contributor lists on First Amendment grounds. *See, e.g., Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3-4 (D.D.C. 2002). For the same reasons that the Foundation obtained a preliminary injunction protecting its donor lists from disclosure to the Attorney General as a regulator, it should likewise prevail in preventing disclosure to the Attorney General as a litigator.

The Foundation has agreed to produce evidence regarding threats and harassment experienced by itself and its donors in the past, although it reserves the right to redact particular identifying details. The Attorney General will be able to defend herself by objecting to that evidence and/or subjecting its proponents to cross-examination. Moreover, the Attorney General of course has other ways to mount a defense that do not impinge on the First Amendment. For example, considering the Attorney General has repeatedly criticized the Foundation's evidence of chill as "subjective," she can conduct an objective inquiry regarding this issue, which "appears to be susceptible to expert testimony, without intruding" into private or First Amendment-protected affairs. *See Perry*, 591 F.3d at 1145.

The terms of this Court's preliminary injunction are clear and should stand as is, certainly unless and until Defendant shows due respect for the Court's Order and

the constitutional rights it vindicates by following appropriate procedure and demonstrating adequate warrant for any modification she may request.

### 2. Because Even Redacted Schedules B Can Be Used To Identify Individual Donors, The Foundation Will Produce Aggregated Information In Another Form

The Foundation has agreed to produce, for the years 2013 and 2014, aggregated information summarizing the information the Attorney General seeks from a redacted Schedule B.  In particular, the Foundation has agreed to produce the total number of contributors and donations, both above and below Schedule B's $5,000 threshold.  Li Decl., Exhibit 14 at 1.  The Foundation is willing to discuss with the Attorney General the production of other aggregated donation metrics as well.

To be clear, the Foundation has *not* previously disclosed its Schedule B to the public, even in redacted form.  The IRS's instructions on Schedule B specify that information on Schedule B other than names and address is *also* not required to be made available for public inspection if "it clearly identifies the contributor."  Li. Decl., Ex. 16 (IRS Instructions for 2014 Form 990, Appendix D, at 75, also available at www.irs.gov/pub/irs-pdf/i990.pdf).  The IRS has recognized that information outside of names and addresses carries the "risk of inadvertently identifying contributors."  Li Decl., Ex. 17 (Internal Review Manual § 11.3.9.13, also available at http://www.irs.gov/pub/irm_11-003-001.html).

The Foundation has determined that even a redacted version of Schedule B runs the real risk that the Foundation's donors will be identifiable.  For example, donations of stock in a start-up corporation could serve to identify that start-up's founder as a donor.  The effort to research and redact all such line-items would be needlessly burdensome, particularly where the Foundation has agreed to provide the Attorney General with the aggregated information she requests by other means.

## IV.  FIRST AMENDMENT'S EFFECT ON DISCOVERY REQUESTS

### A.  The Discovery Requests and Responses in Dispute

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTERROGATORY NO. 1:**

For each year from 2000 to the present, IDENTIFY all SCHEDULE B DONORS to the FOUNDATION.

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory because it seeks identifying information about the Foundation's donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's* Schedule B to IRS Form 990 *or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for a written interrogatory response identifying the Foundation's donors, the Attorney General has violated the terms of the preliminary injunction.

The Foundation further objects to this Interrogatory on the grounds that there is no legitimate reason for the Attorney General to seek the identities of "all" of the Foundation's Schedule B donors since the year "2000." This Interrogatory is overly broad as to time and scope; unduly burdensome to answer; and designed to harass both the Foundation and its donors.

For these reasons, the Foundation will not answer this Interrogatory, and it reserves the right to take appropriate actions against the Attorney General to enforce the terms of the  preliminary injunction, as and if necessary.

**INTERROGATORY NO. 3:**

For each year from 2000 to the present, DESCRIBE all DONATIONS made by SCHEDULE B DONORS to the FOUNDATION, including (but not limited to) the total number of SCHEDULE B DONORS; the number of SCHEDULE B DONORS residing in California; the total dollar amount of DONATIONS by SCHEDULE B DONORS residing in California; the total dollar amount of DONATIONS by SCHEDULE B DONORS; and the value and nature of any in-kind DONATIONS made by SCHEDULE B DONORS.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks identifying information about the Foundation's Schedule B donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case.

The Foundation further objects to this Interrogatory to the extent it seeks information about "all" donations from Schedule B donors

25

since the year "2000." This Interrogatory is overly broad as to time and scope; unduly burdensome to answer; and designed to harass both the Foundation and its donors.

The Foundation further objects that the requested information is wholly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. The number of donors or amount of donations to the Foundation since the year 2000 simply have no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will point out responsive information contained in the Form 990s it annually files with the Attorney General.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

Information about the Foundation's donations is available in the Foundation's Form 990s. For example, as reported in Part I, Line 8, of the Foundation's 2013 Form 990, the Foundation received $12,976,019 in donations and grants in 2013. And as reported in Part VIII, Line 1, the Foundation in 2013 received $12,976,019 in contributions, gifts, and grants (no revenue came from federated campaigns, membership dues, fundraising events, related organizations, or government grants), of which $1,006,045 came from non-cash contributions. Details about those noncash contributions are contained in Schedule M Part I. In 2013, the Foundation received 14 contributions totaling $733,245 in publicly traded securities, and one contribution of $272,800 in software, as detailed in Schedule M Part II.

**INTERROGATORY NO. 4:**

For each year from 2000 to the present, DESCRIBE YOUR efforts to solicit and accept DONATIONS to the FOUNDATION, including (but not limited to) direct mail solicitation, phone solicitation, email solicitation, online solicitation through websites and/or advertisements, in-person solicitation, events, and corporate fundraising, as well as efforts in conjunction with other entities such as (but not limited to) AFP.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks information about all of the Foundation's "efforts," since the year "2000," "to solicit and accept DONATIONS." The terms of this

26

Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Information about the Foundation's efforts to solicit or accept donations from anyone since the year 2000—no matter how large or small the donation, the medium of communication, and whether or not in conjunction with other entities, such as AFP—is wholly irrelevant, and a request for such information is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5,000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has solicited or accepted donations of any size since 2000 through mail, phone, email, online, or in-person contacts simply has no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

The Foundation further objects that internal communications regarding the solicitation of membership and donations are protected from disclosure by the First Amendment associational privilege. *See, e.g., Perry v. Schwarzenegger*, 591 F.3d 1147, 1158 (9th Cir. 2010) (granting mandamus where district court violated the First Amendment privilege by compelling disclosure of sensitive internal campaign communications).

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will briefly describe its fundraising efforts.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation's fundraisers typically solicit donations from current or prospective individual donors during in-person meetings, attended by a fundraiser from the Foundation and a member of the State Operations team. The Foundation also engages in phone, email, and online solicitations, though less frequently. Phone solicitations are rare and usually are targeted to certain current donors. The Foundation also solicits passively through emails and its website, which provide opportunities to contribute (*e.g.*, a "donate" button in emails and on the Foundation's website).

The Foundation does not host any national events geared toward solicitation, although it does infrequently host small events for donors in conjunction with its annual meeting of the Foundation's board of directors.

**INTERROGATORY NO. 8:**

For each year from 2000 to the present, DESCRIBE all instances in which the names of DONORS to the FOUNDATION have been disclosed to the public, whether inadvertently or as required

27

by law (such as in IRS filings by certain DONORS that are required to be publicly available), including (but not limited to) the date of the disclosure; the person or entity making the disclosure; the information disclosed; the method of disclosure; and the precise nature of any threats, harassment, or reprisals experienced by such DONORS as a consequence of each public disclosure.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks information about "all instances in which the names of DONORS to the FOUNDATION have been disclosed to the public." The terms of this Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects to this Interrogatory to the extent it seeks identifying information about the Foundation's donors, in violation of not only the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. Even when an obscure fact about a person—such as a prior donation to a charity—has previously been made public, there can be significant harm and an invasion of privacy in broadcasting that fact anew. *See Hollingsworth v. Perry*, 558 U.S. 183, 195–96 (2010); *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989). The identity of a donor to the Foundation is privileged or protected under the First Amendment and the right to privacy, even if that donor's affiliation with the Foundation has previously been made public.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation does not currently know of any public disclosures of its current donors *qua* DONORS.

**INTERROGATORY NO. 9:**

For each year from 2000 to the present, IDENTIFY each DONOR to the FOUNDATION who has been the subject of threats, harassment, or reprisals from GOVERNMENT OFFICIALS or private parties as a result of disclosing to the IRS the FOUNDATION's SCHEDULE B.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks identifying information about the Foundation's donors, in violation of not only the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. Even when an obscure fact about a person—such as a prior donation to a charity—has previously been made public, there can be significant harm and an invasion of privacy in broadcasting that fact anew. *See Hollingsworth*, 558 U.S. at 195–96; *Reporters Committee*, 489 U.S. 749. The identity of a donor to the Foundation is privileged or protected under the First Amendment and

28

the right to privacy, even if that donor's affiliation with the Foundation has previously been made public.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation does not currently know of any instance in which a Schedule B it has submitted to the IRS has been shared with any other government officials or private parties, nor when affiliates of the Foundation are threatened, harassed, or retaliated against, does the Foundation know whether the cause was the filing of its Schedule B with the IRS. Accordingly, the Foundation is unable to attribute the threats, harassment, and reprisals experienced by those known to be affiliated with the Foundation specifically to the Foundation's disclosure of its Schedule B to the IRS.

**INTERROGATORY NO. 11:**

STATE all facts in support of the allegations in paragraph 16 of the COMPLAINT, including (but not limited to) the specific instances of threats of physical harm, boycotts of businesses, "character assassination," and harassment allegedly suffered by DONORS to the FOUNDATION, and IDENTIFY ALL WITNESSES THERETO.

**RESPONSE TO INTERROGATORY NO. 11:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks the names of the Foundation's donors, in violation of not only the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. Even when an obscure fact about a person— such as a prior donation to a charity—has previously been made public, there can be significant harm and an invasion of privacy in broadcasting that fact anew. *See Hollingsworth*, 558 U.S. at 195–96; *Reporters Committee*, 489 U.S. 749. The identity of a donor to the Foundation is privileged or protected under the First Amendment and the right to privacy, even if that donor's affiliation with the Foundation has previously been made public.

The Foundation further objects that it would be unduly burdensome to search for and state "all facts" that support the allegations in Paragraph 16 of the Complaint.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation's events and offices throughout the country regularly draw protests, and persons associated with the Foundation are often threatened with violence. For example, at the Foundation's 2011 summit held at the Convention Center in Washington DC, violent protestors tried to storm the Convention Center, physically accosted and injured some of the attendees when they exited the Convention Center, and placed the remaining attendees at serious risk. *See, e.g.*, Clare O'Connor, *Occupy the Koch Brothers: Violence, Injuries, and Arrests at DC Protest*, Forbes (Nov. 5, 2011, 12:10 PM),

29

http://www.forbes.com/sites/clareoconnor/2011/11/05/occupy-the-kochs-violentclashes-injuries-and-arrests-at-protest-against-corporate-greed/; Matthew Boyle, *Conservative Group Staffers, Event Attendees: 911 Hung Up On Us Four Times During Occupy DC Mob*, Daily Caller (Nov. 7, 2011, 12:50 AM), http://dailycaller.com/2011/11/07/koch-group-staffers-event-attendees-911 hungupon-us-four-times-during-occupy-dc-mob/. A number of threats have also been sent by phone or mail to the Foundation's national office.

The Foundation also notes that events of Americans for Prosperity, the 501(c)(4) organization, have also been subjected to protests and violence, including in connection with events in Michigan, Montana, and Pennsylvania. The Foundation understands that attacks directed against Americans for Prosperity are also often meant for the Foundation, and vice versa, because the public perceives the two organizations as related, even though they are legally distinct.

Additionally, donors whose associations with the Foundation are known to the public have received threats of physical harm, have had their businesses boycotted, and have been subjected to character assassination in their hometown newspapers. For example, in 2014, reporters published a list of potential donors to the Foundation. *See* Andy Kroll & Daniel Schulman, *The Koch Brothers Left a Confidential Document at Their Donor Conference*, Mother Jones (Feb. 5, 2014,12:59 PM), http://www.motherjones.com/politics/2014/02/koch-brothers-palmsprings-donor-list. The Foundation believes that afterwards some individuals on the list faced harassment and had their businesses boycotted.

