QUINN EMANUEL URQUHART & SULLIVAN LLP
Harold Barza (California Bar No. 80888)
  halbarza@quinnemanuel.com
Carolyn Thomas (California Bar No. 286441)
  carolynthomas@quinnemanuel.com
865 S Figueroa St, 10th Floor
Los Angeles, CA  90017
Telephone: (213) 443-3000

QUINN EMANUEL URQUHART & SULLIVAN LLP
William Burck (DC Bar No. 4015426) (*pro hac vice*)
  williamburck@quinnemanuel.com
Derek Shaffer (California Bar No. 212746)
  derekshaffer@quinnemanuel.com
Keith H. Forst (NY Bar No. 4746806) (*pro hac vice*)
  keithforst@quinnemanuel.com
Jonathan Cooper (DC Bar No. 999764) (*pro hac vice*)
  jonathancooper@quinnemanuel.com
777 Sixth Street NW, 11th Floor
Washington, DC  20001
Telephone:  (202) 538-8000

*Attorneys for Plaintiff*
*Americans for Prosperity Foundation*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **AMERICANS FOR PROSPERITY FOUNDATION**,<br><br>Plaintiff,<br><br>vs.<br><br>**KAMALA HARRIS**,<br>in her Official Capacity as Attorney General of California,<br><br>Defendant. | Case No.  2:14-cv-09448-R-FFM<br><br>[DISCOVERY MATTER]<br>**JOINT STIPULATION RE: FOUNDATION'S MOTION TO COMPEL REGARDING THE ATTORNEY GENERAL'S PRIVILEGE LOG**<br><br>Hearing Date:  February 1, 2016<br>Hearing Time:  10:00 AM<br>Courtroom:  8 – 2nd Floor<br>Judge:  Hon. Manuel L. Real<br><br>Discovery Cutoff:  January 4, 2016<br>Pretrial Conference:  January 25, 2016<br>Trial:  February 23, 2016<br>Action Filed:  December 9, 2014 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................... 1

II.   PRELIMINARY STATEMENTS ............................................................ 1

    A.   The Foundation's Preliminary Statement ...................................... 1

    B.   Attorney General's Preliminary Statement .................................... 3

III.  ATTORNEY GENERAL'S PRIVILEGE LOG ...................................... 4

    A.   The Foundation's Position .............................................................. 4

        i.    Common Interest Privilege .................................................. 4

        ii.   Missing Years ...................................................................... 6

        iii.  Improper Redactions ........................................................... 8

        iv.   Schedule B Investigation Documents .................................. 9

    B.   The Attorney General's Position .................................................. 11

        i.    Emails Protected by the Common Interest Privilege.................. 11

            a.    Common Interest Privilege .................................... 12

            b.    Work Product Doctrine ......................................... 14

        ii.   Emails Pre-Dating 2012 .................................................... 15

        iii.  Redactions of Attorney-Client Privileged Emails ..................... 16

        iv.   Schedule B Investigation Documents ........................................ 19

            a.    The Attorney General Has Produced all Responsive Documents............................................................ 19

            b.    The Documents Sought are Not Responsive to Plaintiff's Requests for Production, Over-Broad, and Privileged .................................................... 20

## I.      INTRODUCTION

Pursuant to Local Rule 37-2, Plaintiff Americans For Prosperity Foundation ("Foundation") and Defendant Attorney General Kamala Harris ("Attorney General") respectfully submit this Joint Stipulation Regarding the Foundation's Motion to Compel prompt production of (i) documents listed on the Attorney General's Revised Privilege Log that she withheld under the Common Interest Privilege; (ii) years of emails missing from the Attorney General's privilege log and production; (iii) certain emails that had been redacted in their entirety; and (iv) documents relating to the investigations described in the Attorney General's response to the Foundation's Interrogatory number ten.   The Foundation sent meet and confer letters pursuant to Local Rule 37-1 on November 6, 2015, regarding the privilege log and redaction issues and on November 13, 2015, regarding the investigation documents.   The parties met and conferred on November 12, 2015, regarding the privilege log and subsequently exchanged a number of emails on these issues.   They were unable, however, to obviate resort to the Court.

## II.      PRELIMINARY STATEMENTS

### A.      The Foundation's Preliminary Statement

This motion involves the Attorney General's unjustified withholding of highly responsive documents under misconceived claims of privilege or undue burden.   The Attorney General presented the Foundation with careless, error-filled initial privilege logs on October 30, 2015.   The logs further omitted several years worth of documents, contained numerous conclusory entries, and pressed dubious claims of privilege.   Just the day before presenting the privilege log, the Attorney General had acknowledged in a 30(b)(6) deposition that she had not produced responsive documents relating to her use of Schedule B in her enforcement of California law.   This capped a week in which the Attorney General disclosed that she had inadvertently deleted numerous emails from her archived email server.

Since then, the parties met and conferred on both the Attorney General's privilege log (which she subsequently revised), and the Attorney General's failure to produce responsive documents, and the parties resolved some areas of disagreement. But four outstanding issues remain: (1) the Attorney General's overbroad claims of common interest privilege, (2) years missing from the Attorney General's privilege log and production, (3) the Attorney General's improper redactions of unprivileged factual material, and (4) the Attorney General's failure to produce documents regarding her Schedule B investigations. More specifically:

- **Overbroad Claims of Common Interest Privilege:** The Attorney General has improperly claimed a common interest privilege over her communications with Hawaii in connection with a *different* case that did not involve both California and Hawaii. No common-interest privilege ostensibly extends so far.