The Foundation is also exploring the possibility of having individual donors testify anonymously in this matter about their experiences and perspectives. Although the Foundation does not generally have possession or control over its donors and the information they possess, it is willing to make good-faith efforts to produce responsive information of any actual or potential donors who may opt to testify with the benefit of anonymity and all benefits of an appropriate protective order in connection with this matter. Consistent with the Foundation's general right to amend or supplement its responses to this Interrogatory, the Foundation specifically reserves the right to amend or supplement its responses in order to add facts surrounding such potential testimony.

**INTERROGATORY NO. 12:**

STATE all facts in support of the allegations in paragraph 19 of the COMPLAINT, including (but not limited to) the specific instances in which "potential donors" have "refused to contribute" and "current donors have indicated that they will cease their contributions" to the FOUNDATION, and IDENTIFY all witnesses thereto.

**RESPONSE TO INTERROGATORY NO. 12:**

30

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks identifying information about the Foundation's donors or potential donors, in violation of their privacy and First Amendment interests.

The Foundation further objects that it would be unduly burdensome to search for and state "all facts" that support the allegations in Paragraph 19 of the Complaint.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

Current and potential donors are afraid that having their identities become publicly known will put themselves and their families at risk. Dozens of potential donors have told representatives of the Foundation that, although they would like to contribute to the Foundation, they are too fearful of the reprisal they will face both from government officials and from the public—if their contribution becomes public knowledge. Current donors have also expressed grave concerns to representatives of the Foundation about disclosure of their names and addresses. Donors who reside in states that are perceived to be liberal (like California) tend to be more concerned about disclosure than donors in other states because members of the public and government officials in those states are perceived to be more inclined to oppose the Foundation's mission. If names and addresses of active donors were released to the public or to the State of California, the Foundation would lose contributions. Even in states that are not perceived to be liberal, however, donors are often concerned about the prospect of retaliation by individual officials who may be opposed to them, as well as exposure to localized hostility. And, even beyond that, some donors fear that they may suffer from hostility directed at them from other parts of the state or country to the extent that their identity becomes known.

Part and parcel of all these concerns, many have donated to the Foundation on the express condition that the Foundation would safeguard their identities. Indeed, the Foundation has found it necessary to make it a standard part of its solicitation pitch to assure would-be donors, typically via face-to-face meetings, that the Foundation will do its utmost to protect their anonymity. Based on years of experience of soliciting donors, the Foundation has learned that any disclosure of the Foundation's donors would dramatically harm fundraising, and, correspondingly, efforts to safeguard donor confidentiality improves fundraising.

Operationally, all of the steps the Foundation takes to safeguard donor information—such as minimizing the use of emails or other documents that contain donor identities (see also the Response to Interrogatory No. 14, which addresses safeguards for Schedule B donor information)—constrains the Foundation's fundraising. The Foundation believes it could reach more people at less expense if it were less careful about preserving confidentiality. The Foundation is more than willing to bear that decrease in efficiency, however, because without these safeguards, donors' fears of disclosure would impair the

31

Foundation's overall ability to fundraise and thereby impair its ability to contribute to the marketplace of ideas.

The Foundation is also exploring the possibility of having individual donors testify anonymously in this matter about their experiences and perspectives. Although the Foundation does not generally have possession or control over its donors and the information they possess, it is willing to make good-faith efforts to produce responsive information of any actual or potential donors who may opt to testify with the benefit of anonymity and all benefits of an appropriate protective order in connection with this matter. Consistent with the Foundation's general right to amend or supplement its responses to this Interrogatory, the Foundation specifically reserves the right to amend or supplement its responses in order to add facts surrounding such potential testimony.

**REQUEST FOR PRODUCTION NO. 5:**

DOCUMENTS sufficient to ascertain the identities of all SCHEDULE B DONORS to the FOUNDATION from the year 2000 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

In addition to the Foundation's general objections, the Foundation objects to this Request because it seeks identifying information about the Foundation's donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's Schedule B to IRS Form 990 or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for documents identifying the Foundation's Schedule B donors, the Attorney General has violated the terms of the Court's preliminary injunction.

The Foundation further objects to this Request on the grounds that there is no legitimate reason for the Attorney General to seek the identities of "all" of the Foundation's Schedule B donors since the year "2000." This Request is overly broad as to time and scope; unduly burdensome to answer; and designed to harass both the Foundation and its donors.

For these reasons, the Foundation will not produce documents in response to this Request, and it reserves the right to take appropriate actions against the Attorney General to enforce the terms of the preliminary injunction, as and if necessary.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS" since the year "2000" "relating to" the Foundation's "efforts to solicit and accept DONATIONS." The terms of this

32

Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Documents relating to the Foundation's efforts to solicit or accept donations from anyone since the year 2000—no matter how large or small the donation, the medium of communication, and whether or not in conjunction with other entities, such as AFP—are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5,000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has solicited or accepted donations of any size since 2000 through mail, phone, email, online, or in-person contacts simply has no bearing on these claims or defenses. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B, nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

The Foundation further objects that internal communications regarding the solicitation of membership and donations are protected from disclosure by the First Amendment associational privilege. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1158 (9th Cir. 2010) (granting mandamus where district court violated the First Amendment privilege by compelling disclosure of sensitive internal campaign communications).

For these reasons, the Foundation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS relating to all instances in which the names of DONORS to the FOUNDATION have been disclosed to the public, whether inadvertently or as required by law (such as in IRS filings by certain DONORS that are required to be publicly available), including (but not limited to) the date of the disclosure, the person or entity making the disclosure, the information disclosed, the method of disclosure, and the precise nature of any threats, harassment, or reprisals experienced by such DONORS as a consequence of each public disclosure.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS relating to all instances in which the names of DONORS to the FOUNDATION have been disclosed to the public." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer. For clarity, the Foundation construes this request to seek only documents related to the disclosure of the Foundation's donors *qua* DONORS.

33

The Foundation further objects to this Request to the extent it seeks materials outside of the Foundation's possession, custody, or control, such as disclosures to the IRS by third parties (including by individual donors).   The Foundation further objects to this Request to the extent it seeks the production of documents naming the Foundation's donors, in violation of not only the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. Even when an obscure fact about a person—such as a prior donation to a charity—has previously been made public, there can be significant harm and an invasion of privacy in broadcasting that fact anew. *See Hollingsworth v. Perry*, 558 U.S. 183, 195–96 (2010); *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989). Whatever documents may be responsive to this Request are subject to redaction or withholding to protect the donors' privacy and First Amendment interests, even if those donors' affiliations with the Foundation have previously been made public.

Subject to and without waiving these general and specific objections, the Foundation will produce all non-privileged documents responsive to this Request, with the exception that the Foundation reserves the right to redact identifying donor information, designate responsive material as confidential in accordance with the Stipulated Protective Order (ECF 49), or take any other appropriate steps to safeguard the interests of donors identified in documents responsive to this Request. The Foundation will record on its privilege log any redactions or withholdings of responsive material.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS, dating from the year 2000 to the present, relating to each instance in which a DONOR to the FOUNDATION has been the subject of threats, harassment, or reprisals from GOVERNMENT OFFICIALS or private parties as a result of disclosing to the IRS the FOUNDATION's SCHEDULE B .

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks the production of documents naming the Foundation's donors, in violation of not only the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. Even when an obscure fact about a person— such as a prior donation to a charity—has previously been made public, there can be significant harm and an invasion of privacy in broadcasting that fact anew. *See Hollingsworth*, 558 U.S. at 195–96; *Reporters Committee*, 489 U.S. 749. Whatever documents may be responsive to this Request are subject to redaction or withholding to protect the donors' privacy and First Amendment interests, even if those donors' affiliations with the Foundation have previously been made public.

Subject to and without waiving these general and specific objections, the Foundation will produce all non-privileged documents responsive to this Request, with the exception that the Foundation reserves the right to redact identifying donor information, designate

34

responsive material as confidential in accordance with the Stipulated Protective Order (ECF 49), or take any other appropriate steps to safeguard the interests of donors identified in documents responsive to this Request. The Foundation will record on its privilege log any redactions or withholdings of responsive material.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS relating to all facts in support of the allegations in paragraph 16 of the COMPLAINT, including (but not limited to) the specific instances of threats of physical harm, boycotts of businesses, "character assassination," and harassment allegedly suffered by DONORS to the FOUNDATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks the production of documents naming the Foundation's donors, in violation of not only the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case. Even when an obscure fact about a person— such as a prior donation to a charity—has previously been made public, there can be significant harm and an invasion of privacy in broadcasting that fact anew. *See Hollingsworth*, 558 U.S. at 195–96; *Reporters Committee*, 489 U.S. 749. Whatever documents may be responsive to this Request are subject to redaction or withholding to protect the donors' privacy and First Amendment interests, even if those donors' affiliations with the Foundation has previously been made public.

The Foundation further objects that it would be unduly burdensome to search for and produce "ALL DOCUMENTS" relating to "all facts" that support the allegations in Paragraph 16 of the Complaint. Accordingly, the Foundation will produce only those responsive documents that the Foundation can discover through a reasonable search.

Subject to and without waiving these general and specific objections, the Foundation will produce all non-privileged documents responsive to this Request that it discovers through a reasonable search, with the exception that the Foundation reserves the right to redact identifying donor information, designate responsive material as confidential in accordance with the Stipulated Protective Order (ECF 49), or take any other appropriate steps to safeguard the interests of donors identified in documents responsive to this Request. The Foundation will record on its privilege log any redactions or withholdings of responsive material.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS relating to all facts in support of the allegations in paragraph 19 of the COMPLAINT, including (but not limited to) the specific instances in which "potential donors" have "refused to contribute" and "current donors have indicated that they

will cease their contributions" to the FOUNDATION, and IDENTIFY all witnesses thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks the production of documents identifying the Foundation's donors or potential donors. Such documents are subject to redaction or withholding to protect these individuals' privacy and First Amendment interests. The Foundation further objects that it would be unduly burdensome to search for and produce "ALL DOCUMENTS" relating to "all facts" that support the allegations in Paragraph 19 of the Complaint. Accordingly, the Foundation will produce only those responsive documents that the Foundation can discover through a reasonable search.

Subject to and without waiving these general and specific objections, the Foundation will produce all non-privileged documents responsive to this Request that it discovers through a reasonable search, with the exception that the Foundation reserves the right to redact identifying donor information, designate responsive material as confidential in accordance with the Stipulated Protective Order (ECF 49), or take any other appropriate steps to safeguard the interests of donors identified in documents responsive to this Request. The Foundation will record on its privilege log any redactions or withholdings of responsive material.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS relating to estimates or projections of the FOUNDATION's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years, including (but not limited to) internal estimates or projections, and representations made to potential and actual DONORS to or members or affiliates of the FOUNDATION, as well as to bloggers, journalists, or other representatives of media organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS relating to estimates or projections of the FOUNDATION's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Documents relating to the Foundation's estimates or projections of its past or future fundraising are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Whatever the Foundation estimates or projects its

36

fundraising to be, that simply has no bearing on the claims or defenses in this case. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule Bs nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

The Foundation further objects that internal communications regarding the Foundation's fundraising and development goals are protected from disclosure by the First Amendment associational privilege. *See, e.g., Perry*, 591 F.3d at 1158 (granting mandamus where district court violated the First Amendment privilege by compelling disclosure of sensitive internal campaign communications). Fundraising and development goals are, by their very nature, highly sensitive and proprietary, as they go to aspects of the Foundation's mission and strategy that are far removed from this case and the issues in dispute.

For these reasons, the Foundation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS relating to estimates or projections of AFP's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years, including (but not limited to) internal estimates or projections, and representations made to potential and actual DONORS to or members or affiliates of the AFP, as well as to bloggers, journalists, or other representatives of media organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS relating to estimates or projections of the AFP's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Documents relating to AFP's estimates or projections of its past or future fundraising are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Whatever AFP estimates or projects its fundraising to be, that simply has no bearing on the claims or defenses in this case. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule Bs nor to the Foundation's right to safeguard the confidentiality of its donors' identities. That is especially true because this Request goes to AFP, which is a separate entity from the Foundation and not a party to this case. The fundraising estimates and projections of AFP as a separate,

37

non-party entity are doubly removed from and wholly irrelevant to this case.

The Foundation further objects that AFP's internal fundraising and development goals are also protected from disclosure by the First Amendment associational privilege. *See, e.g., Perry*, 591 F.3d at 1158 (granting mandamus where district court violated the First Amendment privilege by compelling disclosure of sensitive internal campaign communications).

For these reasons, the Foundation will not produce documents in response to this Request.