- **Missing Years From the Privilege Log and Production:** The Attorney General has produced just one email to the Foundation predating 2012. To partially explain this gap in her production, the Attorney General represented to the Foundation that she did not have any emails from "prior to 2010 for any" custodians. Despite this representation, the Attorney General's first entry on the privilege log is an email from 2007, and the log also contains a 2008 email. It is inexplicable that the Attorney General has retained only three responsive pre-2012 emails, two of which are purportedly privileged.

- **Improper Redactions of Factual Material:** The Attorney General has improperly redacted entire emails, which appear on their face to contain at least some unprivileged factual content that should be produced.

- **Failure to Produce Documents Regarding Schedule B Investigations:** The Foundation's Interrogatory No. 10 (which strikes at the very heart of this case) asked the Attorney General to describe ten specific instances in which Schedule B enabled her to determine that a charity had violated the law. She detailed eight investigations that tangentially involved Schedule B, and her 30(b)(6) designee, Mr. Bauman, admitted that the Attorney General was not aware of any additional investigations that implicated Schedule B. Declaration of Keith H. Forst ("Forst Decl.") Exs. 12, Ex. 7 at 29:2-4. Accordingly, those eight investigations represent the sum total

-2-

of the Attorney General's evidence of her use of Schedule B, yet she refuses to produce documents related to those investigations that would enable the Foundation to test her reliance on them.

In light of these deficiencies, the Attorney General should be ordered to: (1) produce all documents over which she has improperly claimed a common interest privilege; (2) search for and produce (or log if privileged) all responsive emails from before 2012, and explain her representation that none exist, (3) produce unprivileged factual content in certain enumerated emails, and (4) produce all responsive documents regarding the eight investigations that supposedly relate to her regulatory interest.

**B.    Attorney General's Preliminary Statement**

Plaintiff's motion to compel is premised on questionable factual assertions and a misapprehension of the caselaw.  At issue are communications between the Charitable Trusts section, its litigation counsel in the Attorney General's Office, and the Hawaii state attorney general regarding coordination of defense to litigation, which are protected by the common interest privilege and the work product doctrine. Plaintiff also requests an explanation regarding emails before 2012, an explanation that Defendant here provides.

Plaintiff further challenges the redaction of communications between the Charitable Trusts section of the Attorney General's office and its attorneys regarding requested legal advice.  These emails are privileged attorney-client communications, and accordingly Defendant properly redacted these documents. Lastly, Plaintiff requests a court order requiring the Attorney General to produce investigation documents that Plaintiff has never requested in discovery, which is inappropriate at this late juncture.  In any event, the documents Plaintiff seeks are privileged.

In short, Plaintiff demonstrates no grounds for granting a motion to compel, and its motion should be denied.

## III.   ATTORNEY GENERAL'S PRIVILEGE LOG

### A.   The Foundation's Position

The Foundation seeks the production of three categories of responsive, unprivileged documents from the Attorney General's privilege logs, and the production of responsive documents regarding the Attorney General's use of Schedule B in her investigatory activities.

#### i.   Common Interest Privilege

The Attorney General unjustifiably asserted a Common Interest Privilege over entries 166-176 and 191 on her "Documents Withheld" privilege log. Forst Decl. Ex. 1. Each challenged entry concerns emails between an attorney who represents the state of Hawaii—which is not a party to this case—and attorneys who represent the Attorney General. *Id.* at 22, 24. All of these emails are dated March 24 or 25, 2014. At the November 12 meet and confer, the Attorney General told the Foundation that these documents involved different litigation involving individuals or entities not party to this case. *See id.* Ex. 3.

Disclosure of an attorney-client communication to third parties generally waives the attorney-client privilege. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012); *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). Work product may also be waived through disclosure, and, in any event, the privilege is inapplicable to third-party materials or materials produced for third parties. *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) (work product inapplicable to third-party materials); *see Hernandez*, 604 F.3d at 1100; *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685 (S.D. Cal. 1996) (waiver of work product); Fed. R. Civ. P. 26(b)(3)(A) (work product is "prepared in anticipation of litigation *by or for* another *party* or its representative"). The common-interest privilege "is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pacific Pictures Corp.*, 679 F.3d at 1129. It applies only where "(1) the communication

is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). Most importantly, "a *shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties* within this exception. Instead, the parties must make the communication in pursuit of a *joint* strategy in accordance with some form of agreement—whether written or unwritten." *In re Pacific Pictures Corp.*, 679 F.3d at 1129 (disclosure of attorney-client communications to the government by a crime victim waived privilege because the crime victim was "not strategizing with the prosecution") (emphasis added).