## B.   The Attorney General's Position

Plaintiff has also invoked the First Amendment as grounds for refusing to respond to three categories of discovery requests:

1.   Requests seeking information or documents identifying Schedule B donors (Interrogatory No. 1 and Request for Production No. 5);

2.   Requests seeking information or documents regarding allegations that donors have experienced threats and harassment as a result of a perceived association with the Foundation, specifically:

   ▪   Disclosure of donor names made public (Interrogatory No. 8 and Request for Production No. 11);

   ▪   Instances of threats, harassment, or reprisals by government officials against donors as a result of disclosing the Foundation's Schedule B to the IRS (Interrogatory No. 9 and Request for Production No. 12);

   ▪   Facts supporting the allegations of paragraph 16 of the complaint, including allegations of threats of physical harm, boycotts of businesses, "character assassination," and harassment (Interrogatory No. 11 and Request for Production No. 14); and

   ▪   Facts supporting the allegations of paragraph 19 of the complaint, including instances in which "potential donors" have "refused to contribute" and "current donors have indicated that they will cease

38

their contributions" to the Foundation (Interrogatory No. 12 and Request for Production No. 15).

3. Requests seeking information or documents regarding donations to the Foundation, including their solicitation and acceptance, and estimates or projections of fundraising or development goals for the Foundation and for its sister organization, Americans for Prosperity ("AFP").  (Interrogatory Nos. 3 and 4, Request for Production Nos. 7, 19, and 20.)[10]  Plaintiff has declined to respond based, in part, on an objection that "internal communications regarding the solicitation of membership and donations" and "internal communications" regarding the Foundation's and AFP's "fundraising and development goals" are protected from disclosure by the First Amendment, citing *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).

The First Amendment does not excuse compliance with any of these discovery requests.  A party asserting a First Amendment privilege in response to a discovery request must make a prima facie showing that enforcement of the requests "will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights."  *Perry*, 591 F.3d at 1160 (internal quotation marks and citation omitted).

Even if a prima facie case can be made, discovery is still permitted when the party seeking the discovery "has demonstrated an interest in obtaining the

---

[10] Plaintiff has also raised First Amendment objections in response to Interrogatory No. 2 and Request for Production No. 4, which seek, in part, information or documents identifying volunteers for the Foundation.  Since the pre-filing conference, Plaintiff has clarified that "the Foundation does not use volunteers for the purpose of identifying, contacting, or soliciting donors.  Instead, volunteers' contact or communications with other supporters of, or donors to, the Foundation tends to be incidental."  Li Decl., Ex. 13 at 2.  If Plaintiff agrees to amend its responses to reflect this clarification, the Attorney General does not move to compel further answers on these requests with respect to volunteers only.

1    disclosures it seeks . . . which is sufficient to justify the deterrent effect" on First

2    Amendment rights.  *Id.* at 1161 (internal quotation marks and citation omitted).  In

3    balancing these interests, courts consider "the centrality of the information sought

4    to the issues in the case," and "the party seeking discovery must show that the

5    information sought is highly relevant to the claims or defenses in the litigation."  *Id.*

6              **1.    Plaintiff Has Failed To Establish Its Prima Facie Case**

7              Plaintiff has not demonstrated that compliance with the Attorney General's

8    discovery requests would have any impact on, let alone interfere with, its First

9    Amendment rights, nor can it make such a showing.  There is a protective order

10   prohibiting public disclosure, and the Attorney General has agreed that the

11   information provided by Plaintiff will only be viewed by the attorneys litigating this

12   case.  There is therefore no credible argument that complying with its discovery

13   obligations will expose its members to "economic reprisal, loss of employment,

14   threat of physical coercion, and other manifestations of public hostility."  *See*

15   *NAACP v. Alabama*, 357 U.S. 449, 462 (1958); *National Organization for*

16   *Marriage v. McKee*, 723 F. Supp. 2d 236, 240-41 (D. Maine 2010) (holding that

17   corporations failed to make a prima facie showing of First Amendment

18   associational privilege, where confidentiality order limiting disclosure would

19   "prevent the occurrence that [plaintiff] and the affiants describe as having a chilling

20   effect on a willingness to donate: the public disclosure of donor identifying

21   information leading to negative repercussions"); *see also Dole v. Local Union 375,*

22   *Plumbers Int'l Union of America*, 921 F.2d 969, 974  (9th Cir. 1990) (noting that in

23   addition to failing to offer any objective indicia of an "associational chill," plaintiffs

24   did not explain "how its subjective fear of reprisals could be realized," given that

25   government policy protected the information from public disclosure).  Accordingly,

26   Plaintiff's claim of First Amendment privilege fails at the threshold.  *See Perry*,

27   591 F.3d at 1160.

28

### 2.    The Information Sought Is Highly Relevant to the Litigation

Even were it possible for Plaintiff to establish a prima facie case that First Amendment rights will be impacted by the challenged discovery requests, the information Plaintiff seeks to withhold is central to the allegations in Plaintiff's own complaint, and solely within its possession: that donors have experienced harassment or other adverse consequences such that the Registry's Schedule B submission requirement violates the First Amendment.  Plaintiff's as-applied challenge requires a showing of "'a reasonable probability that the compelled disclosure of [its] contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties' that would warrant relief on an as-applied challenge."  *Center for Competitive Politics*, 784 F.3d at 1317 (citation omitted).  Plaintiff has put the experiences of its donors and potential donors directly at issue.  Thus, the information sought is "highly relevant to the claims and defenses in the litigation."  *Perry*, 591 F.3d at 1161.

The Attorney General cannot test Plaintiff's central claim in this litigation without knowing the names of the persons who have allegedly experienced such harm or who might have testimony contradicting such claims.  "There is no 'informer's privilege' in civil litigation.  Defendants are entitled to learn in discovery who has relevant evidence, and to obtain that evidence."  *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007).

Plaintiff has stated that it is "considering the possibility" of having donors testify anonymously, and that disclosure of such donors' identities would be limited to just two members of the Attorney General's litigation team.  Li. Decl., Ex. 9. This is not sufficient, because it would permit Plaintiff to artificially limit Defendant's access to persons with discoverable information and relevant testimony.  There is no authority that permits a plaintiff to control the defense in this manner.  Plaintiff cannot decide to present only testimony that supports

41

Plaintiff's claim while denying the Attorney General access to basic information about potential witnesses that might offer different or less favorable testimony. Litigation is not a game of "blind man's bluff," but "a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682-83 (1958).

Similarly, the Foundation's internal communications about membership, donations, and fundraising and development goals are directly relevant to Plaintiff's claim that the Schedule B submission requirement improperly chills First Amendment-protected activity. *Perry v. Schwarzenegger* does not protect these internal communications from disclosure. In that case, under different facts, the court found that the requested "internal campaign communications concerning strategy and messaging" were "attenuated from the issue of voter intent" such that the requesting party did not have a sufficient interest in obtaining them to overcome any First Amendment infringement. 591 F.3d at 1153, 1165.

In contrast, the internal communications at issue here—regarding membership, donations, fundraising or development—are highly relevant to Plaintiff's allegations that it or its donors have experienced a chilling of First Amendment rights. For instance, by invoking the allegedly detrimental effect of the Schedule B requirement on the Foundation's own financial well-being, Plaintiff has put into play documents and information relating to its fundraising goals and projections. *See* Li Decl., Ex. 4 (Decl. of Christopher Fink in Supp. of Pl.'s Mot. for Preliminary Injunction at ¶ 10 ("There is no question that if the names and addresses of our current donors are released to the State of California, we would lose contributions from active donors.")); Ex. 6 at 7 (Plaintiff's Answering Brief on appeal, stating "if the Foundation submits its Schedule B to California, donations will decrease, irrespective of whether donor names and addresses are made public"). Plaintiff cannot prevent the Attorney General from testing these allegations and evidence by denying access to this information.

42

1    Because this discovery is central to the issues in the case, the Attorney

2    General's need for donor information outweighs any burdens on First Amendment

3    interests, especially because these can be mitigated through the protective order.

4    Plaintiff must produce all responsive, non-privileged documents and information

5    requested in Interrogatory Nos. 1, 3, 4, 8, 9, 11 and 12 and Request for Production

6    Nos. 5, 7, 11, 12, 14, 15, 19, and 20.

7    **C.   Plaintiff's Position**

8    The Attorney General objects to the Foundation's invocation of the First

9    Amendment as grounds "for refusing to respond" to "three" categories of discovery

10   requests.  In fact, the Foundation responded to two of these categories, and

11   venerable precedent establishes that the First Amendment bars the other category of

12   discovery requests that the Attorney General served.

13   The first category of discovery requests the Attorney General focuses on are

14   her demands that the Foundation identify (by name and address) *every* Schedule B

15   donor to the Foundation from 2000 to the present (Interrogatory No. 1 and RFP No.

16   5).  Of course, the Foundation initiated this lawsuit *precisely* to *prevent* it from

17   having to respond to the Attorney General's demands for its Schedule B donors,

18   and this Court entered a preliminary injunction to prevent the First Amendment

19   violation and irreparable harm that would occur if the Foundation had to disclose its

20   Schedule B donors to the Attorney General.  *See* Order Denying Defendant's

21   Motion To Stay Proceedings Pending Appeal, ECF 50, at 3 ("The very reason this

22   Court entered a preliminary injunction was to halt the potential, and likely, harm

23   from Defendant's draconian demands.").  Needless to say, the Attorney General's

24   demands for the Foundation's Schedule B donors do not suddenly cease violating

25   the First Amendment now that they are framed in the guise of an interrogatory and

26   request for production rather than a pre-litigation demand letter.  The U.S. Supreme

27   Court and other courts have repeatedly held that the First Amendment bars a

28   demand for the names of the members or donors of a private advocacy

43

1   organization.  *E.g.*, *NAACP v. Alabama ex rel.* Patterson, 357 U.S. 449, 462–66

2   (1958); *Perry*, 591 F.3d at 1159–60 & n.4 (collecting cases).  Those cases establish

3   that the Foundation's Schedule B donor information is privileged under the First

4   Amendment and therefore need not be disclosed.

5        The second category of discovery requests the Attorney General mentions are

6   requests seeking information about threats and harassment suffered by donors as a

7   result of association with the Foundation (Interrogatory Nos. 8, 9, 11, and 12, and

8   RFP Nos. 11, 12, 14, and 15).  In fact, the Foundation *did* respond to these

9   discovery requests.  It stated that it does not know of any information responsive to

10  Interrogatory Nos. 8 and 9, it provided lengthy answers in response to Interrogatory

11  Nos. 11 and 12, and it stated that it would produce all non-privileged documents

12  responsive to RFP Nos. 11, 12, 14, and 15.  The Attorney General is thus incorrect

13  in contending that the Foundation "refus[ed] to respond" to these requests; the

14  Foundation will produce all of the evidence it can reasonably obtain about threats

15  and harassment suffered by its donors.  The Foundation invoked the First

16  Amendment privilege in its response to these requests only to preserve its ability to

17  redact identifying information about these donors.  As already noted, the First

18  Amendment protects organizations from having to identify their members or

19  donors.  *See, e.g.*, *NAACP v. Alabama*, 357 U.S. at 462–66; *Perry*, 591 F.3d at

20  1159–60 & n.4.  It is especially important to withhold identifying information about

21  donors who are already the subject of threats and harassment as they are even more

22  likely to have their speech chilled if their identities are divulged.

23       The third category of discovery requests that the Attorney General points to

24  are her requests for information about the donations and fundraising of both the

25  Foundation and its sister organization, Americans for Prosperity, since the year

26

27

28

2000 (Interrogatory Nos. 3 and 4, and RFP Nos. 7, 19, and 20).[11]   Contrary to what the Attorney General claims, the Foundation *did respond* to some of these requests. Specifically, in response to Interrogatory No. 3 it identified information about the donations it receives, and in response to Interrogatory No. 4 it described its fundraising efforts.  The Foundation invoked the First Amendment in response to Interrogatory No. 3 only to the extent that the Interrogatory seeks identifying information about the Foundation's donors (which is privileged under *NAACP v. Alabama* and *Perry*).  As for Interrogatory No. 4 and RFP Nos. 7, 19, and 20, the Foundation invoked the First Amendment to protect from disclosure its sensitive internal communications relating to its solicitation of members and donations and its fundraising efforts.  "[F]und-raising for charitable organizations is fully protected speech," *Gaudiya Vaishnava Society v. City & County of San Francisco*, 952 F.2d 1059, 1063 (9th Cir. 1990), and requiring the Foundation to divulge the requested information to the Attorney General could compromise its fundraising efforts and the identities of actual and prospective members and donors.  When, like here, an organization's internal communications "encompass a vastly wider range of sensitive material protected by the First Amendment than would be true in the normal discovery context," the First Amendment privilege shields those communications from disclosure.  *Perry*, 591 F.3d at 1158 (citation and internal quotation marks omitted).