The Attorney General has not met this high bar for invoking the common-interest privilege. She has not pointed to any written or unwritten agreement with Hawaii. Hawaii and California are not engaged in any sort of joint litigation strategy. They are not co-defendants in either this case or in any other case challenging the Attorney General's Schedule B submission requirement (such as *Center for Competitive Politics v. Harris*, No. 2:14-cv-00636 (E.D. Cal.)). Nor is Hawaii defending a Schedule B requirement in related litigation. Hawaii and California may hope for "the same outcome" in the other, unrelated matter to which these emails relate, but such a hope is "insufficient" to place the communications within the common-interest privilege. *In re Pacific Pictures Corp.*, 679 F.3d at 1129. Accordingly, any common-interest privilege over these documents has been waived, and the Court should order them produced.

Nor can the Attorney General properly claim work-product protection over these documents. Because work-product protection does not apply to materials produced by a third party to this litigation such as Hawaii, the Attorney General cannot claim work product over entries 167-68, and 172, as authored by Hawaii. *In re California Pub. Utils. Comm'n*, 892 F.2d at 781 (limiting work product protection to materials prepared by a party to the litigation in which discovery is sought). Moreover, because these

materials were prepared for Hawaii, the Attorney General cannot claim work-product protection over the emails she sent to Hawaii.  Fed. R. Civ. P. 26(b)(3)(A).

### ii.    Missing Years

The Attorney General has produced just one email to the Foundation from before 2012—that email is from 2004.  As the Court previously observed, the notion that there are zero nonprivileged responsive emails from between January 1, 2010 and July 29, 2013 "challenges the Court's common sense."  Forst Decl. Ex. 13 at 2.  It is equally senseless for the Attorney General to contend that there is only one nonprivileged responsive email predating 2012, especially given that it was in 2010 that the Attorney General first began writing letters to charities demanding that they submit unredacted Schedule Bs.  This kind of administrative action would surely have generated many emails pertaining to the Attorney General's purported requirement that charities must submit unredacted Schedule Bs.

The Attorney General has sought to explain this gap in her production by representing to the Foundation that she did not have any "emails from prior to 2010" for any of her custodians because a 2010 server switch led to a systematic purge of emails. Forst Decl. Ex. 4.  That explanation of course does nothing to explain why the Attorney General has not produced any emails dated between 2010 and 2012. Moreover, the Attorney General's privilege log calls into question the Attorney General's representation.  The very *first* entry on the Attorney General's "Documents Withheld" privilege log was an email from one of the Attorney General's custodians from ***2007***.  Forst Decl. Ex. 1 at 1.  Similarly, entry 126 is an email from ***2008*** that was attached to an email in 2014.  *Id.* at 16.  And the one pre-2012 email the Attorney General has produced is from ***2004***.  In short, notwithstanding her representations to the contrary, the Attorney General does possess responsive emails from before 2010.

It is implausible that the Attorney General has retained only three responsive pre-2012 emails—one each from 2004, 2007, and 2008—and two of those are privileged. It also seems exceptionally unlikely that the Attorney General has no responsive emails

whatsoever—whether privileged or unprivileged—from 2009, 2010, or 2011.  These conspicuous discrepancies afford further indication that the Attorney General's document production and privilege log are inadequate and that she in fact possesses additional responsive documents that she must collect and either produce or log.

Indeed, the Attorney General's position becomes unsustainable upon considering that she is invoking *work-product protection* as her sole basis for withholding her responsive 2008 email (entry 126).  Of course, the necessary premise of that invocation is that she was purportedly anticipating litigation at that time, in 2008, over the issues that are now being litigated in this case.[1]  Because the withheld document was created in 2008, it follows that litigation was anticipated at that time.  *See Willingham v. Ashcroft*, 228 F.R.D. 1, 6-7 (D.D.C. 2005) (documents selected by the attorney and attached to attorney work product to support the attorney's legal opinion were not themselves protected as work product).  Thus, the Attorney General's work-product claim either relates to an earlier litigation—for which a litigation hold should have been in place preserving the larger set of responsive documents—or it is invalid and the Court should order the Attorney General to produce the document.  *See sanofi-aventis Deutschland GmbH v. Glenmark Pharma., Inc.*, No. 07-cv-5855 (DMC-JAD), 2010 WL 2652412, *5 (Jul. 1, 2010 D. N.J.) (duty to institute a litigation hold arose at latest when work product was created); *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (duty to preserve evidence attaches when litigation is "anticipated"); *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Mgmt.*), 357 F.3d 900, 907 (9th Cir. 2003) (work product must be prepared in "anticipation of litigation").

---

[1]   Attachments need to independently satisfy the criteria for work-product protection.  *See*, *e.g.*, *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999) ("As to documents subject to the attorney-client privilege or work product doctrine, the plaintiffs are correct in contending that not all attachments to, or enclosures with, such documents are necessarily protected by privilege.").

In light of these serious discrepancies, the Foundation is entitled, at the very least, to an explanation of the Attorney General's retention and collection of documents predating 2012, and the Court should order the Attorney General to provide such explanation.  To the extent that the Attorney General has outstanding documents, the Court should order the Attorney General to search for and produce them.  And the Court should also order the Attorney General to produce entry 126 if she cannot justify her invocation of work-product protection as to that document.