The Attorney General argues that the First Amendment privilege applies only when the party claiming privilege establishes a *prima facie* First Amendment harm. As this Court has already found, the Foundation "has made such a showing."  ECF 43-1 at 10 (transcript of PI hearing).  The Attorney General argues that there will be no harm here because  a protective order is in place to limit how broadly the

---

[11] The Foundation also responds, pursuant to the Attorney General's n. 10, that it is willing to amend its interrogatory response to reflect the role of the Foundation's volunteers in soliciting donations.

1   Foundation's donor identities are disseminated.  But as this Court already found,

2   the Foundation "has made a prima facie showing even if a Schedule B was only

3   disclosed to defendant."  ECF 43-1 at 11.  Accordingly, just as in *Perry*, a

4   "protective order limiting dissemination of this information will ameliorate but

5   cannot eliminate these threatened harms," and so the First Amendment privilege

6   applies.  591 F.3d at 1164.

7       Since there is a *prima facie* showing of infringement, the burden shifts to the

8   Attorney General to satisfy "the First Amendment's more demanding heightened

9   relevance standard," which requires her to have "demonstrated an interest in

10  obtaining the disclosure . . . which is sufficient to justify the deterrent effect . . . on

11  the free exercise of [the] constitutionally protected right of association."  *Id.*

12  (quoting *NAACP v. Alabama*, 357 U.S. at 463).

13      The Attorney General's main argument is that she "cannot test Plaintiff's

14  central claim in this litigation without knowing the names of the persons who have

15  allegedly experienced such harm or who might have testimony contradicting such

16  claims."  Such an argument certainly does not justify the Attorney General's

17  sweeping discovery requests seeking the identities of *every* Schedule B donor to the

18  Foundation since 2000.  Nor does it support compelling the release of the identities

19  of only certain Schedule B donors.

20      As detailed in the Foundation's response to Section III, *supra*, the preliminary

21  injunction prevents the Attorney General from obtaining specific donor

22  information.  Indeed, this Court recognized in an earlier order, "It cannot be that the

23  First Amendment of some must be sacrificed to protect the First Amendment of

24  most.  Thus, the Court rejects the Attorney General's argument that Plaintiff need

25  proffer individualized testimony from those persons seeking to not have their

26  identifying information disclosed."  Dkt. 27 at 3.

27      The Foundation may nonetheless proffer the testimony of donors who,

28  understanding the importance of this litigation, are willing to disclose their

46

1   identities to opposing counsel.  Such disclosure will require a strict protective order

2   designating them as John Does to the public.  In that circumstance, the Attorney

3   General will be able to depose and cross-examine those individuals to their fullest.

4        To the extent the Attorney General seeks to identify donors who have publicly

5   disclosed their affiliation with the Foundation in order to assess the harms they

6   have experienced, such as in their personal tax forms, she can find such public

7   disclosures herself.  *Perry*, 591 F.3d at 1164 (recognizing that a party could "obtain

8   much of the information they seek from other sources, without intruding on

9   protected activities").  Furthermore, the Foundation has already explained that it

10  does not keep track of its donor's private decisions to disclose donations in the

11  ordinary course of its operations.

12       Finally, the Attorney General has not borne her burden of satisfying the high

13  First Amendment standard for demonstrating why internal communications about

14  the Foundation's and AFP's fundraising projections and activities since the year

15  2000 are relevant.  The information it seeks relates to "rank-and-file" donors, which

16  are highly protected.  *Perry*, 591 F.3d at 1164.  Moreover, information about the

17  Foundation's fundraising efforts has nothing to do with either (1) the Attorney

18  General's stated interest in demanding Schedule B from the Foundation or (2) the

19  Foundation's right to shield donor information from disclosure.  As the Attorney

20  General points out, to succeed on its as-applied claim, the Foundation need only

21  show a reasonable probability that compelled disclosure of its donors' names will

22  subject them to threats, harassment, or reprisals.  Information about the

23  Foundation's solicitation of donors and fundraising efforts since 2000 has no

24  relevance to that question.  The Attorney General simply cannot carry her burden of

25  showing that releasing this information is sufficiently important in this case to

26  warrant the chill on the exercise of First Amendment freedoms that would result.

27       Accordingly, the Foundation's First Amendment objections should be

28  preserved, and the requested discovery limited on those grounds.

47

## V.   PLAINTIFF'S RELEVANCE OBJECTIONS

### A.   The Relationship Between the Foundation and AFP

#### 1.   The Discovery Requests and Responses in Dispute

**INTERROGATORY NO. 6:**

For each year from 2000 to the present, DESCRIBE the relationship between AFP and the FOUNDATION, including (but not limited to) any financial transactions between the two entities; financial transactions between AFP or the FOUNDATION and entities controlled by or affiliated with AFP or the FOUNDATION; shared functions, physical or financial resources, and personnel; work, activities, or funds spent by the FOUNDATION in support of or in conjunction with AFP; work, activities, or funds spent by AFP in support of or in conjunction with the FOUNDATION; coordination of development or fundraising efforts between AFP and the FOUNDATION; and all facts supporting the designation of the FOUNDATION as a "direct controlling entity" of AFP and the designation of AFP as an "entity more than 35% controlled by" the FOUNDATION, as reported in the Forms 990 filed by the FOUNDATION.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks all information about the "relationship between AFP and the FOUNDATION" since the year "2000." The terms of this Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects that information about the relationship between the Foundation and AFP are already in the Attorney General's possession. In particular, the Form 990s that the Foundation annually files with the Attorney General describe the relationship between the two entities (indeed, this Interrogatory quotes from those Form 990s).

The Foundation further objects that information concerning particular details of the Foundation's relationship beyond those described in the Form 990s—such as certain "financial transactions between AFP or the FOUNDATION and entities controlled by or affiliated with AFP or the FOUNDATION; shared functions, physical or financial resources, and personnel; work, activities, or funds spent by the FOUNDATION in support of or in conjunction with AFP; work, activities, or funds spent by AFP in support of or in conjunction with the FOUNDATION; coordination of development or fundraising efforts between AFP and the FOUNDATION"—is wholly irrelevant, and a request for information is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. The requested information relates neither to the

48

Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will point out responsive information contained in the Form 990s it annually files with the Attorney General, or available on the Foundation's website.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

Americans for Prosperity ("AFP") and the Foundation are legally distinct, albeit associated, non-profit organizations. AFP and the Foundation share some resources, office space and personnel, but they serve distinct functions and they operate within different legal regimes. AFP, a 501(c)(4) organization, engages in issue advocacy; the mission of the Foundation, a 501(c)(3) organization, is to educate persons about the value of a free economy.

The Form 990s that the Foundation files with the Attorney General each year details many aspects of the relationship between AFP and the Foundation. For example, as recorded in Part V of the Foundation's 2013 Schedule R, in 2013 the Foundation engaged in various financial  transactions with AFP involving $1,166,994; $3,977,753; $165,523; and $645,249.

Past 990s have designated the Foundation as a "direct controlling entity" of AFP and have designated AFP as an entity "more than 35% controlled" by the Foundation because (1) the Foundation's board members appoint AFP's board members, and (2) AFP and the Foundation have shared at least two board directors (currently Richard Fink and Nancy Pfotenhauer serve on the boards of both organizations), and in 2013 AFP used to have only five board members (2 of 5 is 40%, which is greater than 35%).

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS, dating from the year 2000 to the present, relating to the relationship between AFP and the FOUNDATION, including (but not limited to) any financial transactions between the two entities; financial transactions between AFP or the FOUNDATION and entities controlled by or affiliated with AFP or the FOUNDATION; shared functions, physical or financial resources, and personnel; work, activities, or funds spent by the FOUNDATION in support of or in conjunction with AFP; work, activities, or funds spent by AFP in support of or in conjunction with the FOUNDATION; coordination of development or fundraising efforts between AFP and the FOUNDATION; and all facts supporting the designation of the FOUNDATION as a "direct controlling entity" of AFP and the designation of AFP as an "entity more than 35% controlled by" the FOUNDATION, as reported in the Forms 990 filed by the FOUNDATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

49

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS" since the year "2000" "relating to" the "relationship between AFP and the FOUNDATION." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects that documents relating to the relationship between the Foundation and AFP are already in the Attorney General's possession. In particular, the Form 990s that the Foundation annually files with the Attorney General describe the relationship between the two entities (indeed, this Request for Production quotes from those Form 990s).

The Foundation further objects that documents concerning particular details of the Foundation's relationship beyond those described in the Form 990s—such as certain "financial transactions between AFP or the FOUNDATION and entities controlled by or affiliated with AFP or the FOUNDATION; shared functions, physical or financial resources, and personnel; work, activities, or funds spent by the FOUNDATION in support of or in conjunction with AFP; work, activities, or funds spent by AFP in support of or in conjunction with the FOUNDATION; coordination of development or fundraising efforts between AFP and the FOUNDATION"—are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

For these reasons, the Foundation will not produce additional documents in response to this Request.

## 2.   The Attorney General's Position

Plaintiff has responded to numerous discovery requests with a boilerplate relevance objection (that the information requested is "wholly irrelevant"), based on its contention that discovery in this matter is limited to "whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs" or "the Attorney General's stated interest in obtaining the Foundation's Schedule B."[12] Such "boilerplate relevancy objections, without setting forth any explanation or

_____

[12] Plaintiff asserted this objection in response to Interrogatory Nos. 2, 3, 4, 5, 6, 7, 10, and 15, as well as Request for Production Nos. 4, 9, 10, and 18.

1 argument why the requested documents are not relevant, are improper." *A. Farber*

2 *& Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

3   Plaintiff's attempt to limit the scope of the Attorney General's discovery

4 misunderstands both the underlying legal framework of its claims and Plaintiff's

5 burden of proof.  The as-applied challenge requires *Plaintiff* to make an affirmative

6 showing of "'a reasonable probability that the compelled disclosure of [its]

7 contributors' names will subject them to threats, harassment, or reprisals from

8 either Government officials or private parties' that would warrant relief on an as-

9 applied challenge." *Center for Competitive Politics*, 784 F.3d at 1317 (citation

10 omitted).  As explained below, these discovery requests seek information and

11 documents critical to the Attorney General's ability to test these claims and mount a

12 defense.  Accordingly, all of the requests are "relevant to the subject matter

13 involved in this action" and are "reasonably calculated to lead to the discovery of

14 admissible evidence."  Fed. R. Civ. P. 26(b)(1).

15   Interrogatory No. 6 and Request for Production No. 9 seek information and

16 documents relating to the relationship between Plaintiff and AFP, its sister

17 501(c)(4) organization.  Plaintiff has objected, in part, on the basis of relevance, has

18 refused to produce any responsive documents, and has provided a very limited

19 amount of responsive information.

20   The relationship between AFP and the Foundation is relevant to establishing

21 the claims and defenses in this lawsuit as Plaintiff has framed it.  To date, almost all

22 of the purported threats and harassment to donors alleged in support Plaintiff's

23 claim of associational chill are alleged to have been experienced not by Plaintiff's

24 donors, but by AFP's donors or its well-known founders, David and Charles Koch.

25 *See, e.g.*, Li Decl., Ex. 1 (Compl. ¶¶ 13-19); Ex. 2 (Mem. in Support of Mot. for

26 Preliminary Injunction at 11-16).  Even in discovery, Plaintiff continues to identify

27 alleged incidents of harm to AFP donors, asserting in response to Interrogatory No.

28 10 that AFP and the Foundation are intertwined in the public's perception ("[t]he

51

Foundation understands that attacks directed against Americans for Prosperity are also often meant for the Foundation, and vice versa, *because the public perceives the two organizations as related, even though they are legally distinct*" (emphasis added)).

The relationship between the Foundation and AFP is therefore a significant factual issue in this litigation, specifically, whether any First Amendment harms relating to AFP and its donors may be imputed to the Foundation and its donors. These discovery requests seek relevant information on the relationship and interactions between the two organizations to understand how the two organizations coordinate their operations with respect to donors, programming, and finances, including coordination of fundraising and development efforts.