### iii.    Improper Redactions

The Attorney General improperly redacted entire emails in entries 7-12, 14-16, 46-49, 55-61, 69-70, and 77-78 in her "Documents Produced with Redaction Log." Forst Decl. Ex. 2.  The attorney-client privilege applies "only when legal advice is sought from a professional legal advisor *in his capacity as such*." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996); *United States v. Ruehle*, 583 F.3d 600, 608 n.8 (9th Cir. 2008).  It does not apply to facts a client may communicate to an attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).  Thus, an entire document may be privileged only when it contains privileged portions that are "so inextricably intertwined with the rest of the text that they cannot be separated." *United States v. Christensen*, 801 F.3d 970, 1007-08 (9th Cir. 2015) (finding that potentially privileged pages of transcripts could have been separated from non-privileged pages without revealing client confidences).

The Attorney General employs attorneys who possess factual knowledge of the filing requirements of the Attorney General's Registry of Charitable Trusts ("Registry").  To respond to questions from the public, the Registry's non-attorneys must occasionally ask attorney-employees for factual information regarding the Attorney General's policies.  Because such requests are not made to obtain legal advice, the logged emails, which likely request basic fact-finding rather than legal advice, should not be fully redacted.  *United States v. Davis*, 131 F.R.D. 391, 401-02 (S.D.N.Y. 1990).

For example, entries 24 and 26 correspond to ATTYGEN00003717. That document consists of an email from a member of the public asking the Registry why they require Schedule B, and if the Registry requires it in response to a statutory or regulatory requirement. Forst Decl. Ex. 5. The first internal email is from Katie Rose to Tania Ibanez and is redacted in its entirety. *Id.* Presumably, Ms. Rose sought factual information, not legal advice, from Ms. Ibanez for the purpose of answering public inquiry. And Ms. Ibanez presumably provided Ms. Rose with that factual information. Accordingly, the Court should order the Attorney General to produce these and other communications with redactions only of legal advice, as distinct from facts. The Registry's emails are not a "privileged sanctuary" that can be redacted in their entirety. *Davis*, 131 F.R.D. at 401; *see also Handgards, Inc. v. Johnson and Johnson*, 69 F.R.D. 451, 454 (N.D. Cal. 1975).

### iv.    Schedule B Investigation Documents

The Foundation's Interrogatory 10 asked the Attorney General to "[d]escribe . . . ten specific instances in which possessing the names and addresses listed in an unredacted Schedule B submitted by a charitable organization to the Registry enabled [her] to determine that a specific organization has violated the law . . . ." Forst Decl. Ex. 6 at 7. She provided examples from eight investigations. Forst Decl. Ex. 12. Mr. Bauman, the Attorney General's 30(b)(6) designee on her use of Schedule B in enforcing California law, admitted that those eight investigations constituted every investigation the Attorney General had found that involved Schedule B. Forst Decl. Ex. 7 at 28:23-29:9.

Mr. Bauman testified that his team keeps electronic case documents on a program called ProLaw, and the team member assigned to the investigation "generally" drafts a final report at the close of an investigation. Forst Decl. Ex. 7 at 12:13:19; 21:22-22:14. Mr. Bauman admitted that Schedule B would be "reflected" in the final report if it was "important" to an investigation. *Id.* at 186:21-187:14.

The Foundation requested the following documents in response to these admissions:

- "All documents, including any draft or final reports, concerning investigations cited in response to Interrogatory No. 10;" and

- "All documents stored in 'ProLaw' that concern investigations cited in response to Interrogatory No. 10."

Forst Decl. Ex. 8. In response, the Attorney General refused to "search for 'all documents' concerning these investigations," despite their obvious responsiveness.[2] *Id.* Ex. 11. She elected to "stand on [her] objections, especially regarding the burden of searching, reviewing, and redacting these investigative files given the minimal relevance of information about the details of these investigations."

The Attorney General should be required to search for and produce these highly responsive and important documents with appropriate redactions. This case requires the Attorney General to substantiate her claimed investigatory interest in collecting Schedule B information. *Gibson v. Flor. Legis. Invest. Committee*, 372 U.S. 539, 551-58 (1963); *Bates v. City of Little Rock*, 361 U.S. 516, 524-25 (1960); *NAACP v. Alabama ex rel Patterson*, 357 U.S. 449, 464-65 (1958). She seeks to rely on these eight—and only these eight—investigations to show Schedule B's usefulness to her in enforcing California law. *See* Forst Decl. Ex. 7 at 28:23-29:9. Accordingly, she must produce documents from these eight investigations for the sake of enabling the Foundation to properly "test" her claims. *See In re Fresh and Process Potatoes Antitrust Litig.*, 4:10–md–02186–BLW–CWD, 2014 WL 1413676

---

[2] Both categories of documents are responsive to the Foundation's Request for Production Nos. 3, 6-7, 10, 16, and 21. Forst Decl. Exs. 9-10. For example, Request No. 3 asks for all documents relating to the Defendant's Interrogatory responses, and Request No. 21 asks for "[a]ll DOCUMENTS relating to the law enforcement purposes served by the SCHEDULE B SUBMISSION REQUIREMENT." *Id.* The ProLaw documents are also responsive to Request for Production No. 8.

at *5 (D. Id. Apr. 11, 2014) (ordering the production of numerous privileged documents so the plaintiff could "test the legitimacy of the defendant's [advice of counsel defense]"); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F.Supp.2d 1084, 1092-93 (D. Nev. 2003). Because these documents are material to the Attorney General's assertions underlying her affirmative case, the Attorney General's assertions of undue burden are facially insufficient, and the court should require her to produce these documents. *See Green v. Baca*, 219 F.R.D. 485, 491 (C.D. Cal. 2003).