Although it has repeatedly relied upon its alleged relationship with AFP, Plaintiff takes issue with the Attorney General's effort to understand that relationship. Li Decl., Ex. 11 at 3. Plaintiff also exaggerates the scope of the Attorney General's requests. The Attorney General has already agreed that the relevant date range begins in 2010. In addition, the requests are tailored to produce information explaining the substance and key aspects of the relationship—financial transactions, public events, and coordination of development and fundraising between AFP and the Foundation. In Interrogatory No. 6, the Attorney General has asked Plaintiff to describe the extent of these transactions and relations. If Plaintiff does so sufficiently, the Attorney General is willing to amend the corresponding document request (No. 9) based on Plaintiff's response and limit it, for instance, to particular types of transactions and coordination identified.

Plaintiff has emphasized the centrality of its relationship with AFP at every opportunity in this litigation—in its complaint, its motion papers, and again in its

52

discovery responses.  It therefore must produce all responsive, non-privileged documents and information for Interrogatory No. 6 and Request for Production 9.[13]

### 3.   Plaintiff's Position

The Attorney General's arguments in support of Interrogatory No. 6 and RFP No. 9 are completely divorced from the actual language of both requests—for obvious reasons.  These requests are so overbroad they border on the nonsensical.  Contrary to the Attorney General's position, they do not simply seek a reasonable set of documents relating to "the relationship between Plaintiff and AFP."  If they truly were limited in that way, there would be no dispute, as the Foundation has already agreed to provide the Attorney General with information sufficient to show this relationship.  The Attorney General's requests, however, are not so limited.

For example, RFP No. 9 seeks "*all* documents" from "2000 to the present" that simply *relate* to the "relationship between AFP and the Foundation," including *all* documents concerning (i) *any* "financial transactions between the two entities;" (ii) *any* "financial transactions between [] entities *controlled by or affiliated with AFP or the Foundation*;" (iii) *any* "shared functions, physical or financial resources, and personnel" between the entities; *etc*.  That summarizes only *half* of RFP No. 9.  And it does not even account for the Attorney General's attempt to define "the Foundation" to include all of its "state or local affiliates, offices, chapters, branches, or programs," which exponentially increases the scope of this request.  There is simply no end in sight to the scope of this request, much less a principled path forward for the Foundation to collect and produce responsive information.  Indeed, the Attorney General's request that the Foundation produce

---

[13] Plaintiff is required to provide documents within its "possession, custody, or control."  Fed. R. Civ. P. 34.  "In the Ninth Circuit, 'control' is defined as 'the legal right to obtain documents upon demand.'"  *Dugan v. Lloyds TSB Bank, PLC*, No. 12-cv-02549-WHA (NJV), 2013 WL 4758055, at *2 (N.D. Cal. Sep. 4, 2013) (citation omitted).  If the Foundation has a "legal right to obtain documents" from AFP "upon demand," then responsive documents held by AFP are within the scope of the Foundation's discovery obligations.  If Plaintiff will say that it has no such authority, the Attorney General will subpoena the information from AFP.

every document "relating to the relationship between AFP and the FOUNDATION" would conceivably cover *every* email, sent between *every* member of AFP's and the Foundation's staffs, in *every* office nationwide.

As with all of the Attorney General's requests, we have specifically invited her to narrow the scope of this request in way that the Foundation can reasonably comply. To date, however, she has declined that invitation. Even so, the Foundation is nonetheless producing information in response to these requests. For starters, information about the relationship between the Foundation and AFP is already available in the Foundation's Form 990s, which have been provided to the Attorney General. Those Form 990s included, *e.g.*, information regarding financial transactions between the organizations and compensation to individuals working for both organizations. Additionally, the Foundation has *already* provided, in response to Interrogatory No. 6, information regarding the related missions and resources of the two organizations. This response contains tailored information about "the substance and key aspects of the relationship" between the two entities, just as the Attorney General says she is willing to confine her requests.

## B. The Organizational Structure of the Foundation and Its State and Local Affiliates

### 1. The Discovery Requests and Responses in Dispute

**INTERROGATORY NO. 2:**

For each year from 2000 to the present, IDENTIFY each individual or entity employed by, contracted to, or volunteering for the FOUNDATION and involved in communicating with, soliciting, accepting, and/or tracking DONATIONS from potential or actual DONORS to the FOUNDATION.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory for seeking the identities of "each individual or entity" ever "employed by, contracted to, or volunteering for" the Foundation and involved in fundraising since the year "2000." This Interrogatory is overbroad (including as to time and scope), unduly burdensome to answer, and seeks information that is private, wholly irrelevant, and protected from disclosure by the First Amendment and other applicable laws.

54

The Foundation objects to producing identifying information about any of the Foundation's volunteers. Such information is shielded from disclosure by the First Amendment, just like information about the Foundation's members and donors. *International Action Center v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) ("[T]he following information is protected by the First Amendment: membership and volunteer lists . . . . Consequently, discovery requests from Defendants that seek such information will not be allowed.").

The Foundation also objects that this Interrogatory seeks personal and employment information protected by the right to privacy embodied in the California Constitution, Article 1, Section 1, *see Board of Trustees of Leland Stanford Junior University v. Superior Court of Santa Clara County*, 119 Cal. App. 3d 516, 525–28 (Cal. Ct. App. 1981), and embodied in other applicable law.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation's Development Department is responsible for fundraising, including soliciting, accepting, and tracking donations. The Form 990 that the Foundation files with the Attorney General each year (and makes available for public inspection) contains the names of the Foundation's key employees, including the leaders of its Development Department. For example, as reported in the Foundation's 2013 Form 990, Christopher Fink was then the Foundation's Vice President in charge of Development, and Robert Stuber was the Director of Development—Direct Marketing. Currently, Sarah Moore is the Foundation's Director of Development. Each of the above individuals remains an employee of the Foundation and may be contacted through counsel representing the Foundation in this matter.

**INTERROGATORY NO. 15:**

DESCRIBE the organizational structure of the FOUNDATION, including (but not limited to) the composition, reporting relationships, and financial relationships of the FOUNDATION's board of directors; officers, employees, contractors, or volunteers with national and/or statewide responsibility; and state or local affiliates, offices, branches, or programs.

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks information about "the organizational structure of the FOUNDATION," including for all "officers, employees, contractors, or volunteers with national and/or statewide responsibility," and for all "state or local affiliates, offices, branches, or programs." The terms of this Interrogatory are vague, overbroad, and unduly burdensome to answer.

The Foundation objects to producing identifying information

55

about any of the Foundation's volunteers. Such information is shielded from disclosure by the First Amendment, just like information about the Foundation's members and donors. *International Action Center*, 207 F.R.D. at 3 ("[T]he following information is protected by the First Amendment: membership and volunteer lists . . . . Consequently, discovery requests from Defendants that seek such information will not be allowed.").

The Foundation also objects that this Interrogatory seeks personal and employment information protected by the right to privacy embodied in the California Constitution, Article 1, Section 1, *see Board of Trustees*, 119 Cal. App. 3d at 525–28, and embodied in other applicable law.

The Foundation further objects to this Interrogatory to the extent it seeks information that does not relate to the Foundation's national or California offices. Such information is wholly irrelevant, and a request for such information is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation, a 501(c)(3) tax-exempt organization, is a national organization of citizen leaders who pursue greater economic growth, opportunity, and prosperity by educating individual citizens about the practical benefits of a free economy and how they can best avail themselves of those benefits on an everyday basis. The Foundation concentrates its efforts at the state level and maintains both state chapters and a national office to promote education and thereby achieve its goals.

The Foundation is led by a Board of Directors that currently comprises one Chairman and five Directors. A Chief Executive Officer runs the Foundation on a daily basis. Direct reports to the CEO include (1) the Foundation's President, (2) the Chief Operating Officer ("COO"), (3) the Chief Marketing & Communications Officer, (4) the Vice President for Government Affairs, (5) the Vice President for State Operations, and (6) the Vice President for Strategic Initiatives. The Development Department, Financial Department, and Legal Department all report to the COO. The State Directors, who run the various state offices, report to the Vice President for State Operations.

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to ascertain the name, position, reporting relationship, duties, and compensation of individuals employed by, contracted to, or volunteering with the FOUNDATION from the year 2000 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks documents

56

sufficient to ascertain the name of each individual ever "employed by, contracted to, or volunteering for" the Foundation since the year "2000." This Request is overbroad (including as to time and scope), unduly burdensome to answer, and seeks materials most of which are already in the Attorney General's possession, and the rest of which are private, wholly irrelevant, and protected from disclosure by the First Amendment and other applicable laws.

The Foundation objects to producing any materials identifying the Foundation's volunteers. Such materials are shielded from disclosure by the First Amendment, just like information about the Foundation's members and donors. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) ("[T]he following information is protected by the First Amendment: membership and volunteer lists . . . . Consequently, discovery requests from Defendants that seek such information will not be allowed.").

The Foundation also objects that this Request seeks personal and employment information protected by the right to privacy embodied in the California Constitution, Article 1, Section 1, *see Board of Trustees of Leland Stanford Junior University v. Superior Court of Santa Clara County*, 119 Cal. App. 3d 516, 525–28 (Cal. Ct. App. 1981), and embodied in other applicable law.

The Foundation also objects to producing documents concerning the Foundation's employees or contractors who do not have significant management responsibilities pertinent to this case, and to producing documents concerning compensation amounts, as such materials are wholly irrelevant to this case. Moreover, the Form 990 the Foundation files with the Attorney General each year (and makes available for public inspection) already contains the names, positions, and compensation amounts of the Foundation's officers, directors, trustees, key employees, and highest-compensated employees. No other Foundation employee receives compensation greater than that disclosed on the Foundation's Form 990. Thus, the Attorney General already has in her possession the requested information that is both relevant and not protected from disclosure.

For these reasons, the Foundation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to ascertain the organizational structure of the FOUNDATION, including (but not limited to) DOCUMENTS relating to the composition, reporting relationships, and financial relationships of the FOUNDATION's board of directors; officers, employees, contractors, or volunteers with national and/or statewide responsibility; and state or local affiliates, offices, chapters, branches, or programs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

In addition to the Foundation's general objections, the

57

Foundation objects to this Request to the extent it seeks documents sufficient to ascertain the Foundation's organizational structure, including for all "officers, employees, contractors, or volunteers with national and/or statewide responsibility," and for all "state or local affiliates, offices, branches, or programs." The terms of this Request are vague, overbroad, and unduly burdensome to answer.

The Foundation objects that this Request is duplicative of Request No. 4 to the extent it seeks documents about the names, positions, reporting relationships, duties, or compensation amounts of the Foundation's officers, employees, contractors, or volunteers, it. The Foundation incorporates in response to this Request all of its objections and responses to Request No. 4, and for these reasons will not produce any documents in response to this Request about the Foundation's officers, employees, contractors, or volunteers.

The Foundation further objects to this Request to the extent it seeks materials that do not relate to the Foundation's national or California offices. Such information is wholly irrelevant, and a request for such information is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these general and specific objections, the Foundation will produce non-privileged documents sufficient to ascertain the organizational structure of the Foundation's national and California offices.

## 2.    The Attorney General's Position

Interrogatory Nos. 2 and 15, and Request for Production Nos. 4 and 18 seek documents and information relating to Plaintiff's organizational structure, employees and volunteers, and the identities of individuals "involved in communicating with, soliciting, accepting, and/or tracking DONATIONS from potential or actual DONORS to the FOUNDATION." Plaintiff has objected that these requests seek information that is irrelevant, has refused to produce any information relating to volunteers, and has limited its responses to naming a handful of executive-level officers already identified in Plaintiff's Form 990. It has also refused to produce any documents relating to its employees or to its organizational structure outside of California or in its national office.

Plaintiff's objections are invalid and its responses inadequate. Discovery requests regarding the identities of individuals and organizational structures are both common and an essential part of discovery. *See, e.g.*, *Hill v. Asset Acceptance,*

58

*LLC*, No. 13CV1718-BEN BLM, 2014 WL 3014945, at \*15 n.9 (S.D. Cal. July 3, 2014) (listing cases); *Cunningham v. Standard Fire Ins. Co.*, No. CIVA 07CV02538REBKLM, 2008 WL 2902621, at \*2 (D. Colo. July 24, 2008) (granting motion to compel production of organizational chart).