**B.     The Attorney General's Position**

The Attorney General has properly withheld emails protected by the common interest privilege, work product doctrine, and attorney client privilege. The Attorney General has not produced emails prior to 2012 because no responsive emails exist. Following a Department-wide email migration to Outlook in October 2012, email older than 90 days on the legacy Groupwise system was abandoned unless a user took affirmative steps to archive it to the new system. Finally, Plaintiff's new requests for "all documents" relating to investigations identified in response to Plaintiff's Interrogatory No. 10 is untimely, falls outside the scope of Plaintiff's Requests for Production, and is unduly burdensome because it calls for the production of privileged investigatory files.

**i.     Emails Protected by the Common Interest Privilege**

The Attorney General's privilege log properly includes twelve privileged emails in a chain of communications between counsel for Defendant and the Hawaii attorney general's office, in which the participants discuss legal advice and strategy in pending and anticipated Schedule B litigation of common legal interest to both offices. *See* Decl. of Keith Forst, Ex. 1, lines 166-177; 191. These emails satisfy the requirements of the common interest privilege, and some also are protected by the work product doctrine.

a.      *Common Interest Privilege*

The joint defense and common interest doctrines are "exceptions to the rule on waiver where communications are disclosed to third parties." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).  The privilege has three requirements: (1) the communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived.  *Id.*  The "critical inquiry is whether a sufficient commonality of interests exists between the parties such that the privilege may be asserted." *In re Imperial Corp. of America*, 179 F.R.D. 286, 289 (S.D. Cal. 1998) (internal citation and quotation omitted).  But the common interest does not require *complete* unity of interests.  *U.S. v. Bergonzi*, 216 F.R.D. 487, 496 (N.D. Cal. 2003).  Nor does it require actual litigation.  *Nidec Corp.*, 249 F.R.D. at 578.

In the emails at issue here, the Attorney General's litigation counsel (Alexandra Robert Gordon), her representatives (Tania Ibanez and Elizabeth Kim), and the supervising attorney of the charities division of the Hawaii attorney general's office (Hugh Jones) discuss legal theories and arguments to defend California's Schedule B requirement in the context of *Center for Competitive Politics v. Harris*, Case No. 2:14-cv-00636-MCE-DAD (E.D. Cal. 2014).  The emails meet all three prongs of the common interest doctrine.

The first requirement of the common interest privilege is here met because both *Center for Competitive Politics* and this litigation are "matter(s) of common legal interest" for the attorneys general of California and Hawaii:  As in California, the Attorney General of Hawaii supervises charities and requires them to submit Form 990s (including any Schedules B) with their annual filings.  *See* Haw. Rev. Stat. §467B-6.5.  Both state officials share an interest in defending the constitutionality these requirements.  This shared interest was heightened in *Center*

1  *for Competitive Politics*, because the case was likely to (and did) result in a Ninth

2  Circuit opinion that would be binding on both states.

3        Plaintiff does not challenge this shared interest, but instead argues without

4  factual or legal support that the privilege does not apply in the absence of an

5  agreement (written or unwritten) or a joint litigation strategy between Hawaii and

6  California.  In support of this argument, Plaintiff cites only *In re Pacific Pictures*

7  *Corporation*, but this case does not support the argument.  There, the court held that

8  the common interest privilege did not protect a statement made by a crime victim to

9  the government because the victim was not strategizing with the prosecution, and

10 had no more common interest with the government "than does any individual who

11 wishes to see the law upheld."  679 F.3d at 1129.  By contrast here, Hawaii and

12 California had a readily identifiable common interest in coordinating defense to

13 lawsuits challenging similar disclosure requirements in both states.

14       That Hawaii is not a co-defendant in *Center for Competitive Politics* or in this

15 case, and is not defending its own Schedule B litigation is not relevant to the

16 common interest analysis.  The rule in the Ninth Circuit is that "[e]ven where the

17 non-party who is privy to the attorney-client communications has never been sued

18 on the matter of common interest and faces no immediate liability, it can still be

19 found to have a common interest with the party seeking to protect the

20 communications." *United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir.), *overruled*

21 *on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997); *see Nidec*

22 *Corp.*, 249 F.R.D. at 578 (explaining that the common interest privilege "is not

23 limited to joint litigation preparation efforts" but instead "is applicable whenever

24 parties with common interests join[] forces for the purpose of obtaining more

25 effective legal assistance") (citation omitted).  In addition, Hawaii faced the real

26 threat of copy-cat litigation—one that materialized within several months in New

27 York and twice again in California (including this case), *see Citizens United v.*

28 *Schneiderman*, __ F. Supp. 3d __, 2015 WL 4509717 (S.D.N.Y. 2015); *Thomas*

*More Law Center v. Harris*, No. 15-cv-03048-R-FFM.  Given the unresolved and ongoing nature of these cases, the threat to Hawaii's Schedule B requirement continues.[3]

The second requirement of the common interest privilege is also met, because the withheld emails "furthered" the states' common interest by discussing legal theories and arguments to defend against the challenge to the Schedule B requirement.  Finally, the emails satisfy the third requirement, because the privilege was not waived.  The only parties to the emails were counsel to the Attorney General, her representatives, and the Hawaii attorney general's office; there is no suggestion that they have been disclosed to other parties.  Because all three requirements are met with respect to each of the emails withheld under the common interest privilege, there are no grounds for compelling their production.