The Attorney General's discovery requests are not only in keeping with this common practice, but the information sought is directly relevant to the claims and defenses in the litigation. To identify possible witnesses and further lines of written discovery, the Attorney General must have a working understanding of the Foundation's structure and operations. This includes an understanding of the persons who, on the Foundation's behalf, has interacted with potential and current donors, and thus may have knowledge relevant to Plaintiff's allegations of First Amendment associational chill. While Plaintiff has named two former and one current senior development officers in its limited response to Interrogatory No. 2, this is an insufficient response to a request seeking the names of executive, managerial, and non-managerial employees, independent contractors, and volunteers who have contact with donors and may have knowledge about the fears donors have allegedly expressed.[14]

As for Interrogatory No. 15 and Request for Production No. 18 (regarding organizational structure), Plaintiff further objects to the relevance of information about the Foundation's organizational structure in states outside of California. As stated above, there is no basis for limiting the geographic scope of the Attorney General's discovery requests to California because Plaintiff's allegations are not so limited. *See supra* at Part II.

---

[14]  The Attorney General is willing to limit the scope of Request for Production No. 4 to match Interrogatory No. 2's call for individuals (employees, contractors, or volunteers) or entities "involved in communicating with, soliciting, accepting, and/or tracking DONATIONS from potential or actual DONORS to the FOUNDATION."

Plaintiff's relevance objections are not grounds for refusing to respond to discovery. Plaintiff must produce all responsive, non-privileged documents and information for Interrogatory Nos. 2 and 15, and Request for Production Nos. 4 and 18.

### 3. Plaintiff's Position

Here, again, the Attorney General glosses over the *actual* language of her requests. But it is *precisely* that language that matters most: It necessarily creates the boundary around what information the Foundation is obliged to produce and whether it has complied with those obligations. A prime example of the stunning overbreadth and obvious irrelevance of these categories of requests is Interrogatory No. 2. This request seeks, *from 2000 forward*, identification of "*each* individual or entity *employed* by, *contracted* to, or *volunteering* for the Foundation and *involved* in, *communicating* with, *soliciting*, *accepting*, and/or *tracking* donations." Such a request is limitless and entails gratuitous, unbearable burdens. It includes, *e.g.*, identification of vendors employed by the Foundation to assist it with maintaining its internal software program as its relates to keeping track of donors, potential donors, donations, and potential donations. This information is so far from relevant that it appears propounded only as a means to unduly harass and burden the Foundation.

Even the cases cited by the Attorney General do not support these requests. *Cunningham*, for example, concerns the compulsion of a party's internal organizational charts from relevant time periods. The Foundation has, however, already agreed to produce, and will be producing, such charts. Moreover, the Foundation has already provided information about its California operations, individuals associated therewith—namely David Spady—as well as a list of its Regional Development Officers who are responsible for soliciting donations. Between the Foundation's senior development staff, senior personnel listed on its Form 990s, and California operations, the Attorney General appears to have all the

60

information she needs and is asking for above.  To the extent she does not, however, we remain open to specific proposals to constructively discuss these requests to arrive at a reasonable compromise.  The Attorney General has refused to engage.[15]

## C.   The Foundation's Activities In California

### 1.   The Discovery Requests and Responses in Dispute

**INTERROGATORY NO. 7:**

For each year from 2000 to the present, DESCRIBE the FOUNDATION's work in California, including (but not limited to) the function of the FOUNDATION's California affiliate, office, chapter, branch, or program; fundraising efforts in California on behalf of the FOUNDATION and/or AFP; meetings, conferences, seminars, classes, training programs or other gatherings in California organized or supported by the FOUNDATION on behalf of the FOUNDATION and/or AFP; and any other FOUNDATION efforts in California in support of the work of the FOUNDATION and/or AFP.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks all information about "the FOUNDATION's work in California" since the year 2000." The terms of this Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects that the request for information about the Foundation's "fundraising efforts in California" is duplicative of Interrogatory No.4, and the Foundation incorporates in response to this Request all of its objections and responses to Request No. 4.

The Foundation further objects that information relating to the Foundation's work in California is wholly irrelevant, and that a request for such information is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Whatever work the Foundation performs in California—including whatever "meetings, conferences, seminars, classes, training programs, or other gatherings" the Foundations organizes or supports—simply has no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B, nor

---

[15]   As the Attorney General correctly notes, *supra n.10*, the Foundation's volunteers do not typically have anything more than incidental contact with the Foundation's donors, and the Foundation is willingly to amend its responses accordingly.

to the Foundation's right to safeguard the confidentiality of its donors' identities.

Furthermore, the Foundation objects that this Interrogatory seeks irrelevant information about AFP, which is a different organization from the Foundation and not a party to this lawsuit.

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will briefly outline its work in California.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The California chapter of the Foundation ("AFPF California") commenced operations in early 2008. AFPF California's activities primarily involve educating and training citizens about issues pertaining to economic freedom and responsible government. Since launching, it has hosted educational events across the state and produced educational video commentaries and documentary films. Illustrative events include, without limitation:

- AFPF California Summit in Westlake (January 2008)
- Balancing State Budgets Conference in Sacramento (June 2009)
- AFPF Pension Crisis event in Indian Wells (September 2009)
- Live from Copenhagen event in Thousand Oaks (December 2009)
- UN Climate Change Conference event in Orange County (December 2010)
- School Choice events and Cartel screening (January 2011)
- Lifestyles of the Rich and Famous on a Government Pension tour (March/April 2011)
- California Underfunded Pension Tsunami event (February 2012)
- Economics of Climate Change Policy event (June 2012)
- Wolves in Government Clothing/Endangered Species Act events (October/November 2013)

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS relating to the FOUNDATION's work in California, including (but not limited to) the function of the FOUNDATION's California affiliate, office, chapter, branch, or program; fundraising efforts in California on behalf of the FOUNDATION and/or AFP; meetings, conferences, seminars, classes, training programs or other gatherings in California organized or supported by the FOUNDATION on behalf of the FOUNDATION and/or AFP; and any other FOUNDATION efforts in California in support of the work of the FOUNDATION and/or AFP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS" since the year "2000" "relating to" the "the FOUNDATION's work in California." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

62

The Foundation further objects that the request for all materials related to the Foundation's "fundraising efforts in California" is duplicative of Request No. 7, and the Foundation incorporates in response to this Request all of its objections to Request No. 7.

The Foundation further objects that documents relating to the Foundation's work in California are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Whatever work the Foundation performs in California—including whatever "meetings, conferences, seminars, classes, training programs, or other gatherings" the Foundations organizes or supports—simply has no bearing on these claims or defenses. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

Furthermore, the Foundation objects that this Request seeks irrelevant information about AFP, which is a different organization from the Foundation and not a party to this lawsuit.

For these reasons, the Foundation will not produce documents in response to this Request.

## 2.    The Attorney General's Position

Interrogatory No. 7 and Request for Production No. 10 seek information and documents regarding the Foundation's work in California, including fundraising efforts, programs, meetings, and conferences.  Plaintiff has responded by "brief[ly] outlin[ing] its work in California" and providing a list of "illustrative events" held in California, and has otherwise asserted various boilerplate objections, including one based on relevance.  It has refused to produce any responsive documents.

These discovery requests are relevant to Plaintiff's claims.  Like an organizational chart, the scope of the Foundation's work and operations in California are basic facts that the Attorney General must understand to build a defense.  Plaintiff made repeated, California-specific allegations in its complaint, as well as allegations relating to the organization's mission to educate.  *See, e.g.*, Li Decl., Ex. 1 (Compl. ¶¶ 8, 9, 17).  It is this mission and the Foundation's work that have allegedly generated hostility from some members of the public, including

63

1   alleged threats.  The information sought here directly relates to these underlying

2   facts, and could lead to the discovery of admissible evidence.

3        Plaintiff discusses almost none of this in its response to Interrogatory No. 7.  It

4   does not address any fundraising efforts or work it has done to support AFP, and

5   provides only a vague description that it "activities primarily involve educating and

6   training citizens about issues pertaining to economic freedom and responsible

7   government."  Not only is this unexplained, but the scant list of events Plaintiff

8   provides lacks context, description, or detail.

9        Plaintiff's response to Interrogatory No. 7 and its refusal to comply with

10  Request for Production No. 10 are inadequate.  Plaintiff must provide all non-

11  privileged information and documents responsive to both requests.

12              **3.    Plaintiff's Position**

13       The Attorney General's position in connection with these requests is simply

14  more of the same:  She makes no serious attempt to credibly defend her requests as

15  *actually* propounded.  RFP No. 10, for example, seeks a volume of information that

16  has no fair relation to the actual issues in dispute between the parties and threatens

17  to lead to endless discovery and burdens.  The Attorney General cannot credibly

18  argue that she is entitled to "*all* documents relating to the Foundation's *work* in

19  California."  Does she want documents concerning the Foundation's "work"

20  concerning its internal hiring practices?  Its "work" concerning contracts with

21  vendors to service its offices?  Its "work" concerning changes to its internal

22  software programs as it relates to payroll information?  These examples, as

23  explained to the Attorney General, fall within the scope of her requests as

24  propounded, and as such, these requests are wildly overbroad.  All we have asked

25  from the Attorney General is that she make an attempt to meet us somewhere in the

26  middle.  Yet she has refused.

27       To be clear, the Foundation will be producing documents concerning events –

28  fundraising and otherwise—as held in California.  The Foundation will likewise

revise its response to Interrogatory No. 7 to specifically refer the Attorney General to those documents pursuant to Rule 33(d).  Those two compromising steps should more than suffice and obviate any persisting dispute over these requests.

### D.   Information Regarding Donations to the Foundation or AFP

#### 1.   The Discovery Requests and Responses in Dispute

**INTERROGATORY NO. 3:**

For each year from 2000 to the present, DESCRIBE all DONATIONS made by SCHEDULE B DONORS to the FOUNDATION, including (but not limited to) the total number of SCHEDULE B DONORS; the number of SCHEDULE B DONORS residing in California; the total dollar amount of DONATIONS by SCHEDULE B DONORS residing in California; the total dollar amount of DONATIONS by SCHEDULE B DONORS; and the value and nature of any in-kind DONATIONS made by SCHEDULE B DONORS.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks identifying information about the Foundation's Schedule B donors in violation not only of the First Amendment, but also 26 U.S.C. § 6104 and the preliminary injunction in this case.

The Foundation further objects to this Interrogatory to the extent it seeks information about "all" donations from Schedule B donors since the year "2000." This Interrogatory is overly broad as to time and scope; unduly burdensome to answer; and designed to harass both the Foundation and its donors.

The Foundation further objects that the requested information is wholly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. The number of donors or amount of donations to the Foundation since the year 2000 simply have no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will point out responsive information contained in the Form 990s it annually files with the Attorney General.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

65

Information about the Foundation's donations is available in the Foundation's Form 990s. For example, as reported in Part I, Line 8, of the Foundation's 2013 Form 990, the Foundation received $12,976,019 in donations and grants in 2013. And as reported in Part VIII, Line 1, the Foundation in 2013 received $12,976,019 in contributions, gifts, and grants (no revenue came from federated campaigns, membership dues, fundraising events, related organizations, or government grants), of which $1,006,045 came from non-cash contributions. Details about those noncash contributions are contained in Schedule M Part I. In 2013, the Foundation received 14 contributions totaling $733,245 in publicly traded securities, and one contribution of $272,800 in software, as detailed in Schedule M Part II.

**INTERROGATORY NO. 4:**

For each year from 2000 to the present, DESCRIBE YOUR efforts to solicit and accept DONATIONS to the FOUNDATION, including (but not limited to) direct mail solicitation, phone solicitation, email solicitation, online solicitation through websites and/or advertisements, in-person solicitation, events, and corporate fundraising, as well as efforts in conjunction with other entities such as (but not limited to) AFP.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks information about all of the Foundation's "efforts," since the year "2000," "to solicit and accept DONATIONS." The terms of this Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Information about the Foundation's efforts to solicit or accept donations from anyone since the year 2000—no matter how large or small the donation, the medium of communication, and whether or not in conjunction with other entities, such as AFP—is wholly irrelevant, and a request for such information is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5,000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has solicited or accepted donations of any size since 2000 through mail, phone, email, online, or in-person contacts simply has no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

The Foundation further objects that internal communications regarding the solicitation of membership and donations are protected from disclosure by the First Amendment associational privilege. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1158 (9th Cir. 2010) (granting mandamus where district court violated the First Amendment

66

privilege by compelling disclosure of sensitive internal campaign communications).

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will briefly describe its fundraising efforts.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation's fundraisers typically solicit donations from current or prospective individual donors during in-person meetings, attended by a fundraiser from the Foundation and a member of the State Operations team. The Foundation also engages in phone, email, and online solicitations, though less frequently. Phone solicitations are rare and usually are targeted to certain current donors. The Foundation also solicits passively through emails and its website, which provide opportunities to contribute (*e.g.*, a "donate" button in emails and on the Foundation's website).