### b.   Work Product Doctrine

The challenged emails also contain privileged attorney work product.  The work product doctrine protects the mental impressions and legal research of attorneys prepared in the course of litigation.  *U.S. v. Nobles*, 422 U.S. 225, 237-38 (1975); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010).  As the privilege log explains, these emails are not single, isolated communications, but comprise chain communications.  That is, each email identified in the log is an email response that references all previous communications within the conversation.  In this way, each document captures the entirety of an evolving exchange of ideas and legal research between the Attorney General's litigation counsel, Alexandra Robert Gordon, and the other participants.

---

[3] Similarly, Plaintiff is mistaken to the extent it suggests that a privileged communication loses its privilege simply because it originated in the context of a different legal proceeding.  *See Swidler & Berlin v. U.S.*, 524 U.S. 399, 405 (1998) (holding that attorney-client privilege protected document prepared in anticipation of congressional investigation when the document was sought in subsequent criminal investigation, despite client's intervening death).

The work product designation protects the discrete portions of these email chains in which Gordon explains her own research and arguments. The Attorney General has never claimed the work product privilege with respect to any "work product . . . authored by Hawaii" or to "materials . . . prepared for Hawaii." *Supra* § III(a)(i). Although the work product designation protects just the mental impressions and research of the Attorney General's counsel, these protected portions are embedded in every email identified in this chain, even if the email response at the top of the chain comes from another party.

To reflect the full granularity of her response, the Attorney General could amend the privilege logs to make clear that the work product doctrine applies to only certain portions of each email. However, because the full chain is protected by the common interest privilege, such amendments would add nothing of practical importance in the case.

### ii.   Emails Pre-Dating 2012

The Attorney General produced just two redacted emails dating from before 2012, because those are the only responsive emails for custodians that survived a 2012 Department-wide email migration. These two emails were printed and stored in hardcopy format, as explained in the accompanying documents and privilege logs. *See* Decl. of J. Zelidon-Zepeda, Ex. 1 (document produced at ATTYGEN00003758-61); Ex. 2 (email with attached report, produced with redactions at ATTYGEN00004047-56); Decl. of Keith Forst, Ex. 2 at line 111 (description of email in redacted documents privilege log).[4]

---

[4] The 2008 document listed on Defendant's withheld privilege log is not an email, nor is it so described on the privilege log. Instead, it is a PDF attachment to an email written by one of the Attorney General's lawyers, Tania Ibanez, in response to a request for legal research by the Attorney General's litigation counsel, Alexandra Robert Gordon, in *Center for Competitive Politics*. The Attorney General's privilege log accurately describes the attachment as a "[d]ocument collecting information/research for and attached to email chain . . . in ongoing

In response to Plaintiff's discovery requests, the Department of Justice searched an electronic archive of all emails sent to and from all employees dating back to the Department's migration from the GroupWise email system to Microsoft Outlook.  This migration took place in September and October of 2012.[5]

Only two emails from the period prior to 2012 were produced because there exist only two emails that were:  (1) manually archived by one of the 60 custodians and thus survived the 2012 migration, (2) included one of the Plaintiff's search terms, and (3) were responsive to Plaintiff's discovery requests.  All emails responsive to Plaintiff's discovery requests have been produced.

### iii.    Redactions of Attorney-Client Privileged Emails

The Attorney General has properly redacted emails between Registry staff and their attorneys in the Attorney General's Charitable Trusts Section that contain legal advice and requests for legal advice protected by the attorney-client privilege.

---

litigation."  Decl. of Keith Forst, Ex. 1, line 126 (description of attachment in Attorney General's withheld documents privilege log).

This document is protected by the work product doctrine because it contains the mental impressions of a lawyer working on the *Center for Competitive Politics* case.  The document contains a chapter of California regulations.  The file's metadata shows it was created in 2008, the date listed in the "created date" column of the withheld documents privilege log.  The metadata also shows, however, that the document was last modified on April 2, 2014, about 15 minutes before Ms. Ibanez sent the email attaching the document.  Specifically, Ms. Ibanez marked up the 2008 document before sending, highlighting a portion of the regulations for Ms. Gordon to review and use.  Plaintiff has not contended (and cannot plausibly contend) that this legal research by an attorney prepared in the course of litigation falls outside the scope of the work product doctrine.

[5] Defendant's counsel previously told Plaintiff that this migration took place in 2010 but this was incorrect.  The migration took place in 2012.  Decl. of Keith Forst, Ex. 4 (9/15/15 email from Thomas to Li).  Prior to the migration, the Department retained email for 90 days, after which it was destroyed unless filed or archived by a user.