The Foundation does not host any national events geared toward solicitation, although it does infrequently host small events for donors in conjunction with its annual meeting of the Foundation's board of directors.

## INTERROGATORY NO. 5:

For each year from 2000 to the present, IDENTIFY the FOUNDATION's sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS including (but not limited to) the amount of revenue or value of gifts attributable to each source annually.

## RESPONSE TO INTERROGATORY NO. 5:

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory to the extent it seeks information about all of the Foundation's "sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS" since the year "2000." The terms of this Interrogatory are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects to this Interrogatory to the extent that it seeks identifying information about certain of the Foundation's donors (namely, those who contributed less than $5,000 in a given year and therefore are not "SCHEDULE B DONORS") in violation of the First Amendment and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from "*demanding . . . a copy of the Foundation's Schedule B to IRS Form 990 or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for a written interrogatory response that would "IDENTIFY" the Foundation's donors, the Attorney General has violated the terms of the Court's preliminary injunction. The

67

Foundation reserves the right to take appropriate actions against the Attorney General to enforce the terms of the preliminary injunction, as and if necessary.

The Foundation further objects that information relating to the source, amount, or value of the Foundation's revenue and gifts from anyone since the year 2000, no matter how large or small the revenue or gift, is wholly irrelevant, and a request for such information is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5,000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has received revenue or gifts of any size since 2000 from non-Schedule B donors simply has no bearing on these claims or defenses. The requested information relates neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

Accordingly, no response is necessary to this Interrogatory, but to be helpful, the Foundation will point out responsive information contained in the Form 990s it annually files with the Attorney General.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The total dollar amount of revenue other than DONATIONS the Foundation has received can be found on its Form 990s, Part 1, Lines 9–11. For example, in 2013 the Foundation received $334,445 from sources of revenue other than contributions and grants. This information is broken down further in Part VIII Lines 2–11. For example, in 2013, the Foundation received $171,759 in registration fees, $160,454 in program service charges, and $2,232 in investment income.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS" since the year "2000" "relating to" the Foundation's "efforts to solicit and accept DONATIONS." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Documents relating to the Foundation's efforts to solicit or accept donations from anyone since the year 2000—no matter how large or small the donation, the medium of communication, and whether or not in conjunction with other entities, such as AFP—are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5,000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has solicited or accepted

68

donations of any size since 2000 through mail, phone, email, online, or in-person contacts simply has no bearing on these claims or defenses. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B, nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

The Foundation further objects that internal communications regarding the solicitation of membership and donations are protected from disclosure by the First Amendment associational privilege. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1158 (9th Cir. 2010) (granting mandamus where district court violated the First Amendment privilege by compelling disclosure of sensitive internal campaign communications).

For these reasons, the Foundation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS, dating from the year 2000 to the present, relating to the FOUNDATION's sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS including (but not limited to) the amount of revenue or value of gifts attributable to each source annually.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS" since the year "2000" "relating to" the Foundation's "sources of revenue or gifts other than DONATIONS from SCHEDULE B DONORS." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

The Foundation further objects to this Request to the extent that it seeks identifying information about certain of the Foundation's donors (namely, those who contributed less than $5,000 in a given year and therefore are not "SCHEDULE B DONORS") in violation of the First Amendment and the preliminary injunction in this case. The preliminary injunction expressly prohibits the Attorney General from ""*demanding* . . . a copy of the Foundation's Schedule B to IRS Form 990 *or any other document that would disclose the names and addresses of the Foundation's donors*, until this Court issues a final judgment." ECF 33 at 3 (emphasis added). By submitting this discovery demand for documents about the Foundation's donors, the Attorney General has violated the terms of the Court's preliminary injunction.

The Foundation further objects that documents relating to the source, amount, or value of the Foundation's revenue and gifts from anyone since the year 2000, no matter how large or small the revenue or gift, are wholly irrelevant, and a request for such documents is not

69

reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs (which contain the names and addresses of persons who donated more than $5000 to the Foundation) for 2011 and subsequent tax years. Whether or not the Foundation has received revenue or gifts of any size since 2000 from non Schedule B donors simply has no bearing on these claims or defenses. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule B nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

In any event, the Form 990 the Foundation files with the Attorney General each year (and makes available for public inspection) already contains extensive information about the amount of revenue and value of gifts the Foundation receives each year. There is no need for the Foundation to produce further documents on the subject.

For these reasons, the Foundation will not produce additional documents in response to this Request, and it reserves the right to take appropriate actions against the Attorney General to enforce the terms of the preliminary injunction, as and if necessary.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS relating to estimates or projections of the FOUNDATION's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years, including (but not limited to) internal estimates or projections, and representations made to potential and actual DONORS to or members or affiliates of the FOUNDATION, as well as to bloggers, journalists, or other representatives of media organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS relating to estimates or projections of the FOUNDATION's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Documents relating to the Foundation's estimates or projections of its past or future fundraising are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Whatever the Foundation estimates or projects its fundraising to be, that simply has no bearing on the claims or defenses in this case. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule Bs nor to the Foundation's right to safeguard the confidentiality of its donors' identities.

70

The Foundation further objects that internal communications regarding the Foundation's fundraising and development goals are protected from disclosure by the First Amendment associational privilege. *See, e.g., Perry*, 591 F.3d at 1158 (granting mandamus where district court violated the First Amendment privilege by compelling disclosure of sensitive internal campaign communications). Fundraising and development goals are, by their very nature, highly sensitive and proprietary, as  they go to aspects of the Foundation's mission and strategy that are far removed from this case and the issues in dispute.

For these reasons, the Foundation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS relating to estimates or projections of AFP's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years, including (but not limited to) internal estimates or projections, and representations made to potential and actual DONORS to or members or affiliates of the AFP, as well as to bloggers, journalists, or other representatives of media organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks "ALL DOCUMENTS relating to estimates or projections of the AFP's fundraising or development goals or efforts from the year 2000 to the present and through 2015 and any future years." The terms of this Request are vague, overbroad (including as to time and scope), and unduly burdensome to answer.

Documents relating to AFP's estimates or projections of its past or future fundraising are wholly irrelevant, and a request for such documents is not reasonably calculated to lead to the discovery of admissible evidence. The claims and defenses at issue in this case concern whether the Attorney General has a legal right to demand disclosure of the Foundation's Schedule Bs for 2011 and subsequent tax years. Whatever AFP estimates or projects its fundraising to be, that simply has no bearing on the claims or defenses in this case. The requested materials relate neither to the Attorney General's stated interest in obtaining the Foundation's Schedule Bs nor to the Foundation's right to safeguard the confidentiality of its donors' identities. That is especially true because this Request goes to AFP, which is a separate entity from the Foundation and not a party to this case. The fundraising estimates and projections of AFP as a separate, non-party entity are doubly removed from and wholly irrelevant to this case.

The Foundation further objects that AFP's internal fundraising and development goals are also protected from disclosure by the First

71

Amendment associational privilege. *See, e.g., Perry*, 591 F.3d at 1158 (granting mandamus where district court violated the First Amendment privilege by compelling disclosure of sensitive internal campaign communications).

For these reasons, the Foundation will not produce documents in response to this Request.

## 2. The Attorney General's Position

Plaintiff objects on relevance grounds to Interrogatory Nos. 3, 4, and 5 and Request for Production Nos. 7, 8, 19, and 20, which seek documents and information regarding donations made by Schedule B donors to the Foundation (Interrogatory No. 3); the solicitation and acceptance of donations to the Foundation (Interrogatory No. 4, Request for Production No. 7); the Foundation's sources of revenue or gifts other than donations by Schedule B donors (Interrogatory No. 5 and Request for Production No. 8)[16]; and estimates or projections of the Foundation or AFP's fundraising or development goals (Request for Production Nos. 19 and 20). Plaintiff has refused to produce *any* responsive documents, and has stated that "no response is necessary" to *any* of the interrogatories. Plaintiff's response to Interrogatories Nos. 3 and 5 recites information from its publicly available Form 990. The only information Plaintiff has provided in response to these requests other than information available on its Form 990 consists of five sentences describing its solicitation practices in the most generic and general terms.[17]

---

[16] As described *supra*, footnote 4, the parties have moved closer to an agreement as to the information and documents sought in Interrogatory No. 5 and Request for Production No. 8, relating to amounts of revenue generated from Schedule B and non-Schedule B donors. However, as stated above, the Attorney General moves to compel this information for the years 2010 through 2015.

[17] Plaintiff's citation to its Form 990 is not a sufficient response to Interrogatories Nos. 3 and 5. Plaintiff has pointed to "the Form 990 the Foundation files with the Attorney General each year" as containing "extensive information about the amount of revenue and value of gifts the Foundation receives each year." However, the Form 990s available to the Attorney General do not provide all of the information available in all documents regarding donations made by Schedule B donors, or the Foundation's sources of revenue or gifts other than Schedule B donations. For example, they do not identify the total dollar amount of Schedule B donations versus non-Schedule B donations or sources of revenue for any given year. Nor do

(continued…)

72

1    Plaintiff's responses are insufficient.  As discussed above in Parts II and III,

2    the preliminary injunction and the First Amendment do not excuse Plaintiff from

3    compliance with these discovery requests.  And, the information and documents

4    sought here are not only relevant, they are central to Plaintiff's case.  To prevail on

5    its First Amendment associational rights claim, Plaintiff must show, among other

6    things, a chilling effect on donors caused by the disclosure of Schedule B

7    information to the State.  *See Brock v. Local 373, Plumbers Int'l Union of America*,

8    860 F.2d 346, 349-50 (9th Cir. 1988).  Plaintiff will have to rely on the testimony of

9    donors and evidence of their donation history to make this showing.

10    As a result, blocking discovery of key information regarding this very topic

11    would thwart the Attorney General's ability to examine and challenge Plaintiff's

12    factual claims.  For instance, if a donor testifies that he or she stopped contributing

13    money to the Foundation based on a fear of disclosure to the Attorney General, the

14    Attorney General needs the record of the donor's contribution history to be able to

15    cross examine and challenge his or her testimony.  Similarly, one of Plaintiff's key

16    arguments is that past donors have suffered of boycotts of their businesses and

17    physical threats as a result of disclosure of their affiliation with Plaintiff and AFP.

18    *See* Li Decl., Ex. 1 (Compl. ¶ 16); Ex. 2 (Mem. in Support of Mot. for Preliminary

19    Injunction at 13).  If the Attorney General does not even know these donors' names,

20    she will have no means of independently investigating and effectively cross-

21    examining them on these facts.

22    The Attorney General cannot defend these claims without knowing who

23    donates to the Foundation, for how long, and in what amounts.  Without this

24    _____

(…continued)

25    they identify which donors live in California or the total amount and nature of
donations from Californians.  Nor has Plaintiff demonstrated that compliance with

26    this request would be overly burdensome.  The Form 990 provides only a partial
response to Interrogatories Nos. 3 and 5, which is equivalent to no response at all.

27    Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response
must be treated as a failure to disclose, answer, or respond").

28

information, the Attorney General will have no means of identifying witnesses who could testify that fear of disclosure to the Registry would *not* stop them from donating to the Foundation, or to test the credibility of those who would testify to the contrary.

This need for information to examine Plaintiff's assertions applies not only to individual donors' testimony and information, but also to its factual claims that the Schedule B requirement would lead to a reduction in donors or donation to the Foundation. *See* Li Decl., Ex. 4 (Decl. of Christopher Fink in Supp. of Pl.'s Mot. for Preliminary Injunction at ¶ 10 ("There is no question that if the names and addresses of our current donors are released to the State of California, we would lose contributions from active donors.")); Ex. 6 at 7 (Plaintiff's Answering Brief on appeal, stating "if the Foundation submits its Schedule B to California, donations will decrease, irrespective of whether donor names and addresses are made public").

Plaintiff must provide complete responses to and produce all non-privileged documents responsive to Interrogatory Nos. 3, 4, and 5, and Request for Production Nos. 7, 8, 19, and 20.  And, with respect to Request for Production Nos. 7, 19, and 20, notwithstanding the assertion of any First Amendment privilege, external communications with donors or potential donors regarding the solicitation and acceptance of donations are not privileged or otherwise protected, and must be produced.  The same is true of any communications by the Foundation or AFP with outside parties regarding estimates or projections of fundraising or development goals or efforts.  *See Perry*, 591 F.3d at 1164-65 (describing agreement "to produce all communications actually disseminated to voters, including 'communications targeted to discrete voter groups'").