The attorney-client privilege is triggered where a party seeks legal advice from an attorney, and includes all communications relating to that purpose. *Quicksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 582-83 (C.D. Cal. 2007) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).  Plaintiff's request for an order that only "legal advice" be redacted from emails between attorneys and their clients is unsupported by the caselaw, which unequivocally protects "the communications relating" to the legal advice sought.  *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *ACLU of Northern Cal. v. FBI*, __ F. Supp. 3d __, 2015 WL 7251928, at *3 (N.D. Cal. Nov. 17, 2015) ("The privilege protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege") (citation omitted).

In the redactions Plaintiff challenges, Registry staff forwarded questions they received from various parties to the Registry's lawyers, asking for legal guidance in responding to the inquiries.  The questions from outside parties, which form the factual basis of Registry staff's questions for attorneys, have not been redacted.  But the questions from staff and the responses from the attorneys are protected by attorney-client privilege and have properly been redacted.

In particular, the inquiries Registry staff received regarding Schedule B often asked for the legal authority for the Registry's Schedule B requirement, and were often asked by lawyers or compliance experts representing charities.  For instance, in the email Plaintiff highlights, the co-author of a legal guide on charitable registrations wrote:

> I am frequently asked why your office insists on receiving a copy of Schedule B from the IRS form 990 when charities file the RRF-1.  Can you provide me with any guidance on this?  Is this a statutory or regulatory requirement?  Is there a specific reason you require this schedule?

Decl. of Keith Forst, Ex. 5 (ATTYGEN00003717).  The email specifically asks for legal guidance—the statutory or regulatory authority supporting the Schedule B

requirement—as well as its underlying regulatory purpose.  Asking for the legal basis for state action is inherently asking for the product of legal research, and the Registry staff member sought such a legal response from Registry attorneys, not simply "factual information."

Similarly in another email chain, a lawyer representing a foundation asked the Registry for a waiver of an independent audit requirement under state law, based on the his client's circumstances.  Decl. of J. Zelidon-Zepeda, Ex. 3 (email produced at ATTYGEN00003472); Decl. of Keith Forst, Ex. 2, line 14 (corresponding entry in Attorney General's redacted documents privilege log); *see* Cal. Govt. Code § 12586(e) (charities with $2 million or more in annual revenues must file independently audited financial statements).  When a Registry staff member forwarded this request to Registry attorneys, she was asking an attorney to evaluate a request within the bounds of the law.  The staff member's email and the subsequent communications between the legal staff evaluating the issue are privileged communications and were properly redacted.

Notably, Plaintiff appears to recognize that the privilege is properly asserted with respect to similar exchanges between Plaintiff and its attorneys about how to respond to public inquiries.  It has redacted entire emails between its employees and its lawyers, while producing only the public inquiry that triggered the communications.  For example, Plaintiff redacted communications between Plaintiff and its counsel in response to media inquiries to Plaintiff's officers seeking comments on articles the reporters were writing.  Decl. of J. Zelidon-Zepeda, Exs. 4, 5 (entirely redacted emails from *National Journal* and *Mother Jones* reporters).  For both email chains, Plaintiff produced the original email from the reporter and redacted all of the subsequent communications—emails from the officers to the lawyers, between employees, and from the lawyers. *Id.*  The grounds for these redactions are indistinguishable from the grounds for the redactions made to the Registry staff emails.

#### iv.   Schedule B Investigation Documents

The Attorney General has fully complied with her discovery obligations in response to Plaintiff's Interrogatory No. 10:  she has responded in detail to the interrogatory and produced responsive documents.  She has also proactively informed Plaintiff of the identities of two attorneys with personal knowledge of the investigations listed in the response Interrogatory No. 10 and offered to make the attorneys available for deposition.

Plaintiff —without meeting and conferring on the issue—seeks to compel documents outside the scope of any of its requests for production.  This is alone sufficient grounds to deny the motion to compel.  C.D. Civ. L.R. 37-1; Fed. R. Civ. P. 37(a)(1).  In addition, even if these documents were responsive to any request for production, they would be privileged, and requiring their production would be unduly burdensome.

##### a.   The Attorney General Has Produced all Responsive Documents.

The Attorney General has fully complied with her discovery obligations to date.  She responded to Plaintiff's Interrogatory Number 10 by describing ten instances in which the Attorney General used Schedule B to find charities that had "violated the law."  Decl. of J. Zelidon-Zepeda, Ex. 6 (revised response to Interrogatory 10).  That response contained pages of general information about the use of Schedule B in investigations, as well as descriptions of the ten investigations and how the Schedule B information aided regulators in investigating wrong-doing in each instance.  *Id.*  As stated in the response, five of the ten investigations are "ongoing," and the list of investigations "is non-exhaustive."  *Id.* at 8-9.  The response also explained that "[t]he Charitable Trusts Section does not track the role played by every piece of information reviewed during each of the many investigations undertaken every year.  Nor does the Section maintain a list of investigations in which Schedule B information has been used."  *Id.* at 8.

Following the deposition of Steve Bauman, a Supervising Investigating Auditor with the Department of Justice, the Attorney General also produced several documents relating to the fraud investigation of two charities in which attorneys or auditors relied on Schedule B.  Decl. of J. Zelidon-Zepeda, Ex. 7 (settlement proposal letter produced at ATTYGEN00004028-36), Ex. 8 (corrective action letter ATTYGEN00004037-41). [6]  Otherwise, the Attorney General has informed Plaintiff of the identities of two attorneys with direct knowledge of the investigations listed in Interrogatory No. 10 and offered to produce them for deposition.  Decl. of J. Zelidon-Zepeda, Ex. 9 (Calia to Forst email 12/23/15).