### 3.   Plaintiff's Position

The Attorney General's discovery requests are nowhere near as well bounded as she now pretends.  To take Interrogatory No. 3 as an example, the Attorney

74

General seeks a "description" of "all donations" from the last 15 years, "including *but not limited to*" the "total number of donors," the "total dollar amount of donations" from donors "residing in California," and "the value and *nature* of any in-kind donations" made by donors over that entire time frame.  Setting aside the sheer over-breadth of this request, this information is also irrelevant to this case.

The Attorney General is wrong to argue that the Foundation *must* compare and contrast the historical trends of its aggregate donations to prevail on its claims. Those trends are irrelevant.  For starters, there is nothing to compare, as the Foundation has so far successfully shut down the Attorney General's wrongful attempt to obtain its donor information.  Moreover, the Foundation can demonstrate "a chilling effect on donors caused by the discovery of Schedule B information to the State" by, among other things, obtaining John Doe witness statements,[18] and/or contemporaneous documents and communications from its donors that express such sentiments.  The same holds for any estimates and projections of annual donations; they are simply irrelevant.

In any event, the Foundation has provided the Attorney General with its Form 990s that, *e.g.*, as reported in Part I, Line 8, of the Foundation's 2013 Form 990, shows that the Foundation received $12,976,019 in donations and grants in 2013. And as reported in Part VIII, Line 1, the Foundation in 2013 received $12,976,019 in contributions, gifts, and grants (no revenue came from federated campaigns, membership dues, fundraising events, related organizations, or government grants), of which $1,006,045 came from non-cash contributions.  Details about those noncash contributions are contained in Schedule M Part I.  In 2013, the Foundation received 14 contributions totaling $733,245 in publicly traded securities, and one

---

[18] Theses statements may in fact include specific information about a particular donors giving history provided that the appropriate confidentiality designations or other protections are in place.

contribution of $272,800 in software, as detailed in Schedule M Part II.  In other words, the Attorney General has access to what it is after and is of course free to question witness at deposition about the same.  But it needs no additional discovery into these matters, and certainly not as those requests have been broadly propounded.

As for "the solicitation and acceptance of donations to the Foundation (Interrogatory No. 4, Request for Production No. 7)," the Foundation is producing communications and fundraising solicitations sent to supporters and potential donors with appropriate redactions.  As detailed in Section IV, *supra*, the Foundation is *not* willing to provide lists of donors or other identifying information. Such requests violate the preliminary injunction in this case.  By no means can California establish its interest in demanding the Foundation's Schedule B by demanding the Foundation's Schedule B and donor information.

## VI.  PLAINTIFF'S PRIVACY OBJECTIONS

### A.    The Discovery Requests and Responses in Dispute

**INTERROGATORY NO. 2:**

For each year from 2000 to the present, IDENTIFY each individual or entity employed by, contracted to, or volunteering for the FOUNDATION and involved in communicating with, soliciting, accepting, and/or tracking DONATIONS from potential or actual DONORS to the FOUNDATION.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the Foundation's general objections, the Foundation objects to this Interrogatory for seeking the identities of "each individual or entity" ever "employed by, contracted to, or volunteering for" the Foundation and involved in fundraising since the year "2000." This Interrogatory is overbroad (including as to time and scope), unduly burdensome to answer, and seeks information that is private, wholly irrelevant, and protected from disclosure by the First Amendment and other applicable laws.

The Foundation objects to producing identifying information about any of the Foundation's volunteers. Such information is shielded from disclosure by the First Amendment, just like information about the Foundation's members and donors. *International Action Center v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) ("[T]he following information is protected by the First Amendment: membership and

76

volunteer lists . . . . Consequently, discovery requests from Defendants that seek such information will not be allowed.").

The Foundation also objects that this Interrogatory seeks personal and employment information protected by the right to privacy embodied in the California Constitution, Article 1, Section 1, *see Board of Trustees of Leland Stanford Junior University v. Superior Court of Santa Clara County*, 119 Cal. App. 3d 516, 525–28 (Cal. Ct. App. 1981), and embodied in other applicable law.

Subject to and without waiving these general and specific objections, the Foundation responds as follows:

The Foundation's Development Department is responsible for fundraising, including soliciting, accepting, and tracking donations. The Form 990 that the Foundation files with the Attorney General each year (and makes available for public inspection) contains the names of the Foundation's key employees, including the leaders of its Development Department. For example, as reported in the Foundation's 2013 Form 990, Christopher Fink was then the Foundation's Vice President in charge of Development, and Robert Stuber was the Director of Development—Direct Marketing. Currently, Sarah Moore is the Foundation's Director of Development. Each of the above individuals remains an employee of the Foundation and may be contacted through counsel representing the Foundation in this matter.

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to ascertain the name, position, reporting relationship, duties, and compensation of individuals employed by, contracted to, or volunteering with the FOUNDATION from the year 2000 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the Foundation's general objections, the Foundation objects to this Request to the extent it seeks documents sufficient to ascertain the name of each individual ever "employed by, contracted to, or volunteering for" the Foundation since the year "2000." This Request is overbroad (including as to time and scope), unduly burdensome to answer, and seeks materials most of which are already in the Attorney General's possession, and the rest of which are private, wholly irrelevant, and protected from disclosure by the First Amendment and other applicable laws.

The Foundation objects to producing any materials identifying the Foundation's volunteers. Such materials are shielded from disclosure by the First Amendment, just like information about the Foundation's members and donors. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) ("[T]he following information is protected by the First Amendment: membership and volunteer lists . . . . Consequently, discovery requests from Defendants that seek such information will not be allowed.").

77

The Foundation also objects that this Request seeks personal and employment information protected by the right to privacy embodied in the California Constitution, Article 1, Section 1, *see Board of Trustees of Leland Stanford Junior University v. Superior Court of Santa Clara County*, 119 Cal. App. 3d 516, 525–28 (Cal. Ct. App. 1981), and embodied in other applicable law.

The Foundation also objects to producing documents concerning the Foundation's employees or contractors who do not have significant management responsibilities pertinent to this case, and to producing documents concerning compensation amounts, as such materials are wholly irrelevant to this case. Moreover, the Form 990 the Foundation files with the Attorney General each year (and makes available for public inspection) already contains the names, positions, and compensation amounts of the Foundation's officers, directors, trustees, key employees, and highest-compensated employees. No other Foundation employee receives compensation greater than that disclosed on the Foundation's Form 990. Thus, the Attorney General already has in her possession the requested information that is both relevant and not protected from disclosure.

For these reasons, the Foundation will not produce documents in response to this Request.

## B.   The Attorney General's Position

Plaintiff objects to the requests for employee names and information (Interrogatory No. 2 and Request for Production No. 4), based on the right to privacy.  This objection is meritless.  The California Constitution does protect a right to privacy, but that right "is subject to balancing the needs of the litigation with the sensitivity of the information/records sought."  *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999).  The California Supreme Court and Courts of Appeal have repeatedly held that the names and contact information of potential witnesses, including a party's employees, are "not particularly sensitive" information and are readily discoverable.  *Puerto v. Superior Court*, 158 Cal. App. 4th 1242, 1253 (Cal. Ct. App. 2008) (allowing disclosure of employee contact information and holding that "disclosure of mere contact information, while personal, is not particularly sensitive, as it is merely contact information, not medical or financial details, political affiliations, sexual relationships, or personnel information"); *see also Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 373 (2007).  This case is no different.  The Attorney General seeks the

78

identities and contact information of individuals employed by the Foundation who communicate with donors or solicit, accept, and track donations.  By contrast, the only case Plaintiff cites in its objection concerns the disclosure of confidential personnel records—not contact information—and is thus inapposite.  *See Bd. of Trustees of Leland Stanford Junior Univ. v. Superior Court*, 119 Cal. App. 3d 516, 524 (Cal. Ct. App. 1981).

### C.   Plaintiff's Position

The Attorney General misrepresents the dispute surrounding these discovery requests.  Contrary to her position, the Foundation has agreed to provide or has already provided:

- organizational charts that will, among other things, individuals "employed by" the Foundation who are "involved in communicating with, soliciting, accepting, and/or tracking donations";

- names of employees who are significant managers within the Foundation;

- names of employees within the Foundation's Development department. which is responsible for "communicating with, soliciting, accepting, and/or tracking donations";

- a list of document custodians that identifies, by name and title, many of the employees who are responsible for such activities within the Foundation and will have responsive information; and

- the name of its independent contractor in California, Mr. David Spady, that acts as the functional equivalent of the Foundation's State Director in California.

The Attorney General has this information already but, inexplicably, is not content.  Instead, she further asks for each of these individuals' "compensation," which is entirely beside the point, and identification of the Foundation's "volunteers" *for the last 15 years*, which is both unduly burdensome and irrelevant. Asking for "compensation" information, for example, undoubtedly intrudes upon

line employees' individual right to privacy in California, as this information is highly personal, sensitive, and private, and does not remotely bear upon the underlying litigation.  *See Harding Lawson Assocs. v. Superior Court*, 10 Cal. App. 4th 7, 10 (1992); *Bd. of Trustees v. Superior Court*, 119 Cal. App. 3d 516, 525 (1981).  Likewise, information concerning the Foundation's rank-and-file volunteers, just like information about the Foundation's members and donors, should be shielded from disclosure by the First Amendment.  *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) ("[T]he following information is protected by the First Amendment: membership and volunteer lists. . . . Consequently, discovery requests from Defendants that seek such information will not be allowed.").

## VII. PLAINTIFF'S FAILURE TO PRODUCE ANY DOCUMENTS

### A.    The Attorney General's Position

Plaintiff agreed in its discovery responses dated June 29, 2015, to produce a limited set of documents in response to Request for Production Nos. 1, 2, 3, 11, 12, 15, 17, and 18.  More than two months later, as of September 2, 2015, Plaintiff has not produced a single document.  Although the parties are in disagreement with respect to numerous discovery requests, the applicable date range, ESI custodians, and search terms, Plaintiff still has an obligation to produce responsive documents that are not in dispute, in a timely manner.  The Attorney General moves to compel production of these documents—along with responses to other requests as detailed above—without further delay.

### B.    Plaintiff's Position

The Attorney General fails to mention that her discovery requests lagged behind the Foundation's by more than a month.  Even so, the Foundation stands to make a substantial production imminently.  It has already collected and reviewed over 14,000 documents from over 14 custodians, including all of its high-level employees that are likely to have responsive information in their e-mails and/or

80

files.  The Foundation is simply in the process of applying appropriate redactions and performing a final quality-control review.

## VIII. PROPOSED RESOLUTION

### A.    The Attorney General's Position

The Attorney General seeks an order compelling Plaintiff to produce all non-privileged documents and complete responses to Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, and 15, and Request for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, and 20.  Plaintiff must produce all non-privileged, responsive documents for the period January 1, 2010 to December 9, 2014.  In the alternative, Plaintiff must be precluded from relying on any evidence regarding harm to its donors or a chilling of First Amendment rights.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).

### B.    Plaintiff's Position

No order of the Court is necessary.  The Attorney General cannot obtain wide-ranging discovery into the identities and contributions of the Foundation's donors, because such requests violate the preliminary injunction currently in place.  The Attorney General cannot use discovery as a tool to further trespass on the Foundation's and its donors' First Amendment rights, or to seek expansive discovery far removed from the narrow issues in this case.  The Attorney General should be limited to obtaining discovery that is commensurate to the scope of the claims and defenses asserted in this case, and doing so while respecting the plain and binding terms of this Court's preliminary injunction.

1  Dated:  September 14, 2015                    Respectfully Submitted,

2                                                KAMALA D. HARRIS
                                                 Attorney General of California
3                                                TAMAR PACHTER
                                                 Supervising Deputy Attorney General
4                                                ALEXANDRA ROBERT GORDON
                                                 JOSE A. ZELIDON-ZEPEDA
5                                                KEVIN A. CALIA
                                                 EMMANUELLE S. SOICHET
6                                                Deputy Attorneys General

7

8                                                /S/ P. PATTY LI

9                                                P. PATTY LI
                                                 Deputy Attorney General
10                                               *Attorneys for Defendant*
                                                 *Attorney General Kamala D. Harris*
11

12                                               QUINN EMANUEL URQUHART &
                                                 SULLIVAN LLP
13

14

15

16                                               Derek L. Shaffer
                                                 *Attorneys for Plaintiff*
17                                               *Americans for Prosperity Foundation*

18

19

20

21

22

23

24

25

26

27

28

82