> b.   *The Documents Sought are Not Responsive to Plaintiff's Requests for Production, Over-Broad, and Privileged*

Plaintiff now seeks "[a]ll documents, including any draft or final reports, concerning investigations cited in response to Interrogatory No. 10," specifically including all documents stored in the Attorney General's case management system, ProLaw.

Plaintiff's request for "all documents" relating to these investigations is over-broad because it could include anything from a post-it reminder on a file, to internal legal memoranda, copies of charity bylaws, board meeting minutes, financial audits, emails with complainants, and other investigatory materials.  Fed. R. Civ. P. 26(b)(1).  This broad range of documents is not responsive to any of the Requests

---

[6] Mr. Bauman did not "admit" at deposition that the investigations listed in the response to Interrogatory No. 10 "constituted every investigation the Attorney General had found that involved Schedule B," nor is this a fair inference.  *Supra* § III(a)(iv).  In fact, Plaintiff's counsel never asked Mr. Bauman this question.  In the portion of deposition on which Plaintiff relies, Mr. Bauman was asked only whether he had directed his team of auditors to identify investigations in which they used Schedule B.  Decl. of Keith Forst, Ex. 7 at 28:23-28:25.  Mr. Bauman responded that he had done so, they had identified around five, and that he didn't know if the other investigations listed had come from attorneys.  *Id.* at 29:6-29:20.  The list of investigations in the response to Interrogatory No. 10 is not exhaustive.

for Production cited and relied on by Plaintiff in its motion.  Contrary to Plaintiff's contention, the documents it now seeks do not relate to the Registry's requirement that charities submit a Schedule B form with their renewal papers, or the Registry's Schedule B confidentiality policies.  *See* Decl. of Keith Forst, Exs. 9 and 10 (Requests for Production Nos. 6-8, 10, 21).  Rather, the documents Plaintiff now seeks relate to investigations undertaken by auditors and attorneys in the Charitable Trusts Section, documents that have not been previously requested.  Moreover, Plaintiff cites no evidence in the record that the Attorney General relied on "all documents" concerning these investigations in drafting a response to Interrogatory No. 10.  *See id.* (Request for Production No. 3).  The Attorney General has already produced or logged all documents relied on in drafting the response.  Lastly, Plaintiff cites no evidence showing that these investigations involved communications with other state, local, or federal governmental officials.  *See* Decl. of Keith Forst, Ex. 10 (Request for Production No. 16).  Having failed to request these documents before, Plaintiff cannot now try to obtain these documents at this late juncture.

Even if "all documents" concerning the ten investigations were responsive, because they are entirely privileged, it would be overly burdensome to require the Attorney General to review and log these documents.  Investigative files are protected from disclosure by numerous privileges, including the attorney-client privilege, the law enforcement investigatory privilege, the official information privilege, and the attorney work product doctrine, among others.  *Quicksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 582-83 (C.D. Cal. 2007) (discussing attorney-client privilege); *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) (discussing official information privilege); *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680 (S.D. Cal. 1996) (discussing law enforcement investigatory privilege); Fed. R. Civ. P. 26(b)(3)(A) (work product privilege); Decl. of J. Zelidon-Zepeda, Ex. 6 at 8 (objections lodged in the Attorney General's response to Interrogatory No. 10).  In

1  particular, Plaintiff has specified its interest in draft or final internal reports from

2  auditors to attorneys, every one of which would be privileged.  Decl. of Keith Forst,

3  Ex. 8.

4       The Court should not require the Attorney General to search for documents

5  that are unlikely to produce any admissible evidence.  Fed. R. Civ. P. 26(b)(1)

6  (discovery must be "proportional to the needs of the case"); *Matthew Enterprise,*

7  *Inc. v. Chrysler Group LLC*, No. 13-cv-04236-BLF, 2015 WL 8482256, at *1 (N.D.

8  Cal. Dec. 10, 2015).  These new requests would require a team of attorneys to comb

9  through and log potentially thousands of paper and electronic investigatory files, as

10  well as to conduct an entirely new review of email records—the entirety of which

11  would likely be privileged.  If the Plaintiff's chief objective is to obtain discovery on

12  the use of Schedule B in investigations, it has had extensive opportunity through

13  deposition to do so—first of Mr. Bauman, the supervising auditor, Belinda Johns,

14  Tania Ibanez, and the other attorneys identified by the Attorney General.

15  DATED:  December 31, 2015          Respectfully submitted,

16                                    QUINN EMANUEL URQUHART &

17                                    SULLIVAN, LLP

18

19

20       By _____

21                                    Derek Shaffer

22                                    Attorneys for Plaintiff
                                      Americans for Prosperity Foundation

23

24                                    /s/ Emmanuelle Soichet

25                                    _____
                                      Emmanuelle Soichet

26                                    Deputy Attorney General
                                      Counsel for Defendant Attorney General

27                                    Kamala D. Harris

